# United States Court of Appeals
## for the First Circuit

---

### Case No. 15-1218, 15-1221, 15-1271, 15-1272

---

FRANKLIN CALIFORNIA TAX-FREE TRUST, *et al.*,
Appellees

**v.**

MELBA ACOSTA-FEBO
Appellant

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA); COMMONWEALTH OF
PUERTO RICO, ALEJANDRO GARCIA PADILLA, as Governor of the Commonwealth
of Puerto Rico
Defendants

---

**Case No. 15-1272**

---

BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC
Plaintiff-Appellee

**v.**

ALEJANDRO J. GARCIA-PADILLA, in his capacity as Governor of Puerto Rico,
CESAR R. MIRANDA-RODRIGUEZ, in his capacity of Secretary of Justice,
Defendants-Appellant

---

On Appeal from the United States District Court
for the District of Puerto Rico

Civil Case No. 14-1518 (FAB)
Civil Case No. 14-1569 (FAB)

---

**BRIEF OF AMICUS CURIAE**
EDILBERTO BERRÍOS PÉREZ, ESQ.

Edilberto Berríos Pérez, Esq.
Berríos & Longo Law Office, P.S.C.
#239 Arterial Hostos Ave., Suite 900
Capital Center Bldg.
San Juan, Puerto Rico  00918-1400
Telephone (787) 753-0884

March 16, 2015

CORPORATE DISCLOSURE STATEMENT PURSUANT TO RULE 26.1 OF
THE FEDERAL RULES OF APPELLATE PROCEDURE

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae, Pro Se*, makes the following individual representations:

1.  Edilberto Berríos Pérez is a natural person, of legal age, devoted to the private legal practice, consequently does not issue shares of stock to the general public, nor has any syndication of any of his activities has ever taken place.

2.  Edilberto Berríos Pérez is a natural person, of legal age, married, citizen of the Unites States, resident of Puerto Rico, lawyer admitted to the Puerto Rico Bar since 1977 and practices the legal profession in Puerto Rico on a full time basis, regularly lectures on multiple legal subjects including bankruptcy, contract, banking and constitutional law.

3.  No one, no person, no entity, no corporation, no municipality, no government, again, no one, except the private personal patrimony of Mr. Edilberto Berríos Pérez, Esq. has contributed economically in any fashion, to the presentation of this Amicus Curiae Brief on Appeal.

Berrios & Longo Law Office, P.S.C.
Capital Center Bldg.
#239 Arterial Hostos Ave.
Suite 900
San Juan, Puerto Rico 00918-1478
Tel. (787) 753-0884
Fax (787) 753-4821

By:    s/Edilberto Berríos Pérez
USDC PR 123605
e-mail: *eberriosperez@reclawservices.com*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (I)

I.     STATEMENT OF BASIS OF APPELLATE JURISDICTION. . . . . . . . . . . 1

II.    STATEMENT OF THE ISSUES PRESENTED AND THE
       APPLICABLE STANDARDS OF APPELLATE REVIEW. . . . . . . . . . . . 2

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    STANDARD OF APPELLATE REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . 4

V.     CONCISE STATEMENT OF THE CASE AND
       EXTRACT OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI.    STATEMENT OF RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 8

VII.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       **FIRST ISSUE ON APPEAL:**  Whether the field of debt
       re-composition for sovereign instrumentalities of Puerto Rico
       is occupied by Title 11 of the laws of the United States. . . . . . . . . . . . . . 12

       **SECOND ISSUE ON APPEAL:** Whether the case is ripe
       for adjudication and therefore if the U.S. District Court for
       the District of Puerto Rico acted within the proper realm of
       judicial power and federal jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

       **THIRD ISSUE ON APPEAL:** Whether the Puerto Rico
       Recovery Act of June 2014 has performed,  or is imminently
       threatening to substantially and improperly perform an
       impairment of contractual obligations, on plaintiffs.. . . . . . . . . . . . . . . . 22

**FOURTH ISSUE ON APPEAL**: Whether the Puerto Rico Recovery Act of June 2014 has performed or is imminently threatening to substantially and improperly perform a Takings of property without just compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VIII.  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IX.     PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# TABLE OF AUTHORITIES

**Federal Jurisprudence**

*Abbott Laboratories v. Gardner*,
387 U.S. 136, 141, 87 S.Ct. 1507,
1511, 18 L.Ed.2d 681 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Balzac v. Porto Rico*
258 U.S. 298 (1922). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Bennett v. Spear*,
520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) . . . . . . . . . . . . . 27

*Boise Cascade Corp. v. United States,*
296 F.3d 1339, 1351 (Fed.Cir.2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Borges v. U.S. Dep't of Hous. & Urban Dev.,*
421 F.3d 1, 10 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *22*

*Boumediene v. Bush*,
553 U.S. 723, 726 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Caesars Massachusetts Management Co., LLC v. Crosby*
-- F.3d ----, page 4, 2015 WL 627213C.A.1 (Mass.), Feb 13, 2015.. . . . . . 7, 22, 26

*Califano v. Sanders*
430 U.S. 99, 105,  97 S.Ct. 980 (1977).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Central Virginia Community Collage v. Katz*
546 U.S. 356 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Chicago, B. & Q. R. Co. v. Iowa*,
94 U.S. 155 (1876). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

*Dolan v. City of Touggourt*

512 U.S. 374, 114 S.Ct. 2309 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

*Dorr v. United States,*
195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904). . . . . . . . . . . . . . . . . . . . . . .   15

*Dowens v. Bidwell*,
182 US 244 (1901). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 17, 22

*Energy Reserves Group v. Kan. Power & Light Co.,*
459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983) . . . . . . . . . . . . . . 22, 23

*Fed. Mar. Comm'n v. S.C. State Ports Auth.,*
535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002). . . . . . . . . . . . . . .   20

*Hawkeye Commodity Promotions, Inc. v. Vilsack*
486 F.3d 430 (C.A.8,2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 25

*In re Workers' Comp. Refund,*
46 F.3d 813, 819 (8th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Lynch v. United States,*
292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). . . . . . . . . . . . . . . . . . .   25

*MacDonald, Summer & Rates v. Yobo City.,*
477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). . . . . . . . . . . . . . . .   27

*Marbury v. Madison,*
1 Cranch, 137 (1803). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*Maysonet–Robles v. Cabrero,*
323 F.3d 43, 53 (1st Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Merrel Dow Pharms. Inc. v. Thompson,*
478 U.S. 804, 809 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

*National Mutual Insurance v. Tidewater Transfer Co,*
337 U.S. 582 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

*Nolan v. California Coastal Commission*
483 U.S. 825,107 S.Ct. 3141(1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

*Northern Pipeline Const. Co. v. Marathon Pipe Line Co*
458 U.S. 50, 73 L. Ed. 2d. 958 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Provident Bank v. Patterson*
390 U.S. 102, 19 L Ed 2nd 936, 88 S Ct 733 (1968). . . . . . . . . . . . . . . . . . . . .  21

*Puerto Rico Telephone Co. v. Sprintcom, Inc.*,
662 F.3d 74, 86 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).. . . . . . . . . . . . . . 2, 20

*Swift v. Hocking*,
243 U.S. 281, 61 L.Ed. 722 (1917). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kadrmas v. Dickinson Public Schools,*
487 U.S. 450, 101 L.Ed.2d 399 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Harris v. McRae*,
448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). . . . . . . . . . . . . . . . . . . .

*Ortwein v. Schwab,*
410 U.S. 656, 660, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973).. . . . . . . . . . . .

*Sturges v. Crowninshield*
17 U.S. 122, 200,  1819 WL 2136 (1819).. . . . . . . . . . . . . . . . . . . . . . . . . . . *16, 17*

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).. . . . . . . . . . . . . 18

*Wabash, S.L. & P.R. Co. v. Illinois*,
118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Vaqueria Tres Monjitas, Inc. v. Pagan*
748 F.3d 21 (C.A.1, 2014)........................................... 21


**Puerto Rico Jurisprudence**

*Alicea v. Cordoba*
117 D.P.R. 676, 701, 17 P.R. Offic. Trans. 811 (1986). .................. 7, 26

*Franceschi v. Texaco P.R., Inc.*
103 D.P.R. 759, 3 P.R. Offic. Trans. 1058 (1975). ........................ 24

*Freeman v. Tribunal Superior*
92 D.P.R. 1 (1965)................................................ 7, 25

*Sánchez Rodríguez v. López Jiménez,*
116 D.P.R. 172, 182 (1985) 16 P.R. Offic. Trans. 214..................... 6

*Velilla v. Pueblo Supermarkets, Inc.,*
111 D.P.R. 585, 588 (1981) 11 P.R. Offic. Trans. 732..................... 6

*Soriano Tavárez v. Rivera Anaya,*
108 D.P.R. 663, 8 P.R. Offic. Trans. 705  (1979).......................... 6


**U.S. Constitution and Statutes**

Article II of the U.S. Constitution..................................... 3

U.S. Const. Article I, section 1....................................... 22

U.S. Const. Article I, section 8....................................... 22

U.S. Const. Article I, section 10 ..................................... 17

U.S. Const. Article IV section 3. ..................................... 17

-iv-

Eleventh Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 20, 21, 22, 29

Rules 3 and 4 of the First Circuit Rule Book. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Territorial Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 17, 22

Title 11 of U.S. Code.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 10, 12, 13

11 U.S.C. 101 (52).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 16, 17, 22

11 U.S.C. 103.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16, 22

11 U.S.C. 903 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 17, 22

11 U.S.C. 109.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16, 22

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


**Puerto Rico Statutes**

2 L.P.R.A. Ap. III, R. 56.1, 56.4. *and 56.6* . . . . . . . . . . . . . . . . . . . . . . . . . 7, 25

31 L.P.R.A. §3372.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

31 L.P.R.A. §3432.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

P.R. Laws Ann. tit. 22 §§ 191-239. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22 L.P.R.A. § 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

 22 L.P.R.A. §207(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25

22 L.P.R.A. §212.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22 L.P.R.A. § 215. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

31 L.P.R.A. §1111. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

31 L.P.R.A. §1112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Puerto Rico Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Recovery Act of 2014,
Law # 71 year 2014. . . . . . . . . . . . .  2, 3, 5, 7, 9, 10, 11, 12, 21, 22, 24, 25, 26, 28

## WHY ORAL ARGUMENT SHOULD BE HEARD

Pursuant to Federal Rule of Appellate Procedure 34(a), *Amicus Curiae* understands and respectfully requests that oral argument be held and that he be permitted to participate therein to the extent the Honorable Court of Appeals deems it will assist and well serve the Court, justice, the People of Puerto Rico and the general public. Oral argument will assist the Court in correctly deciding the appeal because it is the most efficient and effective mechanism for the court to obtain a live interaction and close grasp on the factual scenario, legal issues, dimension and impact of the legal, social, historic and constitutional impact of the issues presented after review of the briefs. Zealous advocacy and perspective of the case and the controversy, and of the important applicable aspects and their delicate balance by each side before the court will certainly assist the court to fully comprehend the multiple dimensions and impact on the court's admitted duty to balance the State and Federal responsibilities, and administer federal justice within constitutional realm. Multiple aspects on federalism, constitutional law, public policy, Police Power, sovereignty of the multiple jurisdictions within the Union, constitutional rights, the federal judiciary and the diffusion of powers through the land is at the core of every issue presented. This case is not merely the application of facts to the law. *Amicus Curiae* is convinced that this can be best accomplished through oral argument and

questioning before this Honorable Court to each party representative.

**AMICUS CURIAE, EDILBERTO BERRÍOS PÉREZ, ESQ.,
MEMORANDUM ON APPEAL**

TO THE HONORABLE COURT:

COMES NOW, *Amicus curiae* Edilberto Berríos Pérez, Esq., *pro se*, hereby respectfully presents his Brief on Appeal, and to that effect respectfully states and prays as follows:

### I. STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction to hear the present appeal pursuant to the provisions of 28 U.S.C. §1291  as well as under Rules 3 and 4 of the First Circuit Rule Book. The case precisely presents the balancing and scope of responsibilities between State, Territories and the Federal Government.  The appeal is taken from the final *Judgment* dated February 6, 2015 which resulted in declaring unconstitutional a law of general application within Puerto Rico, which hinges on the balancing of powers. The need for balancing federal and state responsibilities, is fundamental to the operation of the multi sovereign system.  *Merrel Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 (1986) and *Puerto Rico Telephone Co. v. Sprintcom, Inc.*, 662 F.3d 74, 86 (1st Cir. 2011).

There is a final judgment, there is the need for balancing of responsibilities between jurisdictions; additionally there are present important issues on Sovereign

Immunity, police power and eleventh amendment that make the case additionally immediately appealable; see *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684 (1993).

## II. STATEMENT OF THE ISSUES PRESENTED AND THE APPLICABLE STANDARDS OF APPELLATE REVIEW

1.    Whether the field of debt re-composition for sovereign instrumentalities of Puerto Rico is occupied by Title 11 of the laws of the United States, or some other source.

2.    Whether the other issues presented are ripe for adjudication and therefore if the U.S. District Court for the District of Puerto Rico acted within its proper realm of judicial power.[1]

3.    Whether the Puerto Rico Recovery Act of June 2014 has performed or is imminently threatening to substantially and improperly perform an impairment

---

[1]       The District Court concluded as follows:

"Rather, the relief plaintiffs seek - a declaration that the Recovery Act is unconstitutional because federal law preempts it and because the Contracts Clause prohibits it - is conclusive in character, not dependant on hypothetical facts, and completely unlike the advisory opinion sought in Texas.

　　　　　*　　　　　*　　　　　*

The Court therefore finds that plaintiffs' preemption and contract clauses claims are fit for review." See Opinion and Order docket 119 in case 14-cv-01518, page. 23.

of contractual obligations on plaintiffs.

4.    Whether the Puerto Rico Recovery Act of June 2014 has performed or is imminently threatening to substantially and improperly perform a taking of property without just compensation.

### III.  STATEMENT OF THE CASE

The present  place of Puerto Rico within the US Constitution, the powers of Congress to legislate on the form and manner in which Puerto Rico, as sovereign, interacts with the fifty States, with the Federal Government and the rest of the nation, has been consistently held to be within the powers of Congress, Article II of the U.S. Constitution. The level at which Puerto Rico integrates to the U.S. economy is part and parcel of the power to regulate commerce and the territorial clause. Constitutional provisions that otherwise are required to be uniform, concerning Puerto Rico there is no such uniformity requirement; among others: the federal taxation, frontier tariffs and taxes, and bankruptcy.

Under a fiscal emergency Puerto Rico, as sovereign, has correctly and constitutionally used its Police and sovereign powers to legislate withing the constitutional framework in the area of insolvency.  PREPA has not sought relief or remedy under the  Recovery Act, any examination of, if, how and when the statute may affect some rights presently is only hypothetical, the case is not ripe for judicial

adjudication.  The DCPR should have dismissed all actions and issues for lack of jurisdiction, except the field occupancy issue; specifically whether field of insolvency proceedings for instrumentalities of the Government of Puerto Rico has been occupied by Congress, which we sustain is ripe.

## IV.  STANDARD OF APPELLATE REVIEW

All legal issues are reviewed *de novo*, there has been no evidentiary hearing. No deference is afforded to the  District Court.  All issues presented are legal, and/or conclusions of law;  no evidentiary findings of facts are part or relevant to the appeal. The challenged statute has not and does not discriminate, nor interferes with any fundamental right of bondholders.  Further, the District Court did not inform the standard by which it examined the constitutionality of the challenged Statute; see *Kadrmas v. Dickinson Public Schools,* 487 U.S. 450, 101 L.Ed.2d 399 (1988).[2]

## V.  CONCISE STATEMENT OF THE CASE AND EXTRACT OF THE ARGUMENT

Multiple entities that hold bonds, issued at different dates,[3] by the only electric

---

[2]    "...statutes having different effects on the wealthy and the poor should on that account alone be subjected to strict equal protection scrutiny. See, e.g., *Harris v. McRae*, 448 U.S. 297, 322–323, 100 S.Ct. 2671, 2690–2691, 65 L.Ed.2d 784 (1980); *Ortwein v. Schwab*, 410 U.S. 656, 660, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973)."

[3]    The Indenture Trust Agreement is dated 1947, see docket 81-1 and 81-2 in case civil 14-01518.

utility company that operates in Puerto Rico (PREPA) claim that a recently approved Puerto Rico insolvency law, identified as The **Recovery Act of June 2014, is unconstitutional.** PREPA operates as a utility only intra-territorially within Puerto Rico. The statutory statement of motives declared a "state of fiscal emergency". <u>No governmental instrumentality has availed itself of any of the provisions of the challenged statute</u>. The constitutional challenge is on three basic flanks, to wit: a) purportedly the field is occupied by Congress for the instrumentalities of the Government of Puerto Rico, b) purportedly the statute has actually impaired the Bondholders contractual obligations with PREPA, and c) purportedly the statute has performed an actual taking of property without due process or without just compensation.

*Amicus curiae*, Edilberto Berríos Pérez, Esq., sustains that the decision of the District Court directly and substantially affect his rights as a ratepayer in the monopoly and regulated utility (PREPA), as the decision entails the purported right of the bondholders to take over the utility company through a Receiver and impose tarifs as high as necessary to pay the bondholder's demands, up to 120% thereof (see Opinion and Order, Dkt 119, pages 53-54).[4] *Amicus* has not consented nor has waived his rights under the balance required for establishment of reasonable tariffs in the

---

[4]     The issue is not new, it was presented and specifically decided.

regulated monopoly to operate; on the contrary objects that the contract be implemented to his direct prejudice. Prejudice that will result in depriving of energy, liberty, work, transportation, and most of the facilities associated with today's civilization. If the case is ripe, then, so is the claim for damages resulting from implementing the contract in such a fashion.

*Amicus curiae*, Edilberto Berríos Pérez, Esq., sustains that: **a)** the challenged statute is a proper and necessary use of the sovereign powers of the Commonwealth of Puerto Rico; **b)** the field of legislating for insolvency of instrumentalities of the Government of Puerto Rico is not occupied by Title 11 of the United States Code or any other law; Puerto Rico is not a State of the Union, and the full U.S. Constitution does not apply;[5] **c)** the occupancy or not of the field is ripe for judicial decision; **d)** all other issues are not ripe for judicial decision; **e)** if the matter is ripe, there has not been, there is no, and may not be an improper impairment of contract, as the bondholders could have never had a reasonable expectancy of instantaneous full provisional remedies under PR contract laws,[6] the special law,[7] and civil procedure

---

[5]     *Dowens v. Bidwell*, infra, *Balzac v. Porto Rico*, infra.

[6]     31 L.P.R.A. §3372, §3432, *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 182 (1985) 16 P.R. Offic. Trans. 214; *Velilla v. Pueblo Supermarkets, Inc*., 111 D.P.R. 585, 588 (1981) 11 P.R. Offic. Trans. 732; and *Soriano Tavárez v. Rivera Anaya*, 108 D.P.R. 663, , 8 P.R. Offic. Trans. 705 (1979). The legislature of Puerto Rico can never dispose, sell, contract or encumber the rights of the population

of Puerto Rico[8] nor to foreclose on the rights of the public, consumers and rate payers

in the monopoly regulated utility company, or on the Police Power of the

Commonwealth of Puerto Rico, and a breach of contract remedy is not an impairment

of contract,[9] and **f)** if the case is ripe then, there has not been any taking of property,

as the bond holders have not been deprived of any attribute of those that comprise the

concept "property" either in substance, form, or temporal.  Contract is property only

as it is the right to a cause of action as the exercise of that cause of action exists under

State Law, see *Alicea v. Cordoba*, infra; and the process that is due is dictated by the

nature of the circumstances, the insolvent patrimony dully perfected property rights

under the laws of Puerto Rico.  The Recovery Act of June 2014 **fully conforms to**

**due process,** under the reality that results from a government entity availing itself of

such law, admitting its insolvency and that the value of its patrimony is less than the

sum total of its liabilities.  No constitutional right, court or process will generate more

---

under a monopolistic regulated utility industry.  The challenged legislation is a proper
balance of interests, conforming to the process due commanded by the circumstances.
Consequently the statute provides full due process of law.

[7]    See: 22 L.P.R.A. § 207.

[8]    See: 2 L.P.R.A. Ap. III, R. 56.1, 56.4 and 56.6,  *Freeman v. Tribunal
Superior*, 92 D.P.R. 1 (1965).

[9]    *Caesars Massachusetts Management Co., LLC v. Crosby,* -- F.3d ----,
page 4, 2015 WL 627213C.A.1 (Mass.), Feb 13, 2015.

assets than those in the patrimony of the insolvent.  Insolvency laws, nor the U.S. Constitution, permit under an insolvency scenario distributing other peoples' property or rights; much less may any law permit foreclosing on or depriving the sovereign of its Police Power; such power is inalienable.

## VI.  STATEMENT OF RELEVANT FACTS

In May 1941, the Commonwealth of Puerto Rico ("GOPR") approved the enabling act of the Puerto Rico Electric Power Authority Act ("Authority Act", the entity PREPA), P.R. Laws Ann. tit. 22 §§ 191-239, creating PREPA. The statute authorized it to issue bonds, and established <u>severe limits on the right to enforce collection</u>.  The remedies are limited to request of a Trustee for the encumbered property and collection of the legally approved rates.  The trustee may **not sell PREPA assets**,[10] which are to be destined to generating, distributing and selling electricity.  See 22 L.P.R.A. §207(e).  The Authority Act, established that the

---

[10]     22 L.P.R.A. 207 commands in part:

"...such <u>receiver shall have no power to sell, assign, mortgage, or otherwise dispose of any assets of whatever kind or character belonging to the Authority</u> and useful for such undertakings, but the powers of any such receiver <u>shall be limited to the operation and maintenance of such undertakings</u>, and the collection and application of the income and revenues therefrom, and **the tribunal shall not have jurisdiction** to enter any order or decree requiring or permitting said receiver to sell, mortgage, or otherwise dispose of any such assets.

government "will not limit or alter the rights or powers hereby vested[11] in [PREPA] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." Id. § 215.

The bonds were initially issued in 1947 for  a maximum term of 50 years. PREPA has accumulated bond debt that is informed amounts to "$8,322,405,000.00 in principal amount of Bonds is outstanding" The estimated value of PREPA is close to 50% of that amount, many of its generating turbines are obsolete. The electricity rates in Puerto Rico are excessively high which hinders the economic development within the jurisdiction.

The Government of Puerto Rico approved what has been labeled The Recovery Act of June 2014, which permits an instrumentality of the Government of Puerto Rico to avail itself of the process established by said statute.  The statute is in the nature of an insolvency legislation. See Law #71 year 2014, http://www.lexjuris.com/lexlex/Leyes2014/lexl2014071d.htm.  The events that lead to approval of the Recovery Act include significant indebtedness by government corporations and instrumentalities, degrading of the credit rating of the public corporations and of the central government

---

[11]     The extent to which a sovereign may waive use of its Police Power or one legislative body can castrate and eviscerate the power of a subsequently elected legislative body, is the object of an extensive examination in this brief.  We only sustain that legislature may not dispose of the rights of the people through legislation, contract or otherwise, and Police Power is inalienable.

of Puerto Rico itself, upcoming due dates for bonds previously issued, extremely high utility rates that hinder economic development, emigration that significantly reduced the population, reduced base of taxpayers and utility ratepayers, loss of some federal legislation which provided tax incentive attracting investment, need to maintain public health, government and order, and the statutory text of Title 11 of the U.S. Code, which excludes instrumentalities of Puerto Rico from being capable of filing for bankruptcy under Chapter 9, the only chapter available to public instrumentalities under the U.S. Bankruptcy Code; among other realities. See legislative motives of the Recovery Act, id.

The Government of Puerto Rico, expressly invoked a state of emergency and using its Police Power, enacted the Recovery Act of 2014. A detailed examination of the constitutional framework to tailor the statute to the Constitutional constraints was made. See section C in the statement of motives.[12]

---

[12]     We quote in part:

C.     Constitutional Basis

This legislation is consistent with guidance provided by the United States Supreme Court (the "U.S. Supreme Court") with respect to the proper rules and procedures for carrying out the financial recovery of entities ineligible for relief under the applicable federal laws.

As discussed below, the Commonwealth has the power to enact a statute that allows a public corporation to modify the terms of its debt with the

The statute created two mechanisms by which the assets of an insolvent instrumentality are tendered *in rem* to a court of law in Puerto Rico, for those assets to be operated in balance with interest of all concerned, including liquidating them to distribute the total value among creditors.[13]  A disposition, sale and liquidation that the PREPA Act of 1941 does not permit.  In other words the Recovery Act established an orderly solution, in due respect to the rights and interests of all concerned, **otherwise a perpetual stand still would result,**[14] which will certainly damage all.  Damage will certainly include the bondholders, whose credit will remain

consent of a substantial number of affected creditors or through a court-supervised proceeding because the U.S. Supreme Court has acknowledged the power of states to enact their own laws for entities Congress has not rendered eligible under applicable federal law.  In addition, Puerto Rico has the police power to enact orderly debt enforcement and recovery statutes when facing an economic emergency, since Congress enacted legislation in 1950 and 1952 granting the Commonwealth the power to govern under its own constitution.

[13]    The application of the statute has not been invoked by PREPA, it is futile to examine in detail the portions of the statute that will be relevant to a set of unknown facts that have not transpired.  We only indicate that the statute is in line with the original enabling act of the PREPA as it requires the continued operation of the assets for producing and distributing the utility service, a specialized court is created with ***In Rem*** jurisdiction (section 111 of the statute), and the process requires that the instrumentality be insolvent.

[14]    The remedy that the Bondholders may seek is a receivership which may not sell the assets to pay, the receiver must maintain operation, the revenues, considering the operating costs will never suffice to fully pay principal (insolvency), the operation may not be dismantled, etc.

eternally unpaid,[15] if the electric turbines are shot down value will collapse to scrap value, etc. The public interest is served by preserving the operation of an essential service, exactly as occurred in the railroad insolvency cases in the U.S. mainland.

**PREPA has not availed itself of the process that the Recovery Act makes available**, nor invoked any of the alternate mechanisms the statute may provide.

The bondholders filed suit in the U.S. District Court for Puerto Rico (DCPR), making a constitutional challenge on the grounds hereinbefore identified in the concise statement of the case. After four months of briefing, without any evidentiary hearing, on February 6, 2015 the DCPR issued an Opinion and Order where it adopted all the arguments raised by the Bondholders. That Judgment is object of the appeal; *Amicus curiae* seeks to provide the court with an additional perspective, one that includes local laws on contract, property, history, principles, constitutional location of Puerto Rico and the ratepayers rights. The limit of space and time constraints our presentation, but the importance of the matter may not be ignored.

## VII. ARGUMENT

**FIRST ISSUE ON APPEAL:** Whether the field of debt re-composition for sovereign instrumentalities of Puerto Rico is occupied by Title 11 of the laws of the United States, or some other source.

---

[15]    Or at least for multiple decades eroding value, generating unreasonable expenses, distress to the markets, sequestering capital for lengthy periods, etc.

The response to the first issue on appeal can be answered with mathematical accuracy and certainty.  The field has not been occupied by Congress as it regards insolvency laws for the municipalities and instrumentalities of Puerto Rico.  The mathematical formula and its variables is established by the conjunction of various portions of Title 11 of the U.S. Code (the Bankruptcy Code); those sections are 11 U.S.C. 101 (52); 11 U.S.C. 103; 11 U.S.C. 903 and U.S.C. 109.

The formula is contained in 11 U.S.C. 103 and 11 U.S.C. 101(52).  The variables to be applied to the formula are in sections 903 and 109.  Section 103 commands which chapters of title 11 are applicable to each type of bankruptcy. Chapters 1, 3 and 5 generally apply to all kinds of bankruptcies, while the sections and dispositions within chapters 7, 9, 11 and 13, only and exclusively apply to a bankruptcy filed under each corresponding chapter. Therefore, section 903, which is located in chapter 9, can apply and only applies to an entity that may and has in fact filed a bankruptcy proceeding under chapter 9, and to no one else.

11 U.S.C. Section 101(52) defines the word "State" as used in the Bankruptcy Code. Said definition is as follows:

### § 101. Definitions

In this title the following definitions shall apply:
...
(52)The term "State" includes the District of Columbia and **Puerto Rico**, **<u>except</u>** for the purpose of defining **<u>who may</u>**

**be a debtor** under **chapter 9** of this title. (Emphasis supplied).

The content of section 903 uses the word STATE to prohibit a statute that binds non consenting creditors for a composition of debts. **Therefore, if the variable "State" is replaced by the definition of State provided by section 101(52) literally and mathematically said section does not apply to Puerto Rico**. Congress has decided not to prohibit Puerto Rico to legislate on matters of binding non consenting creditors on a composition of debts for insolvent government instrumentalities. Congress does have such power over Puerto Rico. See *Dowens v. Bidwell,* 182 U.S. 244 (1901) (Puerto Rico is a not incorporated territory, Congress has plenary powers over Puerto Rico, and the U.S. Constitution does not fully apply to Puerto Rico by its own terms, there is no uniformity requirement even when the U.S. Constitution so requires to legislate among States)[16] and *Balzac v. Porto Rico,* 258 U.S. 298 (1922)

_____

[16]    Consequently, during one hundred and seventeen years Congress has consistently treated Puerto Rico differently than states for multiple purposes, such as income tax, importation tax in the state territory traffic of commerce, voting for president, voting for federal legislation, and bankruptcy of municipalities and governmental entities, among others.  The reason has been expressed as follows:

"...because of the difficulties and **disruption inherent** in transforming the former **Spanish colonies' civil-law** system into an Anglo–American system, the Court adopted the doctrine of territorial incorporation, under which the Constitution applies in full in incorporated Territories surely destined for statehood **but only in part in unincorporated Territories.** *Boumediene v. Bush*, 553 U.S. 723, 726 (2008); *Dorr v. United States,*

(the 1917 Jones Act did not change the constitutional condition of Puerto Rico nor the power of Congress).

Bondholders, when they acquired the PREPA Bonds, precisely sought to avail themselves of the different treatment that Puerto Rico is given under the Constitution and laws. The bonds they acquired do not pay income tax (22 L.P.R.A. §212), including federal income tax. Now, the bondholders have to live with the different treatment that the Federal Government provides to Puerto Rico in federal legislation, and the consequences thereof. Otherwise, the matter will cause "disruption"[17] in the interstate market and commerce, which Congress is constitutionally in control of and has clearly expressed itself on. The U.S. Constitution has a geographic scope. See *Bouberdine v. Bush*, supra.

The formula established by Congress in the conjunction of sections 101(52), 103, 109 and 903 of the Bankruptcy Code unequivocally establishes that Congress has not occupied the field as to Puerto Rico legislating on the subject of binding non consenting creditors in a composition of debts. In order to conclude that Congress has occupied a field the expression must be conclusive.

Only a demonstration that **complete ouster** of state power including

---

195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128 (1904).

[17]    See *Dorr v. United States,* supra.

state power to promulgate laws not in conflict with federal laws was " '**the clear and manifest purpose of Congress**' " would justify that conclusion. See *Florida Lime v.Paul,* 373 U.S. 132 (1963) and *Rice v. Santa Fe,* 331 U.S. 218 (1947).

The conjunction of sections 101(52), 103, 109 and 903 establish a clear unequivocal declaration that for Puerto Rico the field is NOT occupied. The consequence of a specific bankruptcy field not having been occupied by Congress has been established for over two hundred years: "But a still more satisfactory answer to this argument is, that the convention did not intend to prohibit the passage of all insolvent laws." *Sturges v. Crowninshield,* 17 U.S. 122, 200, 1819 WL 2136 (1819).[18] The Supreme Court acknowledged in *Sturges v. Crownfield*, supra, at page U.S. 202, "that the mind of the convention was directed to other laws which were fraudulent in their character, which **enabled the debtor to escape from his**

---

[18]     The U.S. Supreme Court acknowledged that even under the federal statute, then being examined, Congress may decide to have the bankruptcy federal law operate in conjunction with State bankruptcy laws, we quote:

'...the act shall not be construed to repeal or annul the laws of any state, then in force, for the relief of insolvent debtors, except so far as may respect persons and cases clearly within its purview; and in such cases, it affords its sanction to the relief given by the insolvent laws of the state,...'

Plaintiffs **admit the power of States to legislate on the subject matter Bankruptcy** when Congress has not occupied the field. See Appellee's brief before the DCPR, docket 79, page 21.

**obligation, and yet hold his property**, not to this, which is beneficial in its

operation".   That is nature of the impairment of contract obligations that the

constitutional provision stands for.  Again, federal and state constitutions as well as

federal and State legislation operate in concert.  Such is the nature of the U.S.

constitutional structure.

> But be this as it may, the power granted to congress may be exercised
> or declined, as the wisdom of that body shall decide. If, in the opinion
> of congress, uniform laws concerning bankruptcies ought not to be
> established, it does not follow, that partial laws may not exist, or that
> state legislation on the subject must cease. **It is not the mere existence
> of the power, but its exercise, which is incompatible with the
> exercise of the same power by the states**. It is not the right to establish
> these uniform laws, but their actual establishment, which is inconsistent
> with the partial acts of the states. (*Sturges v. Crowninshield*, supra,
> footnotes omitted, emphasis supplied).

Congress, in conformity with its powers over Puerto Rico, acknowledged under

the territorial clause, legislated on the subject of bankruptcy, and totally excluded the

entities and Municipalities of the Government of Puerto Rico as capable of becoming

debtors under chapter 9.  U.S. Constitution, Article IV, section 3, second paragraph,

and 11 U.S.C. §101(52) and 11 U.S.C. §903, *Dowens v. Bidwell,* supra.  The same

concept of the definition of the word "State" is applicable to article I, section 10,

second paragraph. Puerto Rico is not a State of the union in fact, in law, or *de jure*.

Congress, in its wisdom has acted accordingly and left the field vacant for Puerto

Rico to legislate. The reasoning of the U.S. Supreme Court in *Central Virginia*

*Community Collage v. Katz,* 546 U.S. 356 (2006) is applicable to the case at hand as to the juncture of power to legislate on the subject of bankruptcy, the Eleventh Amendment, and consent to become a state of the Union; Puerto Rico has not given such consent.  The vote in *Central Virginia Community Collage v. Katz,* supra, would be unanimous in holding that the Eleventh amendment prohibits the judicial power from entertaining a case or bankruptcy where a municipality of Puerto Rico was the debtor.

> **SECOND ISSUE ON APPEAL**:  Whether the other issues presented are ripe for adjudication and therefore if the US District Court for the District of Puerto Rico acted within its proper realm of judicial power.

Jurisdiction is always a threshold matter.  Ripeness is a fundamental part for examining the justiciable nature of the matter presented to assure that the case and controversy is real, concrete and not hypothetical. A controversy is not ripe for judicial review when it is contingent upon future events that may or may not occur. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

PREPA has not availed itself of the process the  Puerto Rico Recovery Act of June 2014 provides;  nor chosen any of its specific  mechanisms, nor any Court with subject matter jurisdiction has made any decision on the extent, nature and application of the not chosen mechanisms that can be available to the patrimony of

a Puerto Rico Governmental unit. The actual filing to seek application of said statute, and, if so, which mechanisms under the statute will be sought to be applied to plaintiffs is pure speculation, hypothesis and fictitious. Therefore, there is no federal jurisdiction present. The case is not ripe. The ripeness issue was presented by the Government of P.R., correctly to our understanding, and questioned the District Court's (DCPR) jurisdiction because the case is not ripe. On the subject the DCPR held as follows:

> **The Commonwealth's nullification of this series of statutory and contractual security rights and remedial provisions**, through its enactment of the Recovery Act, is a "direct and immediate" injury to the plaintiff bondholders. See *Abbott Labs.*, 387 U.S. at 152. Plaintiffs should not be forced to live with such substantially impaired contractual rights - rights that they bargained for when they purchased the nearly two billion dollars worth of PREPA bonds that they hold collectively. (See Opinion at Page 21, Emphasis supplied).

The Abbot[19] case cited by the *DCPR* was decided under the erroneous assumption that the Administrative Procedures Act (APA) is an independent grant of federal jurisdiction. The Abbot case has been expressly superseded and abrogated on said subject; see *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980 (1977). Therefore, the Abbot case does not support the ripeness conclusion reached by the DCPR for jurisdictional purposes.

---

[19]     *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

Comity between interrelated jurisdiction and sovereigns is essential to the harmonious operation of the multi sovereign nation. The comity that the sovereign jurisdiction of Puerto Rico deserves and requires has been tampered, damaged and sullied by a hypothetical, illusory set of facts, threatening the due balance of federal, State and territories responsibilities. See *Swift v. Hocking*, 243 U. S. 281, 61 L.Ed. 722 (1917),[20] and *Central Virginia v. Katz*, supra. Also, the rights and prerogatives of Puerto Rico as a sovereign under the Eleventh Amendment have been needlessly sullied. See *Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).[21] The eleventh amendment is applicable to Puerto Rico; *Maysonet–Robles v. Cabrero*, 323 F.3d 43, 53 (1st Cir.2003) ( "Puerto Rico enjoys the same immunity from suit that a State has

---

[20]    Not even a stipulation between the parties not based on concrete, real, actual facts  may provide jurisdiction to the Court.  Only reality and true concrete facts substantially established by actual events and evidence may provide the existence of a true case or controversy, a genuine issue and engender the consequent jurisdiction to the Court.

[21]    We quote "Denials of States' and state entities' claims to Eleventh Amendment immunity purport to be conclusive determinations that they have no right not to be sued in federal court. Moreover, a motion by a State or its agents to dismiss on Eleventh Amendment grounds involves a claim to a fundamental constitutional protection, cf. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 502–503, 109 S.Ct. 1976, 1980, 104 L.Ed.2d 548 (1989) (SCALIA, J., concurring)."

under the Eleventh Amendment."); *Vaqueria Tres Monjitas, Inc. v. Pagan,* 748 F.3d

21 (C.A.1, 2014).  All issues presented by plaintiffs, Franklin California Tax-free

Trust, and Bluemountain Capital Management, LLC only invoke what could happen

in the future if PREPA does avail itself of some statutory provisions of the Puerto

Rico Recovery Act.

Some of the hypothetical set of facts include the possibility that some

bondholders that could constitute 10% of the holders, decide to seek a provisional

remedy drafted in the bond trust agreement, which consists of the appointment of a

Trustee to take control of the utility company, and unilaterally increase the electric

tariffs as high as necessary to fully pay all bondholders in full.  See Opinion and

Order Page 53-54, Trust Agreement §503.  Under the <u>hypothetical set of facts</u>, the

general public to whom PREPA supplies electricity in Puerto Rico, such as this

*amicus curiae*, would be **indispensable parties**,[22] because their rights **under the**

**<u>regulated industry</u> and <u>monopoly</u>** would be gravely and permanently affected.  See

_____

[22]    See *Provident Bank v. Patterson,* 390 U.S. 102, 19 L Ed 2nd 936, 88 S
Ct 733 (1968), which establishes a four point test, namely: **1)** the interest of the
parties for a place where they can resolve their disputes; **2)** defendants interest in
avoiding multiple litigation, **3)** the interest of the third party absent who would have
been desirable to join, and who cannot be bound by the judgment entered in his
absence, and **4)** the public interest in having disputes be finally resolved, in an
efficient, consistent manner, but plaintiff who chose the forum, the time and the
parties will not be heard on the sufficiency of the remedy.

*Hawkeye Commodity Promotions, Inc. v. Vilsack,* 486 F.3d 430 (C.A.8  2007).[23]

> **THIRD ISSUE ON APPEAL:** Whether the Puerto Rico Recovery Act of June 2014 has performed or is imminently threatening to substantially and improperly perform an impairment of contractual obligations on plaintiffs.

> **The mere existence of a contract or its breach, however, <u>is not sufficient to show a "protected property interest" for purposes of a due process claim of improper government interference</u>** – *Borges v. U.S. Dep't of Hous. & Urban Dev.,* 421 F.3d 1, 10 (1st Cir. 2005) and ***Caesars Massachusetts Management Co., LLC v. Crosby,*** -- F.3d ----, 2015 WL 627213.

Under the first issue on appeal we have addressed the operation of the U.S. Constitution prohibition to States on impairment of contractual obligations U.S. Const., Article I, section 1;  the relation of said provision with the bankruptcy power contained in U.S. Const. Article I, section 8; the Eleventh Amendment, and the territorial clause as construed regarding Puerto Rico in the Insular Cases, *Dowen v. Bidwell,* supra, and sections 903, 101(52), 103 and 109 of the Bankruptcy Code, as the resulting power of Puerto Rico to legislate on the subject of insolvency of its

---

[23]     We quote:

"Reasonable expectations are affected by the **regulated nature of an industry** in which a party is contracting." *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir.1995) (citations omitted). "In determining the extent of the impairment, we are to determine whether the industry the complaining party has entered has been regulated in the past." *Energy Reserves Group v. Kan. Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)."

municipalities and governmental entities, we do not repeat.  PREPA is a utility

company whose service does not extend beyond the jurisdictional frontiers of Puerto

Rico; see *Wabash, S.L. & P.R. Co. v. Illinois*, 118 U.S. 557, 7 S.Ct. 4, 30 L.Ed. 244

(1886) and  *Chicago, B. & Q. R. Co. v. Iowa*, 94 U. S. 155,(1876).  It is all rooted in

the reality that Puerto Rico is an Island, has not adopted the U.S. Constitution nor is

said instrument fully applicable to Puerto Rico.

Given that PREPA is a monopoly, a utility company and in a regulated

industry, any person or party contracting with PREPA knows that its reasonable

contractual expectations includes some limitations on its contractual and property

rights.  See  *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir.1995); *Energy

Reserves Group v. Kan. Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74

L.Ed.2d 569 (1983) and  *Hawkeye Commodity Promotions, Inc. v. Vilsack* , supra

("Reasonable expectations are affected by the **regulated nature of an industry** in

which a party is contracting").

The nature of the business that PREPA is devoted to requires the balancing of

interest, between suppliers, PREPA creditors and ratepayers.   PREPA nor

bondholders have, nor may have, an ownership interest or power to impose whatever

rates an unidentified trustee may deem necessary to keep a 120% debt service on the

bondholders, as a provisional or a permanent remedy.  Therefore, bondholders never

had, nor may ever have an <u>actual reasonable expectation</u> that a purported trustee may impose any level of tariffs or rates unilaterally. More so, when indispensable parties absent in the negotiation would be unavoidably adversely affected, the general public and ratepayers, whose right PREPA has never been entitled to dispose of or encumber, which the bondholders must have patently known from the inception.

Contract and property law is a matter of State Law, Puerto Rico. Under the laws of Puerto Rico bondholders may not have had a reasonable expectation of enforcing a prohibition to sell any assets, a prohibition to again encumber any asset, not to have a trustee appointed to establish any level of rates to the general public. See *Franceschi v. Texaco P.R., Inc*., 103 D.P.R. 759, 3 P.R. Offic. Trans. 1058 (1975)(a contractual loan provision consisting of a prohibition to sell and/or a prohibition to encumber is generally void under the laws of Puerto Rico). Therefore, under the hypotheses that PREPA avails itself of the remedies under the Recovery Act, and seeks to again encumber, or to sell, even then nothing is impaired because those contractual provisions under the laws of Puerto Rico are seldom valid and enforced, if ever.

Neither may the bondholders in reality have had any reasonable expectation of having a provisional remedy be established regardless of the Rules of Civil Procedure of Puerto Rico; see Puerto Rico Rule of Civil Procedure 56, which has always

required balancing opposing interest, including public interest, and trusteeship is a

provisional remedy very seldom granted. See 2 L.P.R.A. Ap. III, R. 56.1, 56.4. and

*56.6;  Freeman v. Tribunal Superior*, 92 D.P.R. 1 (1965).  The special law permits

appointment of a receiver but with extremely limited powers. 22 L.P.R.A. §207(e).

The impairment claim by the bondholders is not ripe, and even if it was not

they could never had any reasonable expectation under the nature of the business of

PREPA, under the contract and property laws of Puerto Rico to any strict enforcement

of the remedies they now vouch for. Therefore, nothing has been impaired and

nothing will be impaired, because there is no actual real reasonable expectation that

the letter of the invoked provisions would ever be actually granted, ipso facto, or even

be valid under the laws of Puerto Rico.  See  *Hawkeye Commodity Promotions, Inc.*

*v. Vilsack* , supra.

> **FOURTH ISSUE ON APPEAL:**  Whether the Puerto Rico Recovery Act of
> June 2014 has performed or is imminently threatening to substantially and
> improperly perform a taking of property without just compensation.

The "property" that the bond holders assert has been taken is a contract, the

bondholders trust agreement.  The bondholders and the District Court cited the case

*Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934),  for

the proposition that a valid contract is property.  An action for deprivation of property

by state action without due process of law must include a showing that state law

protects an identified property right said to have been violated. See *Caesars Massachusetts Management Co., LLC v. Crosby,* supra. Under the laws of Puerto Rico a property right requires the direct link and right between a person or entity and a specific thing, ***in rem*** "(derecho real"). See 31 L.P.R.A. §1111, property right may be total or partial. 31 L.P.R.A. §1112. **A contract is a special kind of property;** see *Caesars Massachusetts Management Co., LLC v. Crosby*, supra. Under the laws of Puerto Rico the object of ownership, "property" is not the contract itself, but the cause of action to seek redress for breach or specific performance. See *Alicea v. Cordoba,* 117 D.P.R. 676, 701, 17 P.R. Offic. Trans. 811 (1986) and it may not be taken without due process or proper compensation.

Property is composed of a bundle of rights, that comprise the right to use, the right to dispose, to exclude others, to sell and to receive benefits therefrom. See *Dolan v. City of Touggourt,* 512 U.S. 374, 114 S.Ct. 2309 (1994); *Nolan v. California Coastal Commission,* 483 U.S. 825,107 S.Ct. 3141(1987). The DCPR nor the bondholders made any analysis of the bundle of rights of the bondholders under the laws of Puerto Rico, before and after approval of the PR Recovery Act. None of the attributes of the concept "property" has been diminished for the bondholders. Neither has any evaluation been made of perfection of a purported lien, nor the valuation thereof.

For an action to be final, two conditions must be met: "First, the action must mark the 'consummation' of the agency's decision making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.' " *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), *MacDonald, Summer & Rates v. Yobo City*., 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1351 (Fed.Cir.2002). The issues of taking nor of impairment of contract is ripe, there is no concrete set of facts proven as having occurred upon which a judgment may be entered to provide the parties a complete remedy.

## VIII.  CONCLUSION

The balance of power and obligations between federal, state and territory is essential to national harmony and operation. The proper use of article III power is the principal source of its ultimate power to serve the nation. *Marbury v. Madison*, 1 Cranch, 137 (1803), *National Mutual Insurance v. Tidewater Transfer Co.*, 337 U.S. 582 (1949)[24] ( 'behind the words of the constitutional provisions are postulates which

---

[24]    Six votes by the Court held that Congress may not enlarge the jurisdiction of the federal courts. Attention was given that Congress by this statute did not attempt to usurp any judicial power (page U.S. 591).  Discussed in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 73 L. Ed. 2d. 958 (1982), at U.S. 61 and footnote 12, footnote 26, and US 110 -114 (dissent).  The principle is

limit and control.').  Ripeness is an essential determination to ascertain the presence of an actual case or controversy.  Multiple issues are not ripe for adjudication, the facts being adjudged are only hypothetical. The only issue that is ripe is whether the specific field of government of Puerto Rico instrumentality has been occupied or not.

The field of insolvency proceedings for instrumentalities of the Government of Puerto Rico has not been occupied by Congress. All other issues are not ripe for judicial decision. The Recovery Act of Puerto Rico has not impaired and does not impair any contractual obligation of the bondholders, does not perform any taking of any property right of the bondholders, and conforms to Due Process under nature of an insolvency, compelled by the insolvency reality.  The DCPR has incurred in substantial error, the judgment of February 6, 2015 is to be vacated and reversed.

## IX.  PRAYER

WHEREFORE it is respectfully requested to this Honorable Court to:

a)    Receive, permit and consider the matters herein contained as *amicus curiae*;

b)    enter  judgment vacating the judgment dated February 6, 2015, in the U.S. District Court in consolidated cases nos. 14-1518 and 14-1569;

c)    declare that the field has not been occupied for Puerto Rico to legislate on

---

clearly established, Congress may not enlarge the jurisdiction of federal Courts beyond the Constitutional limits, nor refer the plentiful of power to a none article III court.

matters of insolvency for its own Municipalities and Governmental entities;

d)    dismissing all other counts for want of jurisdiction as the case is not ripe;

e)    and/or to dismiss the totality of the case for lack of indispensable parties, and/or for comity under the Eleventh Amendment, with such other remedy as may be appropriate in law, constitution, comity and equity.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of March, 2015.

Berríos & Longo Law Office, P.S.C.
Capital Center Bldg.
#239 Arterial Hostos Ave.
Suite 900
San Juan, Puerto Rico 00918-1478
Tel. (787) 753-0884
Fax (787) 753-4821


By:    s/Edilberto Berríos Pérez
USCA 20282
*eberriosperez@berrioslongo.com*

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Case No. 15-1271

_____

FRANKLIN CALIFORNIA TAX-FREE
TRUST, *et al.*,

**Appellees**,

**v.**

MELBA ACOSTA-FEBO

**Appellant**

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA;
COMMONWEALTH OF PUERTO RICO, ALEJANDRO GARCIA PADILLA, as
Governor of the Commonwealth of Puerto Rico ,
Defendants

_____
**Case No. 15-1272**
_____

BLUEMOUNTAIN CAPITAL
MANAGEMENT, LLC

**Plaintiff, Appellee**,

**v.**

JOHN DOE, in his capacity as employee of the Government of Puerto Rico
Development Bank
Defendant, Appellant
ALEJANDRO J. GARCIA-PADILLA, in his capacity as Governor of Puerto Rico,

Cesar R. Miranda-Rodriguez, in his capacity of Secretary of Justice,
Defendants

_____

## CERTIFICATE OF COMPLIANCE

This brief complies with the type volume limitation of

Fed.R.App.P32(a)(7)(B)because this brief contains 6,966 words and 607 lines of text,

excluding the parts of the brief exempted by Fed.R.App.P.32(a)(7)(B)(iii).

In San Juan, Puerto Rico, this 17th day of March, 2014.

> Berríos & Longo Law Office, P.S.C.
> Capital Center Bldg.
> #239 Arterial Hostos Ave.
> Suite 900
> San Juan, Puerto Rico 00918-1478
> Tel. (787) 753-0884
> Fax (787) 753-4821
>
> By:    s/Edilberto Berríos Pérez
>        USCA 20282
>        *eberriosperez@berrioslongo.com*

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

Cases No. 15-1271

_____

Franklin California Tax Free Trust, , ET AL.,

**Plaintiffs Appellees**

vs.

Melba Acosta-Febo, as Government Development Bank Agent, *et. al.*,
**Defendants Appellants**

PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA);
COMMONWEALTH OF PUERTO RICO;  ALEJANDRO GARCÍA PADILLA,
as Governor of the Commonwealth of Puerto Rico.
**Defendants**

_____
15-1272
BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC,  for and on behalf of investment
funds for which it acts as investment manager,
Plaintiff Appellee

v.

JOHN DOE, in his official capacity as employee or agent of Puerto Rico
Development Bank of Puerto Rico
Defendant Appellant

ALEJANDRO GARCÍA PADILLA, as Governor of the Commonwealth of Puerto
Rico, CESAR r. Miranda Rodriguez, in his official capacity as secretary of Justice
of the Commonwealth of Puerto Rico
**Defendants**

_____


_____

## CERTIFICATE OF SERVICE

TO THE HONORABLE COURT:

I hereby certify that on March 17, 2015 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that on March 17, 2015 I served a copy of the foregoing document on the following parties or their counsel of record by U.S. Mail:

Jonathan M. Wagner
Kramer Levin Naftalis & Frankel, LLP
1177 Avenue of the Americas
New York, NY 10036
212-715-9100
Fax: 212-715-8000

Linette Figueroa-Torres
Toro, Colon, Mullet, Rivera & Sifre, PSC
P.O. Box 195383
San Juan, PR  00919-5383
787-751-8999

Manuel Fernandez-Bared
Toro, Colon, Mullet, Rivera & Sifre, PSC
P.O. Box 195383
San Juan, PR  009195383
787-751-8999
Fax: 787-763-7760

Laura R. Domínguez-Llerandi
30 Reparto Pinero St.
Guaynabo, PR 00969
787-528-7583

Counsels for Appellees in case no. 15-1271, Franklin California Tax-Free Trust; Franklin New York Tax-Free Trust; Franklin Tax-Free Trust; Franklin Municipal Securities Trust; Franklin California Tax-Free Income Fund; Franklin New York Tax-Free Income Fund; Franklin Federal Tax-Free Income Fund; Oppenheimer Rochester Fund Municipals; Oppenheimer Municipal Fund; Oppenheimer Multi-State Municipal Trust; Oppenheimer Rochester Ohio Municipal Fund; Oppenheimer Rochester Arizona Municipal Fund; Oppenheimer Rochester Virginia Municipal Fund; Oppenheimer Rochester Maryland Municipal Fund; Oppenheimer Rochester Limited Term California Municipal Fund; Oppenheimer Rochester California Municipal Fund; Rochester Portfolio Series; Oppenheimer Rochester Amt-Free Municipal Fund; Oppenheimer Rochester Amt-Free New York Municipal Fund; Oppenheimer Rochester Michigan Municipal Fund; Oppenheimer Rochester Massachusetts Municipal Fund; Oppenheimer Rochester

North Carolina Municipal Fund; and Oppenheimer Rochester Minnesota
Municipal Fund

and to

Matthew D. McGill
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036
202-995-8500
Fax: 202-530-9662

Theodore B. Olson
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave., NW
Washington, DC 20036
202-995-8500
Fax: 202-530-9662

Jeffrey M. Williams
Indiano & Williams, PSC
207 Del Parque Street
Third Floor
San Juan, PR 00912
787-641-4545
Fax: 787-641-4544

Leticia Casalduc-Rabell
Indiano & Williams, PSC
207 Del Parque Street
Third Floor
San Juan, PR 00912
787-641-4545
Fax: 787-641-4544

Counsels for BlueMountain Capital Management, LLC

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of March, 2015.

Berríos & Longo Law Office, P.S.C.
Capital Center Bldg.
#239 Arterial Hostos Ave.
Suite 900
San Juan, Puerto Rico 00918-1478
Tel. (787) 753-0884
Fax (787) 753-4821

By:    s/*Edilberto Berríos Pérez*
USCA 20282
*eberriosperez@berrioslongo.com*

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

---

## Case No. 15-1271

---

FRANKLIN CALIFORNIA TAX-FREE
TRUST, *et al.*,
**Appellees**
v.
MELBA ACOSTA-FEBO
**Appellant**
PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA;
COMMONWEALTH OF PUERTO RICO, ALEJANDRO GARCIA PADILLA, as
Governor of the Commonwealth of Puerto Rico ,
**Defendants**

---

## Case No. 15-1272

---

BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC,
**Plaintiff, Appellee**,
v.
JOHN DOE, in his capacity as employee of the Government of Puerto Rico
Development Bank
Defendant, Appellant
ALEJANDRO J. GARCIA-PADILLA, in his capacity as Governor of Puerto Rico,
Cesar R. Miranda-Rodriguez, in his capacity of Secretary of Justice,Defendants

## ADDENDUM TO AMICUS CURIAE BRIEF

| Ex. # | Description | Page |
|-------|-------------|------|
| 1 | Opinion and Order from the U.S. District Court dated Fabruary 6, 2015 | 1-75 |
| 2 | 11 U.S.C §103 | 76 |
| 3 | 11 U.S.C. §109 | 77 |
| 4 | 11 U.S.C. §903 | 78 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANKLIN CALIFORNIA TAX-FREE TRUST, *et al.*, | |
| **Plaintiffs**, | |
| **v.** | Civil No. 14-1518 (FAB) |
| COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| **Defendants.** | |
| BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC, | |
| **Plaintiff**, | |
| **v.** | Civil No. 14-1569 (FAB) |
| ALEJANDRO J. GARCIA-PADILLA, *et al.*, | |
| **Defendants.** | |

OPINION AND ORDER

BESOSA, District Judge.

Plaintiffs in these two cases seek a declaratory judgment that the Puerto Rico Public Corporation Debt Enforcement and Recovery Act ("Recovery Act") is unconstitutional. (Civil No. 14-1518, Docket No. 85; Civil No. 14-1569, Docket No. 20.) Before the Court are three motions to dismiss plaintiffs' complaints and one cross-motion for summary judgment.

For the reasons explained below, the Court **GRANTS in part** and **DENIES in part** the three motions to dismiss, (Civil No. 14-1518,

1

Docket Nos. 95 & 97; Civil No. 14-1569, Docket No. 29), and **GRANTS in part** and **DENIES in part** the cross-motion for summary judgment, (Civil No. 14-1518, Docket No. 78).  Because the Recovery Act is preempted by the federal Bankruptcy Code, it is void pursuant to the Supremacy Clause of the United States Constitution.

## I. BACKGROUND

Plaintiffs collectively hold nearly two billion dollars of bonds issued by the Puerto Rico Electric Power Authority ("PREPA"). As background for the bases of plaintiffs' claims challenging the constitutionality of the Recovery Act, the Court first summarizes relevant provisions of the PREPA Authority Act (which authorized PREPA to issue bonds), the Trust Agreement (pursuant to which PREPA issued bonds to plaintiffs), the Recovery Act itself, and Chapter 9 of the federal Bankruptcy Code.

## A.    The Authority Act of May 1941

In May 1941, the Commonwealth of Puerto Rico ("the Commonwealth") enacted the Puerto Rico Electric Power Authority Act ("Authority Act"), P.R. Laws Ann. tit. 22 §§ 191-239, creating PREPA and authorizing it to issue bonds, id. §§ 193, 206.  Through the Authority Act, the Commonwealth expressly pledged to PREPA bondholders "that it will not limit or alter the rights or powers hereby vested in [PREPA] until all such bonds at any time issued, together with the interest thereon, are fully met and discharged." Id. § 215.  The Authority Act also expressly gives PREPA

bondholders the right to seek the appointment of a receiver if PREPA defaults on any of its bonds.  Id. § 207.

**B.    The Trust Agreement of January 1974**

PREPA issued the bonds underlying these two lawsuits pursuant to a trust agreement with U.S. Bank National Association as Successor Trustee, dated January 1, 1974, as amended and supplemented through August 1, 2011 ("Trust Agreement").  The Trust Agreement contractually requires PREPA to pay principal and interest on plaintiffs' bonds promptly.  Trust Agreement § 701. Plaintiffs' bonds are secured by a pledge of PREPA's present and future revenues, id., and PREPA is prohibited from creating a lien equal to or senior to plaintiffs' lien on these revenues, id. § 712.  Upon the occurrence of an "event of default," as the term is defined in the Trust Agreement, plaintiff bondholders may accelerate payments, seek the appointment of a receiver "as authorized by the Authority Act," and sue at law or equity to enforce the terms of the Trust Agreement.  Id. §§ 802-804.  An event of default occurs when, among other things, PREPA institutes a proceeding "for the purpose of effecting a composition between [PREPA] and its creditors or for the purpose of adjusting the claims of such creditors pursuant to any federal or Commonwealth statute now or hereafter enacted."  Id. § 802(g).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                                                    4

**C.    The Recovery Act of June 2014**

On June 25, 2014, the Commonwealth Senate and House of Representatives approved the Recovery Act, and on June 28, 2014, the Governor signed the Recovery Act into law.  The Recovery Act's Statement of Motives indicates that Puerto Rico's public corporations, especially PREPA, "face significant operational, fiscal, and financial challenges" and are "burdened with a heavy debt load as compared to the resources available to cover the corresponding debt service."  Recovery Act, Stmt. of Motives, § A. To address this "state of fiscal emergency," the Recovery Act establishes two procedures for Commonwealth public corporations to restructure their debt.  Id., Stmt. of Motives, §§ A, E.  It also creates the Public Sector Debt Enforcement and Recovery Act Courtroom (hereinafter, "special court") to preside over proceedings and cases brought pursuant to these two procedures. Id. § 109(a).

The first restructuring procedure is set forth in Chapter 2 of the Recovery Act and permits an eligible public corporation to seek debt relief from its creditors with authorization from the Government Development Bank for Puerto Rico ("GDB").  Recovery Act § 201(b).  The public corporation invoking this approach proposes amendments, modifications, waivers, or exchanges to or of a class of specified debt instruments.  Id. § 202(a).  If creditors representing at least fifty percent of the debt in a given class

4

vote on whether to accept the changes, and at least seventy-five percent of participating voters approve, then the special court may issue an order approving the transaction and binding the entire class. Id. §§ 115(b), 202(d), 204.

Chapter 3 of the Recovery Act sets forth the second restructuring approach. Under this approach, an eligible public corporation, again with GDB approval, submits to the special court a petition that lists the amounts and types of claims that will be affected by a restructuring plan. Recovery Act § 301(d). The public corporation then files a proposed restructuring plan or a proposed transfer of the corporation's assets. Id. § 310. The special court may confirm the plan if the plan meets certain requirements, id. § 315, including a requirement that "at least one class of affected debt has voted to accept the plan by a majority of all votes cast in such class and two-thirds of the aggregate amount of affected debt in such class that is voted," id. § 315(e). The special court's confirmation order binds all of the public corporation's creditors to the restructuring plan. Id. § 115(c).

Chapter 2 of the Recovery Act provides for a suspension period and Chapter 3, an automatic stay, during which time creditors may not assert claims or exercise contractual remedies against the public corporation debtor that invokes the Recovery Act. See Recovery Act §§ 205, 304.

## D.   Chapter 9 of the Federal Bankruptcy Code

The Recovery Act is modeled on Title 11 of the United States Code ("the federal Bankruptcy Code"), and particularly on Chapter 9 of that title.  Recovery Act, Stmt. of Motives, § E.   Chapter 9 governs the adjustment of debts of a municipality, 11 U.S.C. §§ 901 *et seq.*, and "municipality" includes a public agency or instrumentality of a state, <u>id.</u> § 101(40).  A municipality seeking to adjust its debts pursuant to Chapter 9 must receive specific authorization from its state.   <u>Id.</u> § 109(c)(2).   Puerto Rico municipalities are expressly prohibited from seeking debt adjustment pursuant to Chapter 9.  <u>Id.</u> § 101(52).

## II. THE PRESENT LITIGATION

## A.   Franklin and Oppenheimer Rochester Plaintiffs' Second Amended Complaint (Civil No. 14-1518)

Franklin plaintiffs[1] are Delaware corporations or trusts that collectively hold approximately $692,855,000 of PREPA bonds. (Civil No. 14-1518, Docket No. 85 at ¶ 3.)  Oppenheimer Rochester

---

[1] The Court refers to the following parties collectively as "Franklin plaintiffs": Franklin California Tax-Free Trust (for the Franklin California Intermediate-Term Tax Free Income Fund), Franklin Tax-Free Trust (for the series Franklin Federal Intermediate-Term Tax-Free Income Fund, Franklin Double Tax-Free Income Fund, Franklin Colorado Tax-Free Income Fund, Franklin Georgia Tax-Free Income Fund, Franklin Pennsylvania Tax-Free Income Fund, Franklin High Yield Tax-Free Income Fund, Franklin Missouri Tax-Free Income Fund, Franklin Oregon Tax-Free Income Fund, Franklin Virginia Tax-Free Income Fund, Franklin Florida Tax-Free Income Fund, Franklin Louisiana Tax-Free Income Fund, Franklin Maryland Tax-Free Income Fund, Franklin North Carolina Tax-Free Income Fund, and Franklin New Jersey Tax-Free Income Fund), Franklin Municipal Securities Trust (for the series Franklin California High Yield Municipal Bond Fund and Franklin Tennessee Municipal Bond Fund), Franklin California Tax-Free Income Fund, Franklin New York Tax-Free Income Fund, and Franklin Federal Tax-Free Income Fund.

plaintiffs[2] are Delaware statutory trusts that hold approximately $866,165,000 of PREPA bonds.  Id. at ¶ 4.  On August 11, 2014, the Franklin and Oppenheimer Rochester plaintiffs filed a second amended complaint against the Commonwealth of Puerto Rico, Alejandro Garcia-Padilla (in his official capacity as Governor of Puerto Rico), Melba Acosta (in her official capacity as a GDB agent), and PREPA.  (Civil No. 14-1518, Docket No. 85.)  The Franklin and Oppenheimer Rochester plaintiffs seek declaratory relief on the following claims: (1) Preemption: that the Recovery Act in its entirety is preempted by section 903 of the federal Bankruptcy Code and violates the Bankruptcy Clause of the United States Constitution; (2) Contract Clause: that sections 108, 115, 202, 312, 315, and 325 of the Recovery Act violate the Contract Clause of the United States Constitution by impairing the contractual obligations imposed by the Authority Act and the Trust Agreement; (3) Takings Clause: that the Recovery Act violates the Takings Clause of the United States Constitution by taking without

---

[2] The Court refers to the following parties collectively as "Oppenheimer Rochester plaintiffs": Oppenheimer Rochester Fund Municipals, Oppenheimer Municipal Fund (on behalf of its series Oppenheimer Rochester Limited Term Municipal Fund), Oppenheimer Multi-State Municipal Trust (on behalf of its series Oppenheimer Rochester New Jersey Municipal Fund, Oppenheimer Rochester Pennsylvania Municipal Fund and Oppenheimer Rochester High Yield Municipal Fund), Oppenheimer Rochester Ohio Municipal Fund, Oppenheimer Rochester Arizona Municipal Fund, Oppenheimer Rochester Virginia Municipal Fund, Oppenheimer Rochester Maryland Municipal Fund, Oppenheimer Rochester Limited Term California Municipal Fund, Oppenheimer Rochester California Municipal Fund, Rochester Portfolio Series (on behalf of its series Oppenheimer Rochester Limited Term New York Municipal Fund), Oppenheimer Rochester AMT-Free Municipal Fund, Oppenheimer Rochester AMT-Free New York Municipal Fund, Oppenheimer Rochester Michigan Municipal Fund, Oppenheimer Rochester Massachusetts Municipal Fund, Oppenheimer Rochester North Carolina Municipal Fund, and Oppenheimer Rochester Minnesota Municipal Fund.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                          8

just compensation plaintiffs' contractual right to seek the appointment of a receiver, <u>see</u> Recovery Act § 108(b), and plaintiffs' lien on PREPA revenues, <u>see</u> <u>id.</u> §§ 129(d), 322(c); and (4) <u>Stay of Federal Court Proceedings:</u> that section 304 of the Recovery Act unconstitutionally authorizes a stay of federal court proceedings when a public corporation files for debt relief pursuant to the Recovery Act. (Civil No. 14-1518, Docket No. 85 at ¶¶ 58-71.)

**B.   Franklin and Oppenheimer Rochester Plaintiffs' Cross-Motion for Summary Judgment**

On August 11, 2014, the Franklin and Oppenheimer Rochester plaintiffs filed a cross-motion for summary judgment on their preemption and stay of federal court proceedings claims (while opposing original motions to dismiss). (Civil No. 14-1518, Docket No. 78.)

**C.   Plaintiff BlueMountain's Amended Complaint (Civil No. 14-1569)**

BlueMountain Capital Management, LLC (for itself and for and on behalf of investment funds for which it acts as investment manager) ("BlueMountain") is a Delaware company that holds PREPA bonds and that manages funds that hold more than $400,000,000 of PREPA bonds. (Civil No. 14-1569, Docket No. 20 at ¶ 6.) On August 12, 2014, BlueMountain filed an amended complaint against Alejandro Garcia-Padilla (in his official capacity as Governor of Puerto Rico), Cesar R. Miranda Rodriguez (in his official capacity as the Attorney General of Puerto Rico), and John Doe (in his official

capacity as a GDB agent).  (Civil No. 14-1569, Docket No. 20.)
Plaintiff BlueMountain seeks declaratory relief on the following
claims: (1) <u>Preemption:</u> that the Recovery Act in its entirety is
preempted by the federal Bankruptcy Code and violates the
Bankruptcy Clause of the United States Constitution; (2) <u>Contract
Clauses:</u> that the Recovery Act impairs the contractual obligations
imposed by the Authority Act and the Trust Agreement and therefore
violates the contract clauses of the United States and Puerto Rico
constitutions; and (3) <u>Stay of Federal Court Proceedings:</u> that
sections 205 and 304 of the Recovery Act unconstitutionally
authorize a stay of federal court proceedings when a public
corporation files for debt relief pursuant to the Recovery Act.
(Civil No. 14-1569, Docket No. 20 at ¶ 83.)

**D.   Consolidation Order**

On August 20, 2014, the Court consolidated Civil Case Nos. 14-
1518 and 14-1569.  In so doing, the Court aligned the briefing
schedules for both cases but did not merge the suits into a single
cause of action or change the rights of the parties.  (Civil No.
14-1518, Docket No. 92; Civil No. 14-1569, Docket No. 26.)

The two cases contain overlapping claims but are distinct in
three salient ways.  First, the Franklin and Oppenheimer Rochester
plaintiffs bring suit against Commonwealth defendants and PREPA (in
Civil No. 14-1518), whereas BlueMountain names only Commonwealth
defendants (in Civil No. 14-1569).  Second, only the Franklin and

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                          10

Oppenheimer Rochester plaintiffs raise a Takings Clause claim.
Third, only BlueMountain brings a Puerto Rico Constitution Contract
Clause claim.

**E.    Commonwealth and PREPA Motions to Dismiss**

On September 12, 2014, the Commonwealth defendants[3] moved to
dismiss the Franklin and Oppenheimer Rochester plaintiffs' second
amended complaint and BlueMountain's amended complaint, and opposed
the Franklin and Oppenheimer Rochester plaintiffs' cross-motion for
summary judgment.   (Civil No. 14-1518, Docket No. 95, mem. at
Docket No. 95-1; Civil No. 14-1569, Docket No. 29, mem. at Docket
No. 29-1.)[4]   The Commonwealth defendants argue that plaintiffs'
claims are unripe and fail on the merits as a matter of law.

PREPA joined the Commonwealth defendants' motion to dismiss
the Franklin and Oppenheimer Rochester plaintiffs' second amended
complaint and opposition to the cross-motion for summary judgment.
(Civil No. 14-1518, Docket No. 97 at p. 1.)   PREPA also filed its
own motion to dismiss, arguing that the Franklin and Oppenheimer

---

[3] The following parties are collectively referred to as the "Commonwealth
defendants": the Commonwealth of Puerto Rico, Alejandro Garcia-Padilla (in his
official capacity as Governor of Puerto Rico), Cesar R. Miranda Rodriguez (in his
official capacity as Attorney General of Puerto Rico), Melba Acosta (in her
official capacity as a GDB agent), and John Doe (in his official capacity as a
GDB agent).

[4] These two memoranda are identical. Compare Civil No. 14-1518, Docket No. 95-1,
with Civil No. 14-1569, Docket No. 29-1.   That is, the Commonwealth defendants
raised identical arguments in moving to dismiss the Franklin and Oppenheimer
Rochester plaintiffs' second amended complaint and BlueMountain's amended
complaint.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                                      11

Rochester plaintiffs lack standing and that their claims are unripe. (Civil No. 14-1518, Docket No. 97.)

The Franklin and Oppenheimer Rochester plaintiffs opposed the Commonwealth defendants' motion and PREPA's motion, (Civil No. 14-1518, Docket No. 102), and BlueMountain opposed the Commonwealth defendants' motion, (Civil No. 14-1569, Docket No. 41). The Commonwealth defendants replied, (Civil No. 14-1518, Docket No. 108; Civil No. 14-1569, Docket No. 44),[5] as did PREPA (Civil No. 14-1518, Docket No. 109).

### III. SUBJECT MATTER JURISDICTION

Defendants challenge the Court's subject matter jurisdiction and seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). Defendants argue that plaintiffs' claims are unripe because PREPA has not sought to restructure its debt pursuant to the Recovery Act. Therefore, defendants argue, plaintiffs have no basis to claim that the Recovery Act injured plaintiffs in their capacity as PREPA bondholders. (Civil No. 14-1518, Docket No. 95-1 at pp. 8-13; Civil No. 14-1569, Docket No. 29-1 at pp. 8-13.) In addition to this ripeness argument, defendant PREPA argues separately that the Franklin and Oppenheimer Rochester plaintiffs lack standing. (Civil No. 14-1569, Docket No. 97 at pp. 5-14.)

---

[5] These two memoranda are identical. <u>Compare</u> Civil No. 14-1518, Docket No. 108, <u>with</u> Civil No. 14-1569, Docket No. 44.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    12

**A.   Rule 12(b)(1) Motion to Dismiss Standard**

Pursuant to Rule 12(b)(1), a defendant may seek dismissal of claims by asserting that the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiffs bear "the burden of clearly alleging definite facts to demonstrate that jurisdiction is proper." Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 25 (1st Cir. 2007). The Court accepts as true the well-pled factual allegations in the plaintiffs' complaints and makes all reasonable inferences in the plaintiffs' favor. Downing/Salt Pond Partners, L.P. v. Rhode Island & Providence Plantations, 643 F.3d 16, 17 (1st Cir. 2011). On a Rule 12(b)(1) motion, the Court may consider materials outside the pleadings to determine jurisdiction. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

**B.   Ripeness**

The ripeness doctrine "has roots in both the Article III case or controversy requirement and in prudential considerations." Manqual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003). "The 'basic rationale' of the ripeness inquiry is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). The ripeness test has two prongs: "'the fitness of the

12

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    13

issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'"    <u>Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n</u>, 461 U.S. 190, 201 (1983) (quoting <u>Abbott Labs.</u>, 387 U.S. at 149).    Both the fitness and hardship prongs of this test "must be satisfied, although a strong showing on one may compensate for a weak one on the other."    <u>McInnis-Misenor v. Maine Med. Ctr.</u>, 319 F.3d 63, 70 (1st Cir. 2003).

The First Circuit Court of Appeals has repeatedly cautioned that ripeness inquiries are "highly fact-dependent, such that the 'various integers that enter into the ripeness equation play out quite differently from case to case.'"    <u>Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322</u>, 651 F.3d 176, 188 (1st Cir. 2011) (quoting <u>Doe v. Bush</u>, 323 F.3d 133, 138 (1st Cir. 2003) (quoting <u>Ernst & Young v. Depositors Econ. Prot. Corp.</u>, 45 F.3d 530, 535 (1st Cir. 1995))).

**1.    Plaintiffs' Preemption and Contract Clauses Claims Are Ripe**

As discussed below, the Court concludes that plaintiffs' preemption and contract clauses claims are fit for review, and that withholding judgment on these claims will impose hardship.

*a)    Fitness*

"The fitness prong of the ripeness test has both constitutional and prudential components."    <u>Roman Catholic Bishop of Springfield</u>, 724 F.3d at 89.    The constitutional component is

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                     14

"grounded in the prohibition against advisory opinions" and "concerns whether there is a sufficiently live case or controversy, at the time of the proceedings, to create jurisdiction in the federal courts." Id. (internal quotation marks and citations omitted). A sound way to determine constitutional fitness is to "evaluate the nature of the relief requested; [t]he controversy must be such that it admits of 'specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994) (quoting Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 241 (1937)).

Texas v. United States, 523 U.S. 296 (1998), provides a prime example of an unfit case where the plaintiff seeks an opinion advising what the law would be in a hypothetical scenario. In that case, the Texas Education Code permitted the imposition of ten possible sanctions if a school district failed the state's accreditation criteria. Texas, 523 U.S. at 298. The State of Texas sought a declaratory judgment that the Voting Rights Act "under no circumstances" would apply to the imposition of two of these sanctions. Id. at 301. The sanctions, however, were never imposed. Id. at 298. Thus, the circumstances under which the sanctions could be imposed were entirely hypothetical and speculative. As to the fitness inquiry, the United States Supreme

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    15

Court concluded that it would not employ its "powers of imagination" and that the operation of the sanction provisions would be "better grasped when viewed in light of a particular application." Id. at 301; see Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd, 347 U.S. 222, 224 (1954) ("Determination of the scope . . . of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.").

  Here, plaintiffs' preemption and contract clauses claims rely on the *enactment* of the Recovery Act, not on its *application*. Plaintiffs do not seek a declaration that the Recovery Act *would be preempted* if enforced in a hypothetical way. Nor do plaintiffs seek a declaration that the Recovery Act *would impair contractual obligations* if applied in a hypothetical scenario. Rather, the relief plaintiffs seek – a declaration that the Recovery Act is unconstitutional because federal law preempts it and because the Contracts Clause prohibits it – is conclusive in character, not dependant on hypothetical facts, and completely unlike the advisory opinion sought in Texas.

  The prudential component of the fitness prong considers "the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." Ernst & Young, 45 F.3d at 535. Accordingly, cases "intrinsically legal

nature" are likely to be found fit.  Riva v. Massachusetts, 61 F.3d 1003, 1010 (1st Cir. 1995); see Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 581 (1985) (claim that a law violated Article III of the Constitution was fit for review because it was "purely legal, and [would] not be clarified by further factual development").  Courts are also likely to find cases fit when "all of the acts that are alleged to create liability have already occurred."  Verizon New England, 651 F.3d at 189 (quotation marks and citation omitted); see Roman Catholic Bishop of Springfield, 724 F.3d at 91-93 (dismissing claims that rely on a potential future application of an ordinance as unfit for review, but holding that the claims that "rest solely on the existence of the Ordinance" are fit for review because "no further factual development is necessary"); Pustell v. Lynn Pub. Sch., 18 F.3d 50, 52 (1st Cir. 1994) (finding constitutional challenge fit where "[n]o further factual development [was] necessary for [the court] to resolve the question at issue").

          The issues presented in plaintiffs' preemption claims are purely legal: the Court need not consider any fact to determine whether the Recovery Act, on its face, is preempted by federal law.  Plaintiffs' contract clauses claims involve two limited factual inquiries: (1) whether the enactment of the Recovery Act substantially impaired the contractual relationships created in the Authority Act and the Trust Agreement, and (2)

whether the enactment of the Recovery Act was "reasonable and necessary to serve an important public purpose." See infra Part V. Both of these inquiries involve solely acts that occurred and facts that existed at or before the Recovery Act's enactment in June 2014. Thus, plaintiffs' contract clauses claims do not require further factual development.

The Court therefore finds that plaintiffs' preemption and contract clauses claims are fit for review.

**b)   *Hardship***

The hardship prong of the ripeness test evaluates whether "the impact" of the challenged law upon the plaintiffs is "sufficiently direct and immediate as to render the issue appropriate for judicial review." Abbott Labs., 387 U.S. at 152. This inquiry should also "focus on the judgment's usefulness" and consider "whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." Rhode Island, 19 F.3d at 693; accord Verizon New England, 651 F.3d at 188.

Plaintiffs allege that the enactment of the Recovery Act totally eliminated several remedial and security rights promised to them in the Authority Act and in the Trust Agreement. First, in the Authority Act, the Commonwealth expressly pledged that it would not alter PREPA's rights until all bonds are fully

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    18

satisfied and discharged.  P.R. Laws Ann. tit. 22 § 215.[6]
Plaintiffs allege that the Recovery Act eliminates this guarantee
by giving PREPA the right to participate in a new legal regime to
restructure its debts.  Second, section 17 of the Authority Act
grants bondholders the right to seek appointment of a receiver if
PREPA defaults.  P.R. Laws Ann. tit. 22 § 207.  This right is
incorporated into section 804 of the Trust Agreement, which
guarantees that bondholders have the right to seek "the appointment
of a receiver as authorized by the Authority Act" if PREPA
defaults.  Trust Agreement § 804.  Plaintiffs allege that the
Recovery Act expressly eliminates the right to seek the appointment
of a receiver.  See Recovery Act § 108(b).[7]  Third, the Trust
Agreement includes a guarantee that PREPA will not create a lien
equal to or senior to the lien on PREPA's revenues that secures
plaintiffs' bonds.  Trust Agreement § 712.  Plaintiffs allege that
the Recovery Act eliminates this guarantee by permitting PREPA to
obtain credit secured by a lien that is senior to plaintiffs' lien.

––––––––––––––––––––

[6] The Authority Act provides as follows:
     The Commonwealth Government does hereby pledge to, and agree with,
     any person, firm or corporation, or any federal, Commonwealth or
     state agency, subscribing to or acquiring bonds of [PREPA] to
     finance in whole or in part any undertaking or any part thereof,
     that it will not limit or alter the rights or powers hereby vested
     in [PREPA] until all such bonds at any time issued, together with
     the interest thereon, are fully met and discharged.
P.R. Laws Ann. tit. 22 § 215.

[7] "This Act supersedes and annuls any insolvency or custodial provision included
in the enabling or other act of any public corporation, including Section 17 of
[the Authority Act]."  Recovery Act § 108(b).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    19

See Recovery Act §§ 129(d), 206(a), 322(c).[8]  Fourth, in the event of default, the Trust Agreement gives PREPA bondholders the right to accelerate payments.  Trust Agreement § 803.  Plaintiffs allege that the Recovery Act destroys their right to this remedy both during the suspension and stay provisions, Recovery Act §§ 205, 304, and after the special court approves a plan pursuant to

---

[8] Section 322(c) of the Recovery Act permits the special court to authorize public corporations that seek debt relief pursuant to Chapter 3 to obtain credit "secured by a senior or equal lien on the petitioner's property that is subject to a lien only if – (1) the petitioner is unable to obtain such credit otherwise; and (2) either (A) the proceeds are needed to perform public functions and satisfy the requirements of section 128 of this Act; or (B) there is adequate protection of the interest of the holder of the lien on the property of the petitioner on which such senior or equal lien is proposed to be granted." Recovery Act § 322(c).  This right extends to corporations seeking debt relief pursuant to Chapter 2 of the Recovery Act.  See id. § 206(a) ("After the commencement of the suspension period, an eligible obligor may obtain credit in the same manner and on the same terms as a petitioner pursuant to section 322 of this Act.")  Section 129(d) of the Recovery Act disposes of the "adequate protection" requirement in section 322(c)(2)(B) when "police power" justifies it. Id. § 129(d).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    20

Chapter 2 or 3, id. §§ 115(b)(2), 115(c)(3).[9]  Fifth, the Trust

Agreement contains an *ipso facto* clause that provides that PREPA is

deemed in default if PREPA institutes a proceeding "for the purpose

of effecting a composition between [PREPA] and its creditors or for

the purpose of adjusting the claims of such creditors."  Trust

Agreement § 802(g).   Plaintiffs allege that the Recovery Act

explicitly renders this *ipso facto* clause unenforceable in a

---

[9] Section 205 prohibits bondholders from exercising remedies during Chapter 2's suspension period.   Recovery Act § 205 ("Notwithstanding any contractual provision or applicable law to the contrary, during the suspension period, no entity asserting claims or other rights, . . . in respect of affected debt instruments . . . may exercise or continue to exercise any remedy under a contract or applicable law . . . that is conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceedings (or a similar or analogous process) by, the eligible obligor concerned, including a default or an event of default thereunder."). Section 304 stays "any act to collect, assess, or recover on a claim against the petitioner" during Chapter 3's automatic stay period.  Id. § 304.

Section 115 prohibits bondholders from exercising remedies after the special court approves a plan pursuant to Chapter 2 or 3.  Id. § 115(b)(2) ("Upon entry of an approval order . . . under chapter 2 of this Act . . . no entity asserting claims or other rights, including a beneficial interest, in respect of affected debt instruments of such eligible obligor . . . shall bring any action or proceeding of any kind or character for the enforcement of such claim or remedies in respect of such affected debt instruments, except with the permission of the [special court] and then only to recover and enforce the rights permitted under the amendments, modifications, waivers, or exchanges, and the approval order."); id. § 115(c)(3) ("[U]pon entry of a confirmation order, . . . all creditors affected by the plan . . . shall be enjoined from, directly or indirectly, taking any action inconsistent with the purpose of this Act, including bringing any action or proceeding of any kind or character for the enforcement of such claim or remedies in respect of affected debt, except as each has been affected pursuant to the plan under chapter 3.").

section titled "Unenforceable Ipso Facto Clauses." <u>See</u> Recovery Act § 325(a); <u>see also</u> <u>id.</u> § 205(c).[10]

      The Commonwealth's nullification of this series of statutory and contractual security rights and remedial provisions, through its enactment of the Recovery Act, is a "direct and immediate" injury to the plaintiff bondholders. <u>See</u> <u>Abbott Labs.</u>, 387 U.S. at 152. Plaintiffs should not be forced to live with such substantially impaired contractual rights – rights that they bargained for when they purchased the nearly two billion dollars worth of PREPA bonds that they hold collectively.

      This hardship is certainly more immediate and concrete than the "threat to federalism" hardship that the plaintiff alleged in <u>Texas</u>, which the Supreme Court viewed as an "abstraction" that was "inadequate to support suit unless the [plaintiff's] primary conduct is affected." 523 U.S. at 302. Here, not having the guarantee of remedial provisions that they

---

[10] Section 325 of the Recovery Act provides as follows in its first subsection: Notwithstanding any contractual provision or applicable law to the contrary, a contract of a petitioner may not be terminated or modified, and any right or obligation under such contract may not be terminated or modified, at any time after the filing of a petition under chapter 3 of this Act solely because of a provision in such contract conditioned on –
(1) the insolvency or financial condition of the petitioner at any time before the closing of the case;
(2) the filing of a petition pursuant to section 301 of this Act and all other relief requested under this Act; or
(3) a default under a separate contract that is due to, triggered by, or as a result of the occurrence of the events or matters in subsections (a)(1) [the petitioner's insolvency] or (a)(2) [the filing of a Chapter 3 petition] of this section.
Recovery Act § 325(a). Section 205(c) of the Recovery Act has nearly identical language and renders *ipso facto* clauses unenforceable during the suspension period of a Chapter 2 proceeding. <u>Id.</u> § 205(c).

were promised affects plaintiffs' day-to-day business as PREPA
bondholders, particularly when negotiating with PREPA over remedies
and potential restructuring.    Indeed, the threat of PREPA's
invocation of the Recovery Act hangs over plaintiffs and diminishes
their bargaining power as bondholders.  See Metro. Wash. Airports
Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S.
252, 265 n.13 (1991) (concluding that constitutional challenge to
"veto power" of administrative board was ripe "even if the veto
power has not been exercised to respondents' detriment" because the
"threat of the veto hangs over the [decisionmakers subject to the
veto] like the sword over Damocles, creating a 'here-and-now
subservience'" to the administrative board).

        In addition, plaintiffs' sought-after declaration
that the Recovery Act is unconstitutional would "be of practical
assistance in setting the underlying controversy to rest" because
it would completely restore plaintiffs' contractual rights.  See
Rhode Island, 19 F.3d at 693.  In this sense, the hardship here is
unlike the hardship in Ernst & Young, 45 F.3d 530.  In that case,
the plaintiff alleged that a Rhode Island law limiting nonsettling
tortfeasors' right of contribution against joint tortfeasors caused
two hardships: increased pressure to settle a negligence suit and
an inability to evaluate its exposure therein.  45 F.3d at 532-33,
539.  The First Circuit Court of Appeals, in holding the claim
unripe, reasoned that resolving the challenge to the Rhode Island

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                              23

law would be of "limited utility" to the plaintiff because (1) the
plaintiff would still be faced with the negligence suit, and (2)
the right to contribution was only one of many factors involved in
the plaintiff's settlement calculations.  Id. at 540 (explaining
that "the usefulness that may satisfy the hardship prong . . . is
not met by a party showing that it has the opportunity to move from
a position of utter confusion to one of mere befuddlement").  Here,
the declaration that plaintiffs seek on their preemption and
contract clauses claims – that the Recovery Act in its entirety is
unconstitutional – would be of great utility to plaintiffs because
it would completely restore their rights guaranteed in the
Authority Act and the Trust Agreement.

          In sum, delaying adjudication on the merits of
plaintiffs' constitutional claims until PREPA invokes the Recovery
Act – the event that the Commonwealth defendants concede would
render plaintiffs' challenges ripe, (Civil No. 14-1518, Docket No.
95-1 at pp. 1, 12-13) – would continue to inflict hardship on
plaintiffs with no identifiable corresponding gain.  Thus, having
satisfied the fitness and hardship prongs of the ripeness test, the
Court concludes that plaintiffs' preemption and contract clauses
claims are ripe for review.

     **2.  Plaintiffs' Stay of Federal Court Proceedings Claims Are
          Not Ripe**

          Plaintiffs seek a declaratory judgment that the Recovery
Act violates the United States Constitution to the extent that

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                          24

section 304 of the Act authorizes a stay of federal court proceedings when a public corporation files for debt relief. (Civil No. 14-1518, Docket No. 85 at ¶¶ 55, 69; Civil No. 14-1569, Docket No. 20 at ¶¶ 76, 83(d).)    Plaintiff BlueMountain additionally claims that section 205 of the Recovery Act unconstitutionally authorizes a suspension of federal court proceedings. (Civil No. 14-1569, Docket No. 20 at ¶¶ 76, 83(d).) Plaintiffs do not identify a specific provision of the Constitution that these provisions violate, but rather rely on the United States Supreme Court holding in Donovan v. City of Dallas, 377 U.S. 408, 413 (1964), that "state courts are completely without power to restrain federal-court proceedings in in personam actions."

        First, as to the claims' fitness, the Court evaluates whether plaintiffs are requesting "specific relief through a decree of conclusive character" as opposed to "an opinion advising what the law would be upon a hypothetical state of facts." Rhode Island, 19 F.3d at 693 (quoting Aetna Life Ins. Co., 300 U.S. at 241). The following language in plaintiffs' complaint reveals that they seek the latter:

> To the extent any provision of the [Recovery Act] enjoins, stays, suspends or precludes [plaintiffs] from exercising their rights in federal court, including their right to challenge the constitutionality of the Recovery Act itself in federal court, those provisions also violate the Constitution.

(Civil No. 14-1518, Docket No. 85 at ¶ 57; Civil No. 14-1569, Docket No. 20 at ¶ 77.)  Plaintiffs essentially seek an opinion that *certain applications* of the suspension and stay provisions of the Recovery Act would be unconstitutional.  The Court finds that this request is akin to the relief sought in Texas, and that the operation of sections 304 and 205 of the Recovery Act would be "better grasped when viewed in light of a particular application." Texas, 523 U.S. at 301.

Second, as to the prudential component of the fitness prong, the "remoteness and abstraction" of plaintiffs' pre-enforcement injury is "increased by that fact that [the suspension and stay provisions have] yet to be interpreted by the [Puerto Rico] courts." See Texas, 523 U.S. at 301. Thus, "'[p]ostponing consideration of the questions presented, until a more concrete controversy arises, also has the advantage of permitting the state courts further opportunity to construe' the provisions," and indeed to construe them in a constitutional way. See id. (quoting Renne v. Geary, 501 U.S. 312, 323 (1991)).

Finally, concerning the hardship prong, the Court examines whether withholding judgment on the stay of federal court proceedings claims would create a "direct and immediate dilemma for the parties." See Stern v. U.S. Dist. Court for Dist. of Mass., 214 F.3d 4, 10 (1st Cir. 2000).  Because PREPA has not filed for debt relief pursuant to the Recovery Act, the suspension period and

automatic stay in sections 205 and 304 of the Recovery Act have not been triggered. Thus, plaintiffs do not allege that any actual application of the suspension or stay provisions has injured them. The Court therefore turns to whether the enactment of these provisions causes a direct injury. Enactment of the suspension and stay provisions appears to impair plaintiffs' contractual right to sue to enforce the terms of the Trust Agreement, <u>see</u> Trust Agreement § 804, which does impose hardship on plaintiffs. But this showing of hardship is weak - much weaker than the hardship created by the nullification of the series of rights that supported jurisdiction of plaintiffs' preemption and contract clauses claim.

Thus, plaintiffs' stay of federal court proceedings claims fail the fitness prong and has a weak showing on the hardship prong of the ripeness test. The Court therefore concludes that these claims are unripe and **GRANTS** the Commonwealth defendants' motions to dismiss, (Civil No. 14-1518, Docket No. 95; Civil No. 14-1569, Docket No. 29), as to the stay of federal court proceedings claims.

**C.    Standing**

The doctrines of ripeness and standing overlap in many ways. <u>McInnis-Misenor</u>, 319 F.3d at 71. Standing, like ripeness, has roots in Article III's case or controversy requirement. <u>See</u> U.S. Const. Art. III, § 2. To establish constitutional standing, a plaintiff must satisfy three elements: "a concrete and

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                          27

particularized injury in fact, a causal connection that permits
tracing the claimed injury to the defendant's actions, and a
likelihood that prevailing in the action will afford some redress
for the injury." Weaver's Cove Energy, LLC v. R.I. Coastal Res.
Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009) (internal
quotation marks and citations omitted).

Plaintiffs meet these three elements as to their preemption
and contract clauses claims against the Commonwealth defendants.
First, as discussed above, the Recovery Act's nullification of
several statutory and contractual security rights is a direct
injury to the plaintiff bondholders.[11]  Second, this injury was
caused by the Commonwealth's enactment of the Recovery Act.  Third,
plaintiffs' desired declaratory judgment that the Recovery Act is
unconstitutional will afford plaintiffs redress for the injury
because it will nullify the Recovery Act, restoring  plaintiffs'
statutory and contractual rights.

As to the Franklin and Oppenheimer Rochester plaintiffs'
claims against PREPA, however, the second element of the standing
test is not met: the elimination of plaintiffs' security rights is
traceable only to the Commonwealth's enactment of the Recovery Act
and not to any action by PREPA.  If PREPA's filing for debt relief
pursuant to the Recovery Act were imminent, this could be a
sufficient injury traceable to PREPA.  See Katz v. Pershing, LLC,

---

[11] See supra Part III.B.1.b.

27

672 F.3d 64, 71 (1st Cir. 2012) (explaining that an "imminent injury" can satisfy the standing injury-in-fact requirement if the harm is "sufficiently threatening," but that "it is not enough that the harm might occur at some future time").  To support their allegation that PREPA will file for relief pursuant to the Recovery Act imminently, plaintiffs point to (1) the Recovery Act's Statement of Motives, which identifies PREPA as the "most dramatic example" of a Commonwealth public corporation that faces significant financial challenges, and (2) market watchers' predications from July 2014 that it is highly likely that PREPA will seek relief pursuant to the Recovery Act in the near future. (Civil No. 14-1518, Docket No. 85 at ¶¶ 18-19.)  Without more, these two factual allegations merely support speculation that PREPA will file for relief at some future time; they do not support the conclusion that the filing is imminent.

Accordingly, because the Franklin and Oppenheimer Rochester plaintiffs have not sufficiently alleged any injury traceable to an action by PREPA, they lack standing to assert their claims against PREPA.  The Court therefore **GRANTS** PREPA's motion to dismiss, (Civil No. 14-1518, Docket No. 97), as to all claims to the extent that they are asserted against PREPA, and **DISMISSES** PREPA from Civil Case No. 14-1518.

The Court proceeds to the merits of plaintiffs' preemption and contract clauses claims.  The Court will then address the ripeness

and merits of the Franklin and Oppenheimer Rochester plaintiffs'
Takings Clause claim.

## IV. PREEMPTION

Plaintiffs seek a declaratory judgment that the Recovery Act
in its entirety is preempted by the federal Bankruptcy Code and
violates the Bankruptcy Clause of the United States Constitution.
(Civil No. 14-1518, Docket No. 85 at ¶ 59; Civil No. 14-1569,
Docket No. 20 at ¶ 83(a).)  The Commonwealth defendants move to
dismiss, (Civil No. 14-1518, Docket No. 95; Civil No. 14-1569,
Docket No. 29), and the Franklin and Oppenheimer Rochester
plaintiffs cross-move for summary judgment, (Civil No. 14-1518,
Docket No. 78).  The Court first addresses the appropriate standard
of review and then discusses the merits of plaintiffs' preemption
claims.

### A.    Rule 12(b)(6) Motion to Dismiss and Rule 56(a) Motion for Summary Judgment Standards

The Commonwealth defendants' motions to dismiss are governed
by Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  See
Fed. R. Civ. P. 12(b)(6).  Pursuant to Rule 12(b)(6), the Court
construes the well-pleaded facts in the plaintiffs' complaints in
the light most favorable to the plaintiffs and will dismiss the
complaints if they fail to state a plausible legal claim upon which
relief can be granted.  Ocasio-Hernandez v. Fortuño-Burset, 640
F.3d 1, 7, 12-13 (1st Cir. 2011).

The Franklin and Oppenheimer Rochester plaintiffs' motion for summary judgment is governed by Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 56. The Court will grant summary judgment if plaintiffs show "that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Id.

The parties agree that the preemption claim is purely legal and involves no disputed issues of material fact. (Civil No. 14-1518, Docket Nos. 79 at p. 7 & 95-2 at pp. 1-2.) The Court therefore resolves the preemption issues presented in the parties' motions as ones of law.

**B.    Preemption Principles**

The Supremacy Clause of the United States Constitution mandates that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this mandate, "Congress has the power to preempt state law," Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372 (2000), and a "state law that contravenes a federal law is null and void," Tobin v. Fed. Exp. Corp., No. 14-1567, 2014 WL 7388805, at *4 (1st Cir. Dec. 30, 2014). "For preemption purposes, the laws of Puerto Rico are the functional equivalent of state laws." Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012).

A federal statute can preempt a state law in three ways: express preemption, conflict preemption, and field preemption. <u>Arizona v. United States</u>, 132 S. Ct. 2492, 2500-01 (2012). Here, plaintiffs raise arguments pursuant to all three.

## C.   Express Preemption by Section 903(1) of the Federal Bankruptcy Code

"Express preemption occurs when congressional intent to preempt state law is made explicit in the language of a federal statute." <u>Tobin</u>, 2014 WL 7388805, at *4. Here, Chapter 9 of the federal Bankruptcy Code contains an express preemption clause in section 903(1). Section 903, in its entirely, provides as follows:

> This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—
>
> (1) *a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition;* and
>
> (2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.

11 U.S.C. § 903 (emphasis added). Thus, by enacting section 903(1), Congress expressly preempted state laws that prescribe a method of composition of municipal indebtedness that binds nonconsenting creditors.

The existence of this express preemption clause "does not immediately end the inquiry," however, because the Court must still ascertain "the substance and scope of Congress' displacement of state law." See Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). "Congressional intent is the principal resource to be used in defining the scope and extent of an express preemption clause," and courts look to the clause's "text and context" as well as its "purpose and history" in this endeavor. Brown v. United Airlines, Inc., 720 F.3d 60, 63 (1st Cir. 2013).

Accordingly, to determine whether section 903(1) preempts the Recovery Act, the Court first examines the clause's text and then considers its history, purpose, and context.

1.  **Section 903(1) Textual Analysis**

    *(a) "A State law"*

By its terms, section 903(1) applies to "State" laws. 11 U.S.C. § 903(1). Thus, an initial inquiry is whether Congress intended for section 903(1) to apply to Puerto Rico laws. The federal Bankruptcy Code provides in section 101(52) that "[t]he term 'State' includes the District of Columbia and Puerto Rico, except for the purpose of defining who may be a debtor under chapter 9 of this title." Id. § 101(52). Therefore, Puerto Rico is a "State" within the meaning of section 903(1) unless section 903(1) fits into the narrow exception of "defining who may be a debtor under chapter 9." See id. Section 903(1) prohibits state

composition laws that bind nonconsenting creditors; it says nothing of who may be a Chapter 9 debtor.  Id. § 903(1).[12]  Thus, it is clear from the text that Puerto Rico is a "State" within the meaning of section 903(1).

To refute this very plain conclusion, the Commonwealth defendants argue that "the [Bankruptcy] Code specifically excludes Puerto Rico (as well as the District of Columbia) from the definition of 'State' for purposes of Chapter 9."  See Civil No. 14-1518, Docket No. 95-1 at p. 16.  If Congress intended to exclude Puerto Rico from the definition of "State" for purposes of all Chapter 9 provisions, then section 101(52) would likely read as follows: "The term 'State' includes the District of Columbia and Puerto Rico, except under chapter 9 of this title." But Congress included ten more words in section 101(52) that the Commonwealth defendants attempt to, but cannot, ignore: "The term 'State' includes the District of Columbia and Puerto Rico, except *for the purpose of defining who may be a debtor* under chapter 9 of

---

[12] Section 109 of the federal Bankruptcy Code, titled "Who may be a debtor," contains a subsection defining who may be a Chapter 9 debtor.  11 U.S.C. § 109(c) ("An entity may be a debtor under chapter 9 of this title if and only if such entity-- (1) is a municipality; (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter; (3) is insolvent; (4) desires to effect a plan to adjust such debts; and (5) (A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter; (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter; (C) is unable to negotiate with creditors because such negotiation is impracticable; or (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.").

this title." See 11 U.S.C. § 101(52) (emphasis added). In other words, Congress expressly defined "State" as including Puerto Rico and then enumerated a single, specific exception where the term "State" does not include Puerto Rico. To infer that Congress intended an additional or broader exception – i.e., that Congress intended to exclude Puerto Rico from the definition of "State" for purposes of section 903(1) or for all of Chapter 9 – would violate the canon of expressio unius est exclusio alterius. See TRW Inc. v. Andrews, 534 U.S. 19, 28 (2001) (explaining that where Congress explicitly enumerates a single exception, additional exceptions are not to be implied absent evidence of contrary legislative intent). The Commonwealth defendants' textual argument on this point thus holds no water.

### (b) "Prescribing a method of composition of indebtedness"

Section 903(1) applies to state laws that "prescrib[e] a method of composition of indebtedness." 11 U.S.C. § 903(1). A "composition" is an "agreement between a debtor and two or more creditors for the adjustment or discharge of an obligation for some lesser amount." Black's Law Dictionary 346 (10th ed. 2014).

Chapter 2 of the Recovery Act permits an eligible public corporation to "seek debt relief from its creditors," Recovery Act § 201(b), through "any combination of amendments, modifications, waivers, or exchanges," which may include "interest

rate adjustments, maturity extensions, debt relief, or other revisions to affected debt instruments," id. Stmt. of Motives, § E; see id. § 202(a). Chapter 3 of the Recovery Act permits an eligible public corporation "to defer debt repayment and to decrease interest and principal" owed to creditors. Id. Stmt. of Motives, § E; see id. §§ 301, 307-308, 310, 315.

Thus, both Chapters 2 and 3 of the Recovery Act create procedures for indebted public corporations to adjust or discharge their obligations to creditors. Therefore, the Recovery Act prescribes a method of composition of indebtedness, which is exactly what section 903(1) prohibits.

### (c) "Of such municipality"

Section 903(1) applies to state laws addressing the indebtedness of a state "municipality." 11 U.S.C. § 903(1). A "municipality" is a "political subdivision or public agency or instrumentality of a State." Id. § 101(40).

The Recovery Act applies to debts of "any public sector obligor." Recovery Act § 104. A "public sector obligor" is defined as a "Commonwealth Entity," subject to three exclusions.

Id. § 102(50).[13]  A "Commonwealth Entity" includes "a department, agency, district, municipality, or instrumentality (including a public corporation) of the Commonwealth."  Id. § 102(13).

Thus, the Recovery Act applies to the debts of Commonwealth "instrumentalities," which are "municipalities" for purposes of section 903(1).

### (d)  *"May not bind any creditor that does not consent to such composition"*

Finally, section 903(1) applies to state laws that bind nonconsenting creditors.  11 U.S.C. § 903(1).

Pursuant to Chapter 2 of the Recovery Act, if creditors representing at least fifty percent of the debt in a given class vote on whether to accept the proposed debt amendments, and at least seventy-five percent of participating voters approve, then the court order approving the debt relief transaction binds the entire class.  Recovery Act §§ 115(b), 202(d), 204.  Pursuant to Chapter 3 of the Recovery Act, if "at least one class of affected debt has voted to accept the plan by a majority of all votes cast in such class and two-thirds of the aggregate amount of

---

[13] A "public sector obligor" is a "Commonwealth Entity, but excluding: (a) the Commonwealth; (b) the seventy-eight (78) municipalities of the Commonwealth; and (c) the Children's Trust; the Employees Retirement System of the Government of the Commonwealth of Puerto Rico and its Instrumentalities; GDB and its subsidiaries, affiliates, and entities ascribed to GDB; the Judiciary Retirement System; the Municipal Finance Agency; the Municipal Finance Corporation; the Puerto Rico Public Finance Corporation; the Puerto Rico Industrial Development Company, the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority; the Puerto Rico Infrastructure Financing Authority; the Puerto Rico Sales Tax Financing Corporation (COFINA); the Puerto Rico System of Annuities and Pensions for Teachers; and the University of Puerto Rico."  Recovery Act § 102(50).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                              37

affected debt in such class that is voted," then the court order confirming the debt enforcement plan binds all of the public corporation's creditors, regardless of their class. <u>Id.</u> §§ 115(c), 315(e).

        Thus, because they do not require unanimous creditor consent, the compositions prescribed in Chapter 2 and 3 of the Recovery Act may bind nonconsenting creditors.

    **2.   Section 903(1) History, Purpose, and Context**

        The legislative history of section 903(1) and of its predecessor, section 83(i) of the Bankruptcy Act of 1937 ("section 83(i)"), further supports the conclusion that Congress intended to preempt Puerto Rico laws that create municipal debt restructuring procedures that bind nonconsenting creditors. In 1946, Congress added the following language, which is nearly identical to the language in section 903(1), to section 83(i): "[N]o State law prescribing a method of composition of indebtedness of such agencies shall be binding upon any creditor who does not consent to such composition." Pub. L. No. 481, § 83(i), 60 Stat. 409, 415 (1946). Congress explained why it added this prohibitory language to section 83(i) in a House Report:

> [A] bankruptcy law under which bondholders of a municipality are required to surrender or cancel their obligations should be uniform throughout the 48 States, as the bonds of almost every municipality are widely held. Only under a Federal law should a creditor be forced to accept such an adjustment without his consent.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    38

H.R. Rep. No. 79-2246, at 4 (1946).[14]  Congress reaffirmed this

intent when it enacted section 903(1) three decades later:

> The proviso in section 83, prohibiting State
> composition procedures for municipalities, is
> retained.  Deletion of the provision would
> "permit all States to enact their own versions
> of Chapter IX", . . . which would frustrate
> the constitutional mandate of uniform
> bankruptcy laws.

S. Rep. No. 95-989, at 110 (1978).

It is evident from this legislative history that, because

municipal bonds are widely held across the United States, Congress

enacted section 903(1) to ensure that only a uniform federal law

could force nonconsenting municipal bondholders to surrender or

cancel part of their investments.  Nothing in its legislative

history indicates that Congress intended to exempt Puerto Rico from

section 903(1)'s expressly universal preemption purview.

The Commonwealth defendants nonetheless argue that

section 903(1) does not apply to Puerto Rico laws.  They do not

attempt to rebut the provision's clear legislative history,

however, and instead present arguments based on logic and context.

First, the Commonwealth defendants contend that it would be

"anomalous" to read the federal Bankruptcy Code as both precluding

---

[14] See also Hearings on H.R. 4307 Before the Special Subcomm. on Bankr. & Reorg.
of the H. Comm. on the Judiciary, 79th Cong. 10 (1946) (statement of Millard
Parkhurst, Att'y at Law, Dallas, Tex.) ("Bonds of a municipality are usually
distributed throughout the 48 States.  Certainly any law which would have the
effect of requiring the holders of such bonds to surrender or cancel a part of
their investments should be uniform Federal law and not a local law.").

Puerto Rico municipalities[15] from participating in Chapter 9 proceedings *and* preempting Puerto Rico laws that govern debt restructuring for Puerto Rico municipalities. (Civil No. 14-1518, Docket No. 95-1 at p. 17.) But Puerto Rico municipalities are not unique in their inability to restructure their debts. This is because Chapter 9 is available to a municipality only if it receives specific authorization from its state, 11 U.S.C. § 109(c)(2), and many states have not enacted authorizing legislation.[16] Congress's decision not to permit Puerto Rico municipalities to be Chapter 9 debtors, see 11 U.S.C. 101(52),[17] reflects its considered judgment to retain control over any restructuring of municipal debt in Puerto Rico. Congress, of course, has the power to treat Puerto Rico differently than it treats the fifty states. See 48 U.S.C. § 734 (providing that federal laws "shall have the same force and effect in Puerto Rico as in the United States" "except as . . . otherwise provided");

---

[15] "Municipality," as used in this discussion, includes a "public agency or instrumentality." See 11 U.S.C. § 101(40).

[16] See James E. Spiotto, et al., Chapman & Cutler LLP, Municipalities in Distress? How States and Investors Deal with Local Government Financial Emergencies 51-52 (2012) (identifying twelve states with statutes that specifically authorize municipalities to file a Chapter 9 petition, twelve states that conditionally authorize it, three states that grant limited authorization, two states that prohibit filing (although one has an exception to the prohibition), and twenty-one states that are either unclear or have not enacted specific authorization).

[17] Congress enacted section 101(52) as part of the 1984 amendments to the federal Bankruptcy Code. Prior to those amendments, the Bankruptcy Code contained no definition of the term "State." Compare Pub. L. No. 95-598, 92 Stat. 2549, 2549-54 (Nov. 6, 1978) (no definition of "State"), with Pub. L. No. 98-353, 98 Stat. 333, 368-69 (July 10, 1984) (adding definition of "State").

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                              40

Antilles Cement Corp., 670 F.3d at 323 ("Congress is permitted to
treat Puerto Rico differently despite its state-like status.").

        Next, the Commonwealth defendants contend that section
903 does not apply to Puerto Rico because that section "addresses
the impact of '[t]his chapter' – i.e., Chapter 9 – on States'
authority to regulate the debt restructuring of their own
[municipalities]." (Civil No. 14-1518, Docket No. 95-1 at pp. 19-
20.) They reason that because Puerto Rico municipalities are not
eligible to participate in Chapter 9 bankruptcy proceedings, "it
follows that [s]ection 903 does not apply." Id. The Commonwealth
defendants misread section 903, which first clarifies that Chapter
9 "does not limit or impair the power of a State to control" the
political or governmental powers of its municipalities, 11 U.S.C.
§ 903, and then qualifies that statement by prohibiting state laws
that bind nonconsenting creditors to a composition of indebtedness
of a municipality, and prohibiting judgments entered pursuant to
those laws that bind nonconsenting creditors, id. § 903(1)-(2).
Nothing in the text, context, or legislative history of section 903
remotely supports the Commonwealth defendants' inferential leap
that Congress intended the prohibition in section 903(1) to apply

only to states whose municipalities are eligible to file for Chapter 9 bankruptcy.[18]

        Finally, the Commonwealth defendants argue that section 903 "by its terms is limited to the relationship between an 'indebted[]' municipality and its 'creditors' in Chapter 9 cases," and that "[u]nless a municipality can qualify as a 'debtor' under Chapter 9, it obviously cannot be an 'indebted[]' municipality with a 'creditor' under Chapter 9." (Civil No. 14-1518, Docket No. 95-1 at p. 20.)  The Commonwealth defendants rely on the Bankruptcy Code's definition of "creditor" to support their strained reading, but nothing in that definition indicates that the term "creditor" is limited to entities eligible to bring claims pursuant to Chapter 9.  See 11 U.S.C. § 101(10) (defining "creditor" as (1) an "entity that has a claim against the debtor," (2) an "entity that has a claim against the estate," or (3) "an entity that has a community

---

[18] The Commonwealth defendants cite to an journal article by Thomas Moers Mayer for support. (Civil No. 14-1518, Docket No. 108 at p. 10.) The article states as follows in a tangential footnote: "Section 903(1) . . . appears as an exception to [section] 903's respect for state law in [C]hapter 9 and thus appears to apply only in a [C]hapter 9 bankruptcy. It is not clear how it would apply if no [C]hapter 9 case was commenced." Thomas Moers Mayer, State Sovereignty, State Bankruptcy, and a Reconsideration of Chapter 9, 85 Am. Bankr. L.J. 363, 386 (2011). But reading section 903(1) as applying only when a Chapter 9 bankruptcy has commenced would deprive section 903(1) of any practical effect: a municipal debtor that has already invoked federal bankruptcy law has no need to employ state bankruptcy laws. More significantly, this reading is contrary to the legislative history of section 903(1) and its predecessor, which unequivocally indicates that Congress's intent in enacting the provision was to ensure that a "bankruptcy law under which bondholders of a municipality are required to surrender or cancel their obligations [is] uniform throughout the [United] States" because "[o]nly under a Federal law should a creditor be forced to accept such an adjustment without his consent." H.R. Rep. No. 79-2246, at 4 (1946). The Commonwealth defendants' reliance on Mr. Mayer's conjectural observation is therefore unavailing.

claim"); id. § 101(5) (defining "claim" as a "right to payment").

Thus, the Commonwealth defendants' attempt to read a "Chapter 9

eligibility" requisite into the scope of section 903(1) is wholly

without textual support, and the legislative history of that

section supports a contrary, universal reading of the prohibition.[19]

### 3.   Express Preemption Conclusion

The Court recognizes that federal preemption of a state

law "is strong medicine" and "will not lie absent evidence of clear

and manifest congressional purpose." Mass. Ass'n of Health Maint.

Orgs. v. Ruthardt, 194 F.3d 176, 178-79 (1st Cir. 1999).  Despite

this high bar, this is not a close case.  Section 903(1)'s text and

legislative history provide direct evidence of Congress's clear and

manifest purpose to preempt state laws that prescribe a method of

composition of municipal indebtedness that binds nonconsenting

creditors, see 11 U.S.C. § 903(1), and to include Puerto Rico laws

in this preempted arena, see id. § 101(52).  The Recovery Act is

---

[19] The Commonwealth defendants rely on another academic article for support. (Civil No. 14-1518, Docket No. 108 at p. 10.)  The article, by Stephen J. Lubben, looks to the statutory definitions of "creditor" as an "entity that has a claim against the debtor," 11 U.S.C. § 101(10)(A), and of "debtor" as a "person or municipality concerning which a case under this title has been commenced," id. § 101(13), to conclude that "section 903 was only intended to apply to debtors who might actually file under [C]hapter 9."  Stephen J. Lubben, Puerto Rico and the Bankruptcy Clause, 88 Am. Bankr. L.J. 553, 576 (2014).  This narrow construction of section 903(1) flies in the face of section 903(1)'s legislative history, which Mr. Lubben and the Commonwealth defendants totally ignore.  The Senate Report accompanying section 903(1)'s enactment indicates that Congress sought to avoid states "enact[ing] their own versions of Chapter [9], . . . which would frustrate the constitutional mandate of uniform bankruptcy laws."  S. Rep. No. 95-989, at 110 (1978).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    43

such a law and is therefore unconstitutional pursuant to the
Supremacy Clause of the United States Constitution.

**D.    Conflict and Field Preemption**

Unlike their Franklin and Oppenheimer Rochester counterparts,
who plead that section 903(1) is an express preemption clause,
plaintiff BlueMountain raises many of the same section 903(1)
arguments but frames them as "conflict preemption" and "field
preemption." (Civil No. 14-1569, Docket No. 20 at pp. 13-18.)

Conflict preemption occurs "when federal law is in
'irreconcilable conflict' with state law." Telecomm. Regulatory
Bd. of P.R. v. CTIA-Wireless Ass'n, 752 F.3d 60, 64 (1st Cir. 2014)
(quoting Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25,
31 (1996).  As explained above, section 903(1) of the federal
Bankruptcy Code prohibits state laws that create composition
procedures for indebted municipalities that bind nonconsenting
creditors, and the Recovery Act is such a law.[20]  Section 903(1) of
the federal Bankruptcy Code and the Recovery Act are thus in
"irreconcilable conflict."

Conflict preemption also occurs "when the state law stands as
an obstacle to the accomplishment and execution of the full
purposes and objectives of Congress." Telecomm. Regulatory Bd. of
P.R., 752 F.3d at 64 (internal quotation marks and citation
omitted).  Again, as previously discussed, the text and legislative

---

[20] See supra Part IV.C.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                                    44

history of section 903(1) indicate that Congress intended to ensure that only pursuant to a uniform federal law would nonconsenting creditors be forced to accept municipal compositions.[21]     The Recovery Act stands as an obstacle to achieving this purpose because it prescribes municipal composition procedures that are outside of the federal Bankruptcy Code and are available only to Puerto Rico "municipalities."

Field preemption occurs when states "regulat[e] conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." Arizona, 132 S. Ct. at 2501.  Congressional intent to preempt state law in an entire field "can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).  Here, however, the Court need not resort to these modes of inference because Congress enacted an express preemption clause that delineates the parameters of the field it intended to preempt. Thus, the Court goes no further than finding that, by enacting section 903(1), Congress expressly preempted the field of municipal

---

[21] See supra Part III.C.

composition procedures that bind nonconsenting creditors.  <u>See</u> 11 U.S.C. § 903(1).

**E.    "Dormant Bankruptcy Clause" Preemption**

"Wholly apart" from their section 903(1) express preemption claim, the Franklin Oppenheimer and Rochester plaintiffs raise a somewhat novel argument that the Bankruptcy Clause of the United States Constitution, by itself, preempts the Recovery Act. (Civil No. 14-1518, Docket No. 79 at pp. 21-23.)  The plaintiffs contend that the United States Supreme Court has long held that the Bankruptcy Clause grants the power to authorize a discharge to the federal government alone, and that states therefore are prohibited from enacting bankruptcy discharge laws.  <u>Id.</u> at p. 21.  The Supreme Court cases that plaintiffs cite, however, indicate that the constitutional prohibition on state bankruptcy discharge laws arises not from the Bankruptcy Clause, but from the Contract Clause.  <u>See</u> <u>Sturges v. Crowninshield</u>, 17 U.S. 122, 199 (1819) ("The constitution does not grant to the states the power of passing bankrupt laws, . . . [but restrains states' power] as to *prohibit the passage of any law impairing the obligation of contracts*.  Although, then, the states may, until that power shall be exercised by congress, pass laws concerning bankrupts; yet they cannot constitutionally introduce into such laws a clause which discharges the obligations the bankrupt has entered into." (emphasis added)); <u>Ry. Labor Execs.' Ass'n v. Gibbons</u>, 455 U.S.

457, 472 n.14 (1982) ("Apart from and independently of the Supremacy Clause, the Contract Clause prohibits the States from enacting debtor relief laws which discharge the debtor from his obligations."). The Court therefore rejects the Franklin Oppenheimer and Rochester plaintiffs' "dormant Bankruptcy Clause" preemption argument and will address the Contract Clause issues in Part V of this opinion.

**F.   Preemption Conclusion**

Section 903(1) of the federal Bankruptcy Code preempts the Recovery Act. The Recovery Act is therefore unconstitutional pursuant to the Supremacy Clause of the United States Constitution. Accordingly, the Court **DENIES** the Commonwealth defendants' motions to dismiss plaintiffs' preemption claims, (Civil No. 14-1518, Docket No. 95; Civil No. 14-1569, Docket No. 29), and **GRANTS** the Franklin and Oppenheimer Rochester plaintiffs' cross-motion for summary judgment on their preemption claim, (Civil No. 14-1518, Docket No. 78).

### V. CONTRACT CLAUSES

Plaintiffs seek a declaratory judgment that the Recovery Act violates the Contract Clause of the United States Constitution by impairing the contractual obligations imposed by the Authority Act and the Trust Agreement. (Civil No. 14-1518, Docket No. 85 at ¶ 66; Civil No. 14-1569, Docket No. 20 at ¶ 83(b).) Plaintiff BlueMountain seeks an additional declaratory judgment that the

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    47

Recovery Act violates the Contract Clause of the Puerto Rico Constitution for the same reason. (Civil No. 14-1569, Docket No. 20 at ¶ 83(c).)  The Commonwealth defendants move to dismiss.[22] (Civil No. 14-1518, Docket No. 95; Civil No. 14-1569, Docket No. 29.)

The Commonwealth defendants' motions to dismiss are again governed by Rule 12(b)(6), and the Court will dismiss the complaints if they fail to state a plausible legal claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6); Ocasio-Hernandez, 640 F.3d at 12-13.  The Court "must assume the truth of all well-pleaded facts and give the plaintiff[s] the benefit of all reasonable inferences therefrom." United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) [hereinafter UAW] (quoting Thomas

---

[22] In their motions to dismiss, the Commonwealth defendants contend that the plaintiffs "are mounting a facial challenge" to the Recovery Act and that therefore the plaintiffs "must show that the [Recovery Act] cannot constitutionally be applied not only to their contracts, but to any contracts [sic]." (Civil No. 14-1518, Docket No. 95-1 at p. 23.) Plaintiffs, however, specifically challenge the Recovery Act as it applies to the contractual relationships between plaintiffs, PREPA, and the Commonwealth created in the Authority Act and the Trust Agreement. See Civil No. 14-1518, Docket No. 85 at ¶ 71(ii) (seeking declaration that the Recovery Act violates the Contract Clause "insofar as it permits the retroactive impairment of Plaintiffs' rights under the contracts governing the PREPA bonds"); Civil No. 14-1518, Docket No. 20 at ¶ 83(b) (same). Accordingly, the Court interprets plaintiffs' contract clause claims as "as-applied" challenges. Cf. John Doe No. 1 v. Reed, 561 U.S. 186, 194 (2010) (noting that when "the relief that would follow" from a claim "reach[es] beyond the particular circumstances of the[] plaintiffs," plaintiffs must satisfy the standards for a facial challenge); Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 48 (1st Cir. 2011)(where plaintiffs request a declaration that a regulation is unconstitutional, rather than a declaration that a particular interpretation or application of the regulation is unconstitutional, plaintiffs mount a facial challenge).

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    48

v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008)).  The Court

considers "only facts and documents that are part of or

incorporated into the complaint[s]."  Id. (quoting Trans-Spec Truck

Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir.

2008)).  The Court accordingly examines both the factual

allegations in plaintiffs' complaints and the Trust Agreement,

which plaintiffs incorporated by reference into their complaints.

See Civil No. 14-1518, Docket No. 85 at ¶ 3; Civil No. 14-1569,

Docket No. 20 at ¶ 14.

    The Contract Clause of the Puerto Rico Constitution, P.R.

Const. art. II, § 7, is analogous to the Contract Clause of the

United States Constitution, U.S. Const. art. I, § 10, cl. 1, and

provides at least the same level of protection against the

impairment of the obligation of contracts.  Bayron Toro v. Serra,

119 P.R. Offic. Trans. 646, 661-62 (P.R. 1987).  The parties do not

dispute this.  See Civil No. 14-1569, Docket Nos. 20 at ¶ 74 & 29-1

at p. 22 n.1.  Plaintiff BlueMountain's invocation of the Puerto

Rico Contract Clause therefore adds nothing to the Court's

analysis.

**A.   Contract Clause Principles**

    The Contract Clause of the United States Constitution provides

that "No State shall . . . pass any . . . Law impairing the

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    49

Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1.[23]

"Despite its unequivocal language, this constitutional provision does not make unlawful every state law that conflicts with any contract." UAW, 633 F.3d at 41 (internal quotation marks and citation omitted). Rather, courts must "reconcile the strictures of the Contract Clause" with the state's sovereign power to safeguard the welfare of its citizens. Id. (internal quotation marks and citation omitted).

Accordingly, Contract Clause claims are analyzed pursuant to a two-pronged test. Id. The first question is whether the state law "operate[s] as a substantial impairment of a contractual relationship." Id. (quoting Energy Reserves Grp., Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983)). If the contractual relationship is substantially impaired, then the second question is whether that impairment is "reasonable and necessary to serve an important public purpose." Id. (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977)).

**B.   Substantial Impairment of a Contractual Relationship**

The question of whether a state law operates as a substantial impairment of a contractual relationship includes three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the

---

[23] The Commonwealth defendants do not contest that the Contract Clause applies to Puerto Rico, even though it is not a state. (Civil No. 14-1518, Docket No. 95-1 at p. 22 n.1.)

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    50

impairment is substantial." <u>Gen. Motors Corp. v. Romein</u>, 503 U.S.
181, 186 (1992).

### 1.    Contractual Relationship

Plaintiffs claim that the Recovery Act impairs the
contractual relationships created by the Trust Agreement and the
Authority Act.   The Commonwealth defendants do not contest the
plaintiffs' allegations that the Trust Agreement creates a
contractual relationship between PREPA and PREPA bondholders, and
that bondholders relied on PREPA's promises in the Trust Agreement
when they acquired PREPA bonds.   <u>See</u> Civil No. 14-1518, Docket No.
85 at ¶ 42; Civil No. 14-1569, Docket No. 20 at ¶¶ 14-17.

The Commonwealth defendants also do not deny that the
Authority Act creates a contractual relationship between the
Commonwealth and PREPA bondholders.   The Authority Act's statutory
language makes clear the intent to form a contract.   <u>See</u> P.R. Laws
Ann. tit. 22 § 215 ("The Commonwealth Government does hereby pledge
to, and agree with, any person, firm or corporation . . .
subscribing to or acquiring bonds of [PREPA] . . . ."); <u>cf.</u> <u>U.S.
Trust Co.</u>, 431 U.S. at 18 (finding that New York and New Jersey's
intent to make a contract with bondholders is clear from the
following statutory language: "The 2 States covenant and agree with
each other and with the holders of any affected bonds . . .").
Even absent this statutory language, the Trust Agreement is assumed
to incorporate the terms of the Authority Act because the Authority

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    51

Act was in place when PREPA and the bondholders agreed to the Trust
Agreement.  See U.S. Trust Co., 431 U.S. at 19 ("The obligations of
a contract long have been regarded as including not only the
express terms but also the contemporaneous state law pertaining to
interpretation and enforcement. . . .  This principle presumes that
contracting parties adopt the terms of their bargain in reliance on
the law in effect at the time the agreement is reached."); Ionics,
Inc. v. Elmwood Sensors, Inc., 110 F.3d 184, 188 (1st Cir. 1997)
("Every contract is assumed to incorporate the existing legal norms
that are in place.").

        **2.    Impairment**

        Plaintiffs allege that the Recovery Act impairs the
contractual relationships and obligations created in the Authority
Act and the Trust Agreement in the following specific ways:[24]

                **(a)**  In the Authority Act, the Commonwealth guaranteed
                PREPA bondholders that it would not "limit or alter
                the rights or powers . . . vested in [PREPA] until
                all such bonds at any time issued, together with
                any interest thereon, are fully met and
                discharged."  P.R. Laws Ann. tit. 22 § 215.  PREPA
                similarly guaranteed in the Trust Agreement that
                "no contract or contracts will be entered into or

---

[24] See Civil No. 14-1518, Docket No. 85 at ¶¶ 42-48; Civil No. 14-1569, Docket
No. 20 at ¶ 56.

any action taken by which the rights of the Trustee or of the bondholders might be impaired or diminished." Trust Agreement § 709. PREPA also promised to pay principal and interest on the bonds when they are due. Id. § 701. Finally, the Trust Agreement prohibits both the extension of the maturity date of principal or interest due on the PREPA bonds and the reduction of the principal or interest rate of PREPA bonds. Id. § 1102. The Recovery Act impairs all of these obligations and guarantees by permitting PREPA to modify its debts without creditor consent. Recovery Act §§ 115, 202, 206, 304, 312, 315, 322.

*(b)* In the Trust Agreement, PREPA promised that it would not create liens on PREPA revenues that would take priority over the bondholders' lien. Trust Agreement §§ 712, 1102. The Recovery Act impairs this promise by allowing PREPA to encumber collateral with liens senior to the bondholders' lien. Recovery Act § 322.

*(c)* The Trust Agreement prohibits PREPA from selling any part of its electrical-power system. The Recovery Act impairs this contractual prohibition by permitting the special court to authorize the

sale of PREPA assets free and clear of liens. Recovery Act § 307.

(d) The Trust Agreement contains an *ipso facto* clause providing that PREPA is deemed in default if (1) it institutes a proceeding effectuating a composition of debt with its creditors, or (2) an order or decree is entered effectuating a composition of debt between PREPA and its creditors or for the purpose of adjusting claims that are payable from PREPA revenues. Trust Agreement § 802(f)-(g). The Recovery Act renders this *ipso facto* clause unenforceable by providing that "[n]otwithstanding any contractual provision . . . to the contrary, a contract of a petitioner may not be terminated or modified, and any right or obligation under such contract may not be terminated or modified . . . solely because of a provision in such contract conditioned on" a default due to the corporation's insolvency or the filing of a petition under section 301 of the Recovery Act. Recovery Act § 325.

(e) The Trust Agreement provides that holders of at least 10 percent of PREPA bonds are entitled to request that the Trustee bring an action to compel

PREPA to set and collect rates sufficient to maintain its promises both to pay current expenses and to maintain at least 120 percent of upcoming principal and interest payments in its general fund. Trust Agreement § 502. The Trust Agreement also entitles bondholders to accelerate payments if PREPA defaults, id. § 803, and to sue in equity or at law to enforce the remedies of the Trust Agreement if PREPA defaults, id. § 804. The Recovery Act impairs bondholders' rights to these remedies both during the suspension and stay provisions, Recovery Act §§ 205, 304, and after the special court approves a plan pursuant to Chapter 2 or 3, id. §§ 115(b)(2), 115(c)(3).

*(f)* Section 17 of the Authority Act grants bondholders the right to seek appointment of a receiver if PREPA defaults. P.R. Laws Ann. tit. 22 § 207. This right is incorporated into section 804 of the Trust Agreement, which guarantees that bondholders have the right to seek "the appointment of a receiver as authorized by the Authority Act" if PREPA defaults. Trust Agreement § 804. The Recovery Act expressly eliminates the right to seek the appointment of a receiver. Recovery Act §

54

108(b) ("This Act supersedes and annuls any
insolvency or custodial provision included in the
enabling or other act of any public corporation,
including Section 17 of [the Authority Act].").

The United States Supreme Court has long held that the
Contract Clause prohibits states from passing laws, like the
Recovery Act, that authorize the discharge of debtors from their
obligations. See Ry. Labor Execs.' Ass'n, 455 U.S. at 472 n.14
("[T]he Contract Clause prohibits the States from enacting debtor
relief laws which discharge the debtor from his obligations.");
Stellwagen v. Clum, 245 U.S. 605, 615 (1918) ("It is settled that
a state may not pass an insolvency law which provides for a
discharge of the debtor from his obligations."); Sturges, 17 U.S.
at 199 (Contract Clause prohibits states from introducing into
bankruptcy laws "a clause which discharges the obligations the
bankrupt has entered into.").

The Commonwealth Legislative Assembly cites Faitoute Iron
& Steel Co. v. City of Asbury Park, New Jersey, 316 U.S. 502
(1942), as support for the Recovery Act's "constitutional basis."
Recovery Act, Stmt. of Motives, § C.  In Faitoute, the Supreme
Court sustained a state insolvency law for municipalities in the
face of a Contract Clause challenge. 316 U.S. at 516.  The state
law was narrowly tailored in three important ways: (1) it
explicitly barred any reduction of the principal amount of any

outstanding obligation; (2) it affected only *unsecured* municipal bonds that had no real remedy; and (3) it provided only for an extension to the maturity date and a decrease of the interest rates on the bonds. Id. at 504-07. The Supreme Court was careful to state: "We do not go beyond the case before us. Different considerations may come into play in different situations. Thus we are not here concerned with legislative changes touching secured claims." Id. at 516. Unlike the state law in Faitoute, the Recovery Act (1) permits the reduction of principal owed on PREPA bonds, (2) affects *secured* bonds that have meaningful remedies, including the appointment of a receiver, and (3) permits modifications to debt obligations beyond the extension of maturity dates and adjustment of interest rates. Thus, Faitoute is factually distinguishable and provides no support for the Recovery Act's constitutionality.

The Commonwealth defendants raise only one argument as to why the Recovery Act does not impair a contractual relationship. They insist that there is "no way to know whether a contract will be impaired . . . unless and until the [Recovery Act] is invoked and the debts covered by the contract are restructured in a way that gives creditors less value than they could reasonably expect to receive without the [Recovery Act]." (Civil No. 14-1518, Docket No. 95-1 at p. 23.) This argument is unpersuasive. When a state law authorizes a party to do something that a contract prohibits it

from doing, or when a state law prohibits a party from doing something that a contract authorizes it to do, the state law "impairs" a contractual relationship, independent of whether or how the party acts pursuant to the state law. See, e.g., U.S. Trust Co., 431 U.S. at 19-21 (where statutory covenant prohibited Port Authority from spending revenues securing bonds, state law that repealed the covenant - authorizing Port Authority to spend revenue securing bonds - impaired the contractual relationship between the state and bondholders, regardless of whether Port Authority spent the revenues).

### 3.    Substantial Impairment

To determine whether a state law's impairment of a contractual relationship is sufficiently "substantial" to trigger the Contract Clause, courts look to whether the impaired rights were the seller's "central undertaking" in the contract and whether the rights "substantially induced" the buyer to enter into the contract. City of El Paso v. Simmons, 379 U.S. 497, 514 (1965). Courts also look to how the contract right was impaired - whether it was "totally eliminated" or "merely modified or replaced by an arguably comparable" provision. U.S. Trust Co., 431 U.S. at 19, accord Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 300 U.S. 124, 128-29 (1937) ("The Legislature may modify, limit, or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so

circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away.")

Here, PREPA's obligation to pay principal and interest on the bonds when due was its central undertaking in the Trust Agreement. See Trust Agreement § 701. This promise also substantially induced the bondholders to purchase the bonds from PREPA: if there were no promise that they would receive a return on their investment, they likely would not have invested. The Recovery Act does not make a single or modest impairment to PREPA's obligation. For example, it does not permit PREPA merely to extend the maturity dates or to lower interest rates on its bonds. Cf. Faitoute, 316 U.S. at 507 (state law providing for an extension of the maturity dates and a decrease in the interest rates found not to violate Contract Clause). Rather, the Recovery Act permits PREPA to modify its debts in a variety of ways, including discharge of principal and interest owed, without creditor consent.

The promise of numerous remedies - including (1) the right to a senior lien on revenues, (2) the prohibition on PREPA selling its electrical-power system, (3) an *ipso facto* clause triggering default remedies, (4) the right to bring an action to compel PREPA to set and collect rates, (5) the right to accelerate

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    59

payments, (6) the right to sue to enforce the remedies, and (7) the right to seek the appointment of a receiver – likely substantially induced the bondholders to purchase bonds from PREPA because these are valuable security provisions that encourage investment. See W.B. Worthen Co. v. Kavanaugh, 295 U.S. 56, 62 (1935) (finding state law modifications to several bondholder remedies, when "viewed in combination" are "an oppressive and unnecessary destruction of nearly all the incidents that give attractiveness and value to collateral security"). U.S. Trust Co., 431 U.S. at 19 (finding state repeal of covenant that assured bondholders that the revenues and reserves securing their bonds would not be used for purposes other than those specifically delineated in the covenant impaired the obligation of the state's contract because it "totally eliminated an important security provision"). The Recovery Act does not merely modify these remedies or replace them with comparable security provisions, it completely extinguishes all of them.

    The Commonwealth defendants argue for the first time in their replies to the plaintiffs' oppositions to the motions to dismiss that any impairment of plaintiffs' contractual rights is not substantial because the impaired rights were not central to the parties' undertaking. (Civil No. 14-1518, Docket No. 108 at p. 16.) The Commonwealth defendants rely on City of Charleston v. Public Service Commission of West Virginia, 57 F.3d 385 (4th Cir.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    60

1995), for this contention, but even that case supports the opposite conclusion. In <u>City of Charleston</u>, the Fourth Circuit Court of Appeals concluded that the modification of the bond contracts such that "one remedy - the right to impose liens - was removed as to one relatively small group" was not substantial. 57 F.3d at 394. Here, plaintiffs enumerate not one, but at least seven remedies that the Recovery Act eliminated. Even more, the Recovery Act nullified PREPA's promise to pay full principal and interest and the Commonwealth's promise to not alter the rights vested in PREPA until the bonds and interest are fully paid and discharged.

Thus, because the Recovery Act totally extinguishes significant and numerous obligations, rights, and remedies, the Court easily concludes that the impairment caused by the Recovery Act is substantial.

**C.    Reasonable and Necessary to Serve an Important Government Purpose**

The second prong of the Contract Clause test is whether the impairment is "reasonable and necessary to serve an important government purpose." <u>UAW</u>, 633 F.3d at 41 (quoting <u>U.S. Trust Co.</u>, 431 U.S. at 25). "[T]he reasonableness inquiry asks whether the law is reasonable in light of the surrounding circumstances, and the necessity inquiry focuses on whether [the state] imposed a drastic impairment when an evident and more moderate course would serve its purposes equally well." <u>Id.</u> at 45-46 (internal quotation

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    61

marks and citations omitted).  The First Circuit Court of Appeals places the burden of establishing a lack of reasonableness and necessity on the plaintiff and explains as follows regarding how the plaintiff can carry that burden:

> [A] plaintiff with reason to believe that a state action was unreasonable or unnecessary can, in the complaint, list the state's articulated motive(s), and then plead facts that undermine the credibility of the those stated motives or plead facts that question the reasonableness or necessity of the action in advancing the stated goals.  For example, if a state purports to impair a contract to address a budgetary crisis, a plaintiff could allege facts showing that the impairment did not save the state much money, the budget issues were not as severe as alleged by the state, or that other cost-cutting or revenue-increasing measures were reasonable alternatives to the contractual impairment at issue.

Id. at 45.

Here, the Commonwealth Legislative Assembly indicates in the Recovery Act's Statement of Motives that the Recovery Act addresses the "current state of fiscal emergency" in Puerto Rico.  Recovery Act, Stmt. of Motives, § A.  It avers that the downgrade to non-investment grade of Puerto Rico's general obligation bonds "places the economic and fiscal health of the people of Puerto Rico at risk, and improperly compromises the credit of the Central Government and its public corporations."  Id.  The Commonwealth Legislative Assembly further explains that Puerto Rico's three main public corporations have a combined debt adding up to $20 billion,

and if "public corporations were to default on their obligations in a manner that permits creditors to exercise their remedies in a piecemeal way, the lack of an effective and orderly process to manage the interests of creditors and consumers[] would threaten the ability of the Commonwealth's government to safeguard the interests of the public to continue receiving essential public services and promote the general welfare of the people of Puerto Rico." Id.

Because the Commonwealth is alleged to have impaired a public contract, "where the impairment operates for the state's benefit," the Court gives limited deference to the Commonwealth's determination of reasonableness and necessity. See Parella v. Ret. Bd. of R.I. Employees' Ret. Sys., 173 F.3d 46, 59 (1st Cir. 1999) (internal quotation marks and citations omitted); accord McGrath v. R.I. Ret. Bd., 88 F.3d 12, 16 (1st Cir. 1996) ("[A] state must do more than mouth the vocabulary of the public weal in order to reach safe harbor; . . . [an] objective . . . that reasonably may be attained without substantially impairing the contract rights of private parties[] will not serve to avoid the full impact of the Contracts Clause.").

The plaintiffs plead the following facts, which the Court accepts as true at this stage in the litigation, to demonstrate that other cost-cutting and revenue-increasing measures are

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                        63

reasonable alternatives to the Recovery Act's drastic impairment of contract rights:[25]

1.   PREPA could modestly raise its rates.  It has not increased its basic charges since 1989.

2.   PREPA could collect the $640.83 million currently owed to it by the Commonwealth.

3.   PREPA could reduce the amount of funds currently diverted to municipalities and subsidies.  PREPA is exempt from taxation but is required to set aside 11 percent of its gross revenues each year to pay "contributions in lieu of taxes" to municipalities and other subsidies.  These contributions are expected to total almost $1 billion from 2014 to 2018.

4.   PREPA could cut costs and correct inefficiencies in its management.  PREPA has been reported to have (1) a highly overstaffed human resources and labor department compared to peer corporations, (2) high costs for customer service, (3) under-competitive bidding procedures for its equipment, (4) surplus equipment and other inventory above that needed for storm preparedness, (5) high overtime charges from employees and lenient timekeeping standards, and (6) weak accounting controls.

---

[25] See Civil No. 14-1518, Docket No. 85 at ¶¶ 50-54; Civil No. 14-1569, Docket No. 20 at ¶¶ 57-64.

5.   PREPA could improve its standing in the global capital markets and take other measures to improve relationships with creditors.   PREPA has not been reported to have hired a capital markets investment banker since its 2013A bonds were issued, it has not presented publicly to investors since May 2013, and it has not publicly disclosed any intention to apply for a federal guarantee under the "Advanced Fossil Energy Projects" solicitation issued by the United States Department of Energy in December 2013.

6.   PREPA could negotiate with creditors to restructure its debts on a voluntary basis.   The Recovery Act was passed before any meaningful attempt to engage in such negotiations.

The Court has no reason to doubt that the Commonwealth enacted the Recovery Act to address Puerto Rico's current state of fiscal emergency.   But even when acting to serve an important government purpose, the Commonwealth can impair contractual relationships only through reasonable and necessary measures.   The Court infers from plaintiffs well-pled and numerous factual allegations that the Recovery Act imposes a "drastic impairment" when several other "moderate course[s]" are available to address Puerto Rico's financial crisis.   See U.S. Trust Co., 431 U.S. at 31 ("[A] State

is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well.")

## D.   Contract Clauses Conclusion

For the foregoing reasons, the plaintiffs state a plausible claim pursuant to the contract clauses of the United States and Puerto Rico constitutions.   The Court accordingly **DENIES** the Commonwealth defendants' motions to dismiss, (Civil No. 14-1518, Docket No. 95; Civil No. 14-1569, Docket No. 29), as to plaintiffs' contract clauses claims.

**VI. TAKINGS CLAUSE**

The Franklin and Oppenheimer Rochester plaintiffs seek a declaratory judgment that the Recovery Act violates the Takings Clause of the United States Constitution by taking without just compensation (1) plaintiffs' contractual right to seek the appointment of a receiver, and (2) plaintiffs' liens on PREPA revenues.   (Civil No. 14-1518, Docket No. 85 at ¶¶ 32-39, 62-63.) The Commonwealth defendants move to dismiss on ripeness grounds pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).   (Civil No. 14-1518, Docket No. 95.)

## A.   Plaintiffs State a Plausible Claim for Relief Based on the Taking of Their Contractual Right to Seek the Appointment of a Receiver

Plaintiffs first seek a declaratory judgment that section 108(b) of the Recovery Act effectuates a taking without just compensation of plaintiffs' right to seek the appointment of a

receiver in violation of the Takings Clause.  (Civil No. 14-1518,
Docket No. 85 at ¶ 63.)  Section 17 of the Authority Act grants
bondholders the right to seek appointment of a receiver if PREPA
defaults.   P.R. Laws Ann. tit. 22 § 207.   This right is
incorporated into section 804 of the Trust Agreement, which
guarantees that bondholders have the right to seek "the appointment
of a receiver as authorized by the Authority Act" if PREPA
defaults.   Trust Agreement § 804.   Section 108(b) of the Recovery
Act eliminated this statutory and contractual right: "This Act
supersedes and annuls any insolvency or custodial provision
included in the enabling or other act of any public corporation,
including Section 17 of [the Authority Act]."   Recovery Act §
108(b).[26]  The Recovery Act does not provide for any means of
compensation for taking this contractual right.

     Plaintiffs' claim falls squarely within the United States
Supreme Court's definition of a facial takings challenge: "a claim
that the mere enactment of a statute constitutes a taking," as
opposed to an as-applied claim "that the particular impact of
government action on a specific piece of property requires the
payment of just compensation."  Keystone Bituminous Coal Ass'n v.
DeBenedictis, 480 U.S. 470, 494 (1987).  Accordingly, plaintiffs'
facial takings claim became ripe the moment the Recovery Act was

---

[26] Because plaintiffs' contractual right to seek the appointment is nothing more
than the incorporation of plaintiffs' statutory right, section 108(b)'s annulment
of the statutory right consequently eliminated the contractual right.

passed.  See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 n.10 (1997) (facial takings challenges "are generally ripe the moment the challenged regulation or ordinance is passed"); Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez, 659 F.3d 42, 50-51 (1st Cir. 2011) (facial takings challenge becomes ripe "at the time the offending statute or regulation is enacted or becomes effective"); accord Pharm. Care Mgmt. Ass'n v. Rowe, 429 F.3d 294, 307 (1st Cir. 2005).

Having concluded that jurisdiction is proper, the Court turns to the Commonwealth defendants' motion to dismiss pursuant to Rule 12(b)(6).  "The sole inquiry under Rule 12(b)(6) is whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted."  Ocasio-Hernandez, 640 F.3d at 7.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amend. V.  The Takings Clause applies to the Commonwealth of Puerto Rico through the Fourteenth Amendment.  Fideicomiso De La Tierra Del Caño Martin Peña v. Fortuño, 604 F.3d 7, 12 (1st Cir. 2010).  The purpose of the Takings Clause regime is to bar the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005) (quoting Armstrong v.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                                    68

<u>United States</u>, 364 U.S. 40, 49 (1960)).  The United States Supreme
Court identifies two categories of takings that require just
compensation: (1) a direct taking, which includes either a "direct
government appropriation or physical invasion of private property,"
and (2) a regulatory taking, which is when a "government regulation
of private property . . . [is] so onerous that its effect is
tantamount to a direct appropriation or ouster."  <u>Id.</u>

        Contracts are a form of property for purposes of the Takings
Clause.  <u>U.S. Trust Co.</u>, 431 U.S. at 19 n.16 ("Contract rights are
a form of property and as such may be taken for a public purpose
provided that just compensation is paid."); <u>Lynch v. United States</u>,
292 U.S. 571, 579 (1934) ("Valid contracts are property" for
purposes of the Takings Clause, "whether the obligor be a private
individual, a municipality, a state, or the United States."); <u>Adams</u>
<u>v. United States</u>, 391 F.3d 1212, 1221-22 (Fed. Cir. 2004) ("When
the Government and private parties contract . . .  the private
party usually acquires an intangible property interest within the
meaning of the Takings Clause in the contract.  The express rights
under this contract are just as concrete as the inherent rights
arising from ownership of real property, personal property, or an
actual sum of money.").

        The Commonwealth defendants contend, without citing authority
for support, that "there can be no 'taking' of a right that has
never been triggered."  (Civil No. 14-1518, Docket No. 108 at p.

18.)  They then reason that plaintiffs' Takings Clause claim fails because plaintiffs' contractual right to seek the appointment of a receiver is triggered only upon default and PREPA has not defaulted.  Id.  The Commonwealth defendants' argument is unpersuasive and misunderstands the basics of contracts law.  A contract may have a condition, which is an event that must occur before performance pursuant to the contract becomes due. Restatement (Second) of Contracts § 224 (1981).  Here, PREPA defaulting is a condition on plaintiffs' contractual right to seek the appointment of a receiver.  See P.R. Laws Ann. tit. 22 § 207; Trust Agreement § 804.  Accordingly, plaintiffs may not seek the appointment of a receiver until PREPA defaults (i.e., they may not seek performance of the contract until the condition is met).  This condition does not affect the existence of plaintiffs' contractual right to seek the appointment of a receiver.  This contractual right is a promise they bargained for and relied upon when purchasing PREPA bonds pursuant to the Authority Act and the Trust Agreement.

    The Commonwealth defendants next attempt to apply the regulatory takings analysis to plaintiffs' claim.  (Civil No. 14-1518, Docket No. 95-1 at p. 27.)  "A regulatory taking transpires when some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given."  Philip Morris, Inc. v.

Reilly, 312 F.3d 24, 33 (1st Cir. 2002) (citing Goldblatt v. Town of Hempstead, N.Y., 369 U.S. 590, 594 (1962)). Here, there is no regulation or "restriction" placed on plaintiffs' contractual right to seek the appointment of a receiver. Rather, section 108(b) of the Recovery Act totally eliminated the contract provision that gave plaintiffs the right. Thus, by enacting section 108(b) of the Recovery Act, the Commonwealth appropriated plaintiffs' contractual right to seek the appointment of a receiver. This is a direct taking. The Court therefore declines to engage in a regulatory takings analysis and concludes that plaintiffs plausibly state a claim for declaratory relief that section 108(b) of the Recovery Act effects a taking without just compensation of plaintiffs' property in violation of the Takings Clause.

**B.    Plaintiffs' Takings Clause Claim Based on Their Liens on PREPA Revenues Fails to State a Claim as a Facial Challenge and is Unripe as an As-Applied Challenge**

Plaintiffs next seek a declaratory judgment that sections 129(d) and 322(c) of the Recovery Act effectuate a taking without just compensation of their lien on PREPA revenues in violation of the Takings Clause. (Civil No. 14-1518, Docket No. 85 at ¶ 62.) Plaintiffs allege that their PREPA bonds are secured by a pledge of all or substantially all of the present and future net revenues of PREPA. Id. at ¶ 3. If PREPA files for debt relief pursuant to Chapter 3 of the Recovery Act, the special court may authorize PREPA to obtain credit "secured by a senior or equal lien on

[PREPA's] property that is subject to a lien" if, among other things, "the proceeds are needed to perform public functions" or "there is adequate protection of the interest of the holder of the [previous] lien." Recovery Act § 322(c). Section 129(d) of the Recovery Act disposes of the "adequate protection" requirement when the "police power" justifies it. Id. § 129(d).

The relief plaintiffs seek indicates that they are bringing a facial takings challenge: they request a declaration that sections 129(d) and 322(c) of the Recovery Act "effectuate a taking of the[ir] lien." (Civil No. 14-1518, Docket No. 85 at ¶ 62.) In other words, they claim that the "mere enactment" of sections 129(d) and 322(c) constitutes a taking. See Keystone Bituminous, 480 U.S. at 494 (defining facial takings challenge). But plaintiffs' allegations to not support this claim. Rather, plaintiffs allege that the Recovery Act authorizes the special court to authorize PREPA to prime plaintiffs' lien. See Civil No. 14-1518, Docket No. 85 at ¶ 33; Recovery Act § 322(c). They have not alleged that their lien has been primed. That is to say, plaintiffs still today have a senior lien on PREPA revenues. This is unlike their contractual right to seek the appointment of a receiver, which plaintiffs do not have today because section 108(b) of the Recovery Act expressly eliminated that right. See supra Part VI.A. Thus, when analyzed as a facial takings challenge, plaintiffs fail to state a claim upon which their sought-after

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    72

declaratory relief (that sections 129(d) and 322(c) of the Recovery
Act effectuate a taking without just compensation) can be granted
because they fail to allege an actual taking.

Characterizing plaintiffs' claim as an as-applied challenge,
however, leads to a different conclusion.  An as-applied facial
takings challenge is a claim "that the particular impact of
government action on a specific piece of property requires the
payment of just compensation."  Keystone Bituminous, 480 U.S. at
494.  This definition fits plaintiffs' factual allegations:
plaintiffs allege that if PREPA files pursuant to Chapter 3 of the
Recovery Act and the special court authorizes PREPA to grant a lien
on PREPA revenues senior to plaintiffs' lien, that action by the
special court will amount of a taking of plaintiffs' lien and will
require the payment of just compensation.   While facial takings
challenges are ripe the moment the challenged law is passed,
Suitum, 520 U.S. at 736 n.10; Asociacion de Suscripcion Conjunta,
659 F.3d at 50-51; Pharm. Care Mgmt. Ass'n, 429 F.3d at 307,
as-applied takings challenges must pass a higher ripeness hurdle.
In Williamson County, the Supreme Court held that plaintiffs
raising as-applied takings challenges must meet two special
ripeness requirements: (1) that the relevant government entity "has
reached a final decision regarding the application of the
regulations to the property at issue," and (2) that the plaintiffs
pursued any "adequate procedure for seeking just compensation."

72

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    73

*Williamson Cnty. Req'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 195 (1985); *accord Downing/Salt Pond Partners, L.P.*, 643 F.3d at 20-21.  Here, the special court is the government entity tasked with deciding whether PREPA may prime plaintiffs' lien.  *See* Recovery Act § 322(c) ("The [special c]ourt, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on the petitioner's property that is subject to a lien . . . .").  Plaintiffs have not alleged that the special court made a final decision regarding the priming of their lien.  Thus, when analyzed as an as-applied takings challenge, plaintiffs' claim fails the first *Williamson County* ripeness requirement and is therefore unripe.[27]

**C.   Takings Clause Conclusion**

For the foregoing reasons, the Court **DENIES** the Commonwealth defendants' motion to dismiss, (Civil No. 14-1518, Docket No. 95), as to the Franklin and Oppenheimer Rochester plaintiffs' Takings Clause claim based on their contractual right to seek the appointment of a receiver, and **GRANTS** the Commonwealth defendants' motion to dismiss, (Civil No. 14-1518, Docket No. 95), as to

---

[27] This result is not affected by the fact that plaintiffs seek declaratory relief, as opposed to money damages.  *See Garcia-Rubiera v. Calderon*, 570 F.3d 443, 451-54 (1st Cir. 2009) (applying both *Williamson County* ripeness prongs to takings claim for declaratory and injunctive relief); *Golemis v. Kirby*, 632 F. Supp. 159, 164 (D.R.I. 1985) ("[The *Williamson County*] ripeness analysis would be completely neutered if its holding were applied to damage claims alone.").

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                    74

plaintiffs' Takings Clause claim based on their lien on PREPA

revenues.

### VII. CONCLUSION

In Civil Case No. 14-1518, the Court orders as follows:

1.  The Commonwealth defendants' motion to dismiss, (Docket No.
    95), is **DENIED** as to the Franklin and Oppenheimer Rochester
    plaintiffs' preemption and Contract Clause claims.

2.  The Commonwealth defendants' motion to dismiss, (Docket No.
    95), is **GRANTED** as to plaintiffs' stay of federal court
    proceedings claim.  The stay of federal court proceedings
    claim is unripe and is therefore **DISMISSED WITHOUT PREJUDICE.**

3.  The Commonwealth defendants' motion to dismiss, (Docket No.
    95), is **DENIED** as to plaintiffs' Takings Clause claim based on
    their contractual right to seek the appointment of a receiver,
    and **GRANTED** as to plaintiffs' Takings Clause claim based on
    their lien on PREPA revenues.  The Takings Clause claim based
    on plaintiffs' lien on PREPA revenues is **DISMISSED WITHOUT
    PREJUDICE.**

4.  PREPA's motion to dismiss, (Docket No. 97), is **GRANTED** as to
    all claims to the extent that they are asserted against PREPA.
    PREPA is **DISMISSED** from this case because plaintiffs lack
    standing against it.

Civil Nos. 14-1518 (FAB), 14-1569 (FAB)                                    75

5.    Plaintiffs' motion for summary judgment, (Docket No. 78), is
      **GRANTED** as to plaintiffs' preemption claim and **DENIED** as to
      plaintiffs' stay of federal court proceedings claim.

      In Civil Case No. 14-1569, the Commonwealth defendants' motion
to   dismiss,   (Docket   No.   29),   is   **DENIED**   as   to   plaintiff
BlueMountain's preemption and contract clauses claims, and **GRANTED**
as to BlueMountain's stay of federal court proceedings claim.  The
stay of federal court proceedings claim is unripe and is therefore
**DISMISSED WITHOUT PREJUDICE**.

      The Recovery Act is preempted by the federal Bankruptcy Code
and  is  therefore  void  pursuant  to  the  Supremacy  Clause  of  the
United States Constitution.  The Commonwealth defendants, and their
successors in office, are permanently enjoined from enforcing the
Recovery Act.

      **IT IS SO ORDERED**.

      San Juan, Puerto Rico, February 6, 2015.


                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE

75

Title 11. Bankruptcy
Chapter 1. General Provisions (Refs & Annos)
§ 103. Applicability of chapters

(a) Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title, and this chapter, sections 307, 362(o), 555 through 557, and 559 through 562 apply in a case under chapter 15.

(b) Subchapters I and II of chapter 7 of this title apply only in a case under such chapter.

(c) Subchapter III of chapter 7 of this title applies only in a case under such chapter concerning a stockbroker.

(d) Subchapter IV of chapter 7 of this title applies only in a case under such chapter concerning a commodity broker.

(e) Scope of application.--Subchapter V of chapter 7 of this title shall apply only in a case under such chapter concerning the liquidation of an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991.

(f) Except as provided in section 901 of this title, only chapters 1 and 9 of this title apply in a case under such chapter 9.

(g) Except as provided in section 901 of this title, subchapters I, II, and III of chapter 11 of this title apply only in a case under such chapter.

(h) Subchapter IV of chapter 11 of this title applies only in a case under such chapter concerning a railroad.

(i) Chapter 13 of this title applies only in a case under such chapter.

(j) Chapter 12 of this title applies only in a case under such chapter.

(k) Chapter 15 applies only in a case under such chapter, except that--

(1) sections 1505, 1513, and 1514 apply in all cases under this title; and

(2) section 1509 applies whether or not a case under this title is pending.


(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2555; Pub.L. 97-222, § 2, July 27, 1982, 96 Stat. 235; Pub.L. 98-353, Title III, § 423, July 10, 1984, 98 Stat. 369; Pub.L. 99-554, Title II, § 252, Oct. 27, 1986, 100 Stat. 3104; Pub.L. 106-554, § 1(a)(5) [Title I, § 112(c)(5)(A)], Dec. 21, 2000, 114 Stat. 2763, 2763A-394; Pub.L. 109-8, Title VIII, § 802(a), Apr. 20, 2005, 119 Stat. 145; Pub.L. 111-327, § 2(a)(2), Dec. 22, 2010, 124 Stat. 3557.)

76



11 U.S.C.A. § 109

Title 11. Bankruptcy
Chapter 1. General Provisions (Refs & Annos)
§ 109. Who may be a debtor

(a) Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor under this title.

* * * * * * * *

(c) An entity may be a debtor under chapter 9 of this title if and only if such entity--

(1) is a municipality;

(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

(3) is insolvent;

(4) desires to effect a plan to adjust such debts; and

(5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(C) is unable to negotiate with creditors because such negotiation is impracticable; or

(D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.

...

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2557; Pub.L. 97-320, Title VII, § 703(d), Oct. 15, 1982, 96 Stat. 1539; Pub.L. 98-353, Title III, §§ 301, 425, July 10, 1984, 98 Stat. 352, 369; Pub.L. 99-554, Title II, § 253, Oct. 27, 1986, 100 Stat. 3105; Pub.L. 100-597, § 2, Nov. 3, 1988, 102 Stat. 3028; Pub.L. 103-394, Title I, § 108(a), Title II, § 220, Title IV, § 402, Title V, § 501(d)(2), Oct. 22, 1994, 108 Stat. 4111, 4129, 4141, 4143; Pub.L. 106-554, § 1(a)(5) [Title I, § 112(c)(1), (2)], (8) [§ 1(e)], Dec. 21, 2000, 114 Stat. 2763, 2763A-393, 2763A-665; Pub.L. 109-8, Title I, § 106(a), Title VIII, § 802(d)(1), Title X, § 1007(b), Title XII, § 1204(1), Apr. 20, 2005, 119 Stat. 37, 146, 188, 193; Pub.L. 111-16, § 2(1), May 7, 2009, 123 Stat. 1607; Pub.L. 111-327, § 2(a)(6), Dec. 22, 2010, 124 Stat. 3557.)

Title 11. Bankruptcy
Chapter 9. Adjustment of Debts of a Municipality
Subchapter I. General Provisions
§ 903. Reservation of State power to control municipalities

This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but--

(1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and

(2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2622; Pub.L. 98-353, Title III, § 492, July 10, 1984, 98 Stat. 383.)