## Nos. 15-1218 & 15-1221

# United States Court of Appeals for the First Circuit

FRANKLIN CALIFORNIA TAX-FREE TRUST, *ET AL.*,

*Plaintiffs-Appellees,*

v.

THE COMMONWEALTH OF PUERTO RICO, *ET AL.*,

*Defendants-Appellants.*

BLUEMOUNTAIN CAPITAL MANAGEMENT, LLC, *ET AL.*,

*Plaintiffs-Appellees,*

v.

ALEJANDRO GARCIA-PADILLA, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, *ET AL.*,

*Defendants-Appellants.*

**On Appeal from the United States District Court for the District of Puerto Rico (Besosa, J.) Civil Action Nos. 3:14-cv-1518 & 3:14-cv-1569**

## APPELLANTS' REPLY BRIEF

Margarita Mercado-Echegaray
Solicitor General
COMMONWEALTH OF PUERTO RICO
P.O. Box 9020192
San Juan, PR   00902-0192
(787) 724-2165

Christopher Landau, P.C.
Claire McCusker Murray
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC   20005
(202) 879-5000

*Counsel for Defendants-Appellants*

April 29, 2015

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

ARGUMENT ...................................................................................... 2

I.    The District Court Erred By Holding That The Recovery Act Is Preempted By Chapter 9 Of The Bankruptcy Code Even Though That Provision Does Not Apply To Puerto Rico. ............... 2

    A.    Plaintiffs Misinterpret The Statutory Text. ........................... 2

    B.    Plaintiffs Misapply Preemption Principles. .......................... 21

II.    The District Court, After Holding That The Recovery Act Is Preempted By Chapter 9 Of The Bankruptcy Code And Permanently Enjoining Its Enforcement, Erred By Proceeding To Address Plaintiffs' Contract And Takings Clause Claims. ................................................................................. 31

CONCLUSION ................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott v. United States,*
   562 U.S. 8 (2010) ................................................................. 6

*Altria Group, Inc. v. Good,*
   555 U.S. 70 (2008) ............................................................. 24

*Ashton v. Cameron Cnty. Water Imp. Dist. No. 1,*
   298 U.S. 513 (1936) ..................................... 15, 18, 21, 24

*Ashwander v. TVA,*
   297 U.S. 288 (1936) ................................................. 19, 31

*Bond v. United States,*
   134 S. Ct. 2077 (2014) ...................................................... 25

*Camreta v. Greene,*
   131 S. Ct. 2020 (2011) ............................................. 19, 31

*City of Pontiac Retired Emps. Ass'n v. Schimmel,*
   751 F.3d 427 (6th Cir. 2013) (*en banc*; *per curiam*) ....................... 14

*Clark v. Martinez,*
   543 U.S. 371 (2005) ......................................................... 16

*Cook Cty., Ill. v. United States,*
   538 U.S. 119 (2003) ........................................................... 8

*Doty v. Love,*
   295 U.S. 64 (1935) ........................................................... 26

*Duncan v. Walker,*
   533 U.S. 167 (2001) ........................................................... 4

*Faitoute Iron & Steel Co. v. Asbury Park, N.J.,*
   316 U.S. 502 (1942) ................................ 15, 17, 20, 21, 23, 24, 25, 26

*FDIC v. Torrefacción Café Cialitos, Inc.,*
   62 F.3d 439 (1st Cir. 1995)..........................................................27

*FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.,*
   498 U.S. 269 (1991) .......................................................................32

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ................................................................24, 25

*Home Bldg. & Loan Ass'n v. Blaisdell,*
   290 U.S. 398 (1934) ................................................................19, 20

*In re Bank of New England Corp.,*
   364 F.3d 355 (1st Cir. 2004)........................................................27

*In re Bankers Trust Co.,*
   566 F.2d 1281 (5th Cir. 1978) .....................................................12

*In re Boston Reg'l Med. Ctr., Inc.,*
   291 F.3d 111 (1st Cir. 2002)........................................................27

*In re Cash Currency Exch., Inc.,*
   762 F.2d 542 (7th Cir. 1985) .......................................................11

*In re Davis,*
   170 F.3d 475 (5th Cir. 1999) (*en banc*) ........................................23

*In re Irving Tanning Co.,*
   496 B.R. 644 (B.A.P. 1st Cir. 2013) .............................................22

*In re Princeton-N.Y. Investors, Inc.,*
   219 B.R. 55 (D.N.J. 1998)............................................................23

*In re Schafer,*
   689 F.3d 601 (6th Cir. 2012) ..................................................22, 23

*In re Weinstein,*
   164 F.3d 677 (1st Cir. 1999).........................................................27

*Integrated Solutions, Inc. v. Service Support Specialties, Inc.,*
   124 F.3d 487 (3d Cir. 1997)..........................................................22

*International Shoe Co. v. Pinkus*,
278 U.S. 261 (1929) .................................................................. 26, 27

*Israel-British Bank (London) Ltd. v. FDIC*,
536 F.2d 509 (2d Cir. 1976) ........................................................... 12

*Lyng v. Northwest Indian Cemetery Protective Ass'n*,
485 U.S. 439 (1988) .................................................................. 19, 31

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005) ............................................................. 33

*Martinez-Serrano v. Quality Health Servs. of P.R., Inc.*,
568 F.3d 278 (1st Cir. 2009) .......................................................... 32

*Meese v. Keene*,
481 U.S. 465 (1987) .................................................................... 10

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) .................................................................... 10

*Neblett v. Carpenter*,
305 U.S. 297 (1938) .................................................................... 26

*PBGC Corp. v. LTV Corp.*,
496 U.S. 633 (1990) .................................................................... 29

*PG&E Co. v. California*,
350 F.3d 932 (9th Cir. 2003) ......................................................... 21

*Richards v. United States*,
369 U.S. 1 (1962) ........................................................................ 2

*Ropico, Inc. v. City of New York*,
425 F. Supp. 970 (S.D.N.Y. 1976) ............................................. 17, 27

*Shannon v. United States*,
512 U.S. 573 (1994) .................................................................... 10

*Shell v. Yoon*,
499 B.R. 610 (N.D. Ind. 2013) ....................................................... 23

*Solid Waste Agency of N. Cook Cnty. v. Army Corps of Eng'rs,*
    531 U.S. 159 (2001) ....................................................... 30

*St. John's Insulation, Inc. v. L. Addison & Assocs., Inc.,*
    156 F.3d 101 (1st Cir. 1998) ........................................... 32

*Stellwagen v. Clum,*
    245 U.S. 605 (1918) ....................................................... 26

*Stenberg v. Carhart,*
    530 U.S. 914 (2000) ......................................................... 9

*Sturges v. Crowninshield,*
    4 Wheat. (17 U.S.) 122 (1819) ....................................... 26

*Tringali v. Hathaway Mach. Co.,*
    796 F.2d 553 (1st Cir. 1986) ........................................... 32

*UAW v. Fortuño,*
    633 F.3d 37 (1st Cir. 2011) ............................................. 20

*United States v. Bekins,*
    304 U.S. 27 (1938) ..................................... 15, 17, 21, 24

*United States v. Locke,*
    529 U.S. 89 (2000) ......................................................... 22

*United States v. Lopez Andino,*
    831 F.2d 1164 (1st Cir. 1987) ......................................... 16

*United States v. Morrow,*
    266 U.S. 531 (1925) ......................................................... 6

*Wisconsin Pub. Intervenor v. Mortier,*
    501 U.S. 597 (1991) ....................................................... 26

## Constitutions, Statutes, Rules, and Regulations

11 U.S.C. § 101(40) ................................................................ 3

11 U.S.C. § 101(52) ................................................. 3, 7, 8, 11, 12

11 U.S.C. § 109(b) ...................................................................... 11

11 U.S.C. § 109(c)(2) ................................................................. 12

11 U.S.C. § 109(d) ...................................................................... 11

11 U.S.C. § 901 *et seq.* ............................................................. 3

11 U.S.C. § 903 ........................................................... 3, 4, 5, 6, 7, 9

11 U.S.C. § 903(1) .......................................................... 1-3, 5-19, 25

11 U.S.C. § 924(c) ........................................................................ 6

## Other Authorities

Lubben, Stephen J.,
    *Puerto Rico & The Bankruptcy Clause*,
    88 Am. Bankr. L.J. 553 (2014) ............................................. 15, 18

Mayer, Thomas Moers,
    *State Sovereignty, State Bankruptcy,*
    *& A Reconsideration of Chapter 9*,
    85 Am. Bankr. L.J. 363 (2011) ............................................... 6, 20

McConnell, Michael W. & Picker, Randal C.,
    *When Cities Go Broke:*
    *A Conceptual Introduction to Municipal Bankruptcy*,
    60 U. Chi. L. Rev. 425 (1993) ..................................................... 18

Resnick, Alan N. & Sommer, Henry J., eds.,
    *Collier on Bankruptcy* (16th ed. 2014) ..................................... 17

S. Rep. No. 95-989 (1978) ........................................................... 13

Singer, Norman J., *et al.*,
    *Sutherland Statutory Construction* (7th ed. 2014) ........................ 6

Wright, Charles A., *et al.*,
    *Federal Practice & Procedure* (rev. ed. 2014) ............................ 32

## INTRODUCTION

Plaintiffs' answering briefs confirm that their position depends on wrenching Section 903(1) from its statutory context and treating it as a free-floating provision of the U.S. Code. That, under basic principles of statutory interpretation (and common sense), they cannot do. Section 903(1) is a proviso to a clause that does not apply to Puerto Rico, located within a chapter of the Bankruptcy Code for which Puerto Rico is categorically ineligible. Once Section 903(1) is read in its statutory context, it is clear that it does not apply to Puerto Rico.

And that point is only reinforced by the background presumption against preemption, which applies with full force to Puerto Rico. Indeed, that presumption is particularly compelling here, because an interpretation that avoids the application of Section 903(1) allows this Court to sidestep the serious constitutional questions raised by that provision. In any event, it is implausible to assume that Congress meant to deprive Puerto Rico's public utilities—which provide essential public services like electricity and water—of *any* mechanism to restructure their debts, thereby leaving them at the mercy of their creditors. Accordingly, this Court should reverse the judgment.

## ARGUMENT

**I.  The District Court Erred By Holding That The Recovery Act Is Preempted By Chapter 9 Of The Bankruptcy Code Even Though That Provision Does Not Apply To Puerto Rico.**

### A.  Plaintiffs Misinterpret The Statutory Text.

Like the district court, plaintiffs begin and end their textual analysis with the language of Section 903(1): "a State law prescribing a method of composition of indebtedness of [a] municipality may not bind any creditor that does not consent to such composition."  11 U.S.C. § 903(1), Add. 92.  According to plaintiffs, the Recovery Act is a "State law prescribing a method of composition of indebtedness of [a] municipality," and is thus preempted insofar as it purports to "bind any creditor that does not consent to such composition."  *See Franklin* Br. 15-17; *BlueMountain* Br. 20, 27.

The problem with that analysis is that Section 903(1) is not a standalone section of the U.S. Code, and cannot be interpreted or applied in isolation.  To the contrary, it is axiomatic that "a section of a statute should not be read in isolation from the context of the whole Act."  *Richards v. United States*, 369 U.S. 1, 11 (1962).  That axiom is

particularly pertinent here, because Section 903(1) is, by its terms, a proviso to Section 903, which in turn is part of Chapter 9.

And the whole point of Chapter 9 is to create a mechanism for a municipality (*i.e.*, a "political subdivision or public agency or instrumentality of a State," 11 U.S.C. § 101(40), Add. 84) to seek federal bankruptcy protection, *see id.* §§ 901-46. Plaintiffs do not, and cannot, deny that Puerto Rico's municipalities are categorically ineligible to seek federal bankruptcy protection under Chapter 9. *See id.* § 101(52), Add. 86. For that reason, it would be nonsensical to apply Section 903(1), which is concededly part of Chapter 9, to those municipalities. Chapter 9 offers states—but not Puerto Rico—the *option* of allowing their municipalities to seek federal bankruptcy protection. In exchange for providing that federal option, Congress limited the relief that states could provide insolvent municipalities under state law. *See id.* § 903(1), Add. 92. In other words, Congress required states to take the bitter with the sweet. There is absolutely nothing in the text, structure, or history of the statute to suggest that Congress required Puerto Rico to take *only* the bitter without the sweet: limitations on the relief that it

3

can provide insolvent municipalities under local law *without* the option of seeking protection under federal law.

Indeed, Section 903 has no legal or logical application to a jurisdiction, like Puerto Rico, that cannot authorize its municipalities to seek protection under Chapter 9. By its terms, Section 903 specifies that "*[t]his Chapter* [*i.e.*, Chapter 9] does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise." *Id.* § 903, Add. 91-92 (emphasis added). Needless to say, there is no reason to clarify that Chapter 9 does not limit or impair Puerto Rico's power over its own municipalities when Chapter 9 has no effect whatsoever on Puerto Rico. Because Section 903 simply negates an inference that cannot apply to Puerto Rico, its application to Puerto Rico would result in disfavored statutory "surplusage." *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Not surprisingly, plaintiffs are unable to explain how Section 903 applies to Puerto Rico. The closest they come is to declare that "th[e] power [reserved to Puerto Rico by Section 903] may not seem significant

4

to Puerto Rico now, when its municipalities cannot avail themselves of Chapter 9, but that does not mean that Puerto Rico lacks the power over its municipalities that Section 903 secures." *BlueMountain* Br. 44. To the extent that this sentence is decipherable, it appears to suggest that Section 903 protects Puerto Rico's power over its municipalities from a nonexistent threat—which is just another way of saying that it does nothing.

Plaintiffs insist, however, that Section 903(1) applies to Puerto Rico even if Section 903 does not, because "Section 903(1) is not an 'exception' to Section 903's 'rule.'" *BlueMountain* Br. 45 (quoting Commonwealth Br. 30). That assertion is baffling. Plaintiffs' reasoning appears to be that "[i]f Section 903's reservation of sovereignty were repealed tomorrow as unnecessary, Section 903(1) would continue to preempt state municipal-bankruptcy laws." *Id*. Even if true, that reasoning does not prove plaintiffs' point: regardless of whether Section 903(1) theoretically *could* stand alone, there is no basis to interpret it as if it *does* stand alone.

To the contrary, Section 903(1) limits the general rule set forth in Section 903, and the two provisions are linked by the term "but" (which,

in this context, is synonymous with "except that" or "provided that").
Section 903(1) is thus a "statutory exception," because it "exempt[s]
something which would otherwise be covered" by Section 903.  Norman
J. Singer *et al.*, 2A *Sutherland Statutory Construction* § 47:11 (7th ed.
2014); *see also United States v. Morrow*, 266 U.S. 531, 534 (1925) ("The
general office of a proviso is to except something from the enacting
clause.").  By its terms, Section 903(1) excepts certain relief from the
"power of a State to control ... a municipality of or in such State" that is
otherwise "[r]eserve[d]" by Section 903.  Thus, if Section 903 does not
apply to Puerto Rico, it makes no sense to apply Section 903(1) to
Puerto Rico either.  *See*, *e.g.*, *Morrow*, 266 U.S. at 534-35 ("[A proviso's]
grammatical and logical scope is confined to the subject matter of the
principal clause."); *id.* at 535 ("[T]he presumption is that, in accordance
with its primary purpose, [a proviso] refers only to the provision to
which it is attached."); *Abbott v. United States*, 562 U.S. 8, 26 (2010)
("As a proviso attached to § 924(c), the 'except' clause is most naturally
read to refer to the conduct § 924(c) proscribes."); Thomas Moers Mayer,
*State Sovereignty, State Bankruptcy, & A Reconsideration of Chapter 9*,
85 Am. Bankr. L.J. 363, 379 n.84 (2011) ("[Section 903(1)] appears as an

exception to § 903's respect for state law in chapter 9 and thus appears to apply only in a chapter 9 bankruptcy."). Indeed, Section 903(1) includes a textual reference ("such municipality") back to Section 903, thereby underscoring that the provisions must be read in tandem.

Plaintiffs similarly err by suggesting that the exclusion of Puerto Rico from the scope of Chapter 9 is irrelevant to the operation of Section 903(1). Plaintiffs note that when Congress defined "State" in 1984 to include Puerto Rico "except for the purpose of defining who may be a debtor under chapter 9 of this title," 11 U.S.C. § 101(52), Add. 86, it did not amend Section 903(1), or any other provision of Chapter 9, in any way. *See Franklin* Br. 1, 20, 35; *BlueMountain* Br. 3-4, 44, 46-47. Therefore, plaintiffs suggest, it follows that Section 903(1) continues to mean the same thing, and operate in the same manner, as before the 1984 amendment.

But that is a *non sequitur*. Just because Congress did not amend Section 903(1) in 1984 does not mean that Congress did not affect the operation of that provision when it rendered Puerto Rico's municipalities categorically ineligible to seek relief under Chapter 9. To the contrary, precisely because Section 903(1) is not a freestanding

7

provision of the U.S. Code, but a proviso to Section 903—which in turn is a shield against interference by Chapter 9—the exclusion of Puerto Rico from the scope of Chapter 9 necessarily affects the operation of Section 903(1) with respect to Puerto Rico.

That is not to say, as plaintiffs do, that the exclusion of Puerto Rico amounts to an "implied repeal" of Section 903(1), and thereby triggers the rule that "'repeals by implication are not favored.'" *Franklin* Br. 35 (quoting *Cook Cty., Ill. v. United States*, 538 U.S. 119, 132 (2003)). To the contrary, Section 903(1) remains in effect, and has not been repealed. As explained above, Congress has simply removed Puerto Rico's municipalities from the operation of that provision by rendering those municipalities categorically ineligible to file under Chapter 9. There is certainly no rule that the addition or modification of a statutory definition (like "State" in 11 U.S.C. § 101(52), Add. 86) should not be deemed to affect the operation of substantive statutory provisions; to the contrary, Congress presumably adds or modifies statutory definitions *precisely* to affect the operation of substantive statutory provisions.

8

Aside from their cursory efforts to deny the link between Section 903(1) and Section 903, plaintiffs devote much of their energy to trying to overcome another textual problem with their argument: the fact that Section 903(1) limits the application of state municipal composition laws to "creditor[s]," while plaintiffs cannot be "creditor[s]" with respect to Puerto Rico's municipalities, which are categorically ineligible to be "debtor[s]" under that provision. *See, e.g.*, Commonwealth Br. 27-29.

Plaintiffs' primary response is to declare that this Court should ignore the specific *statutory* definitions of "creditor" and "debtor" and instead apply a *non-statutory* "ordinary" definition that conveniently solves this textual problem. *See, e.g.*, *Franklin* Br. 23 ("When rigid application of a statutory definition would nullify the statute's purpose, courts employ the term's ordinary, rather than defined, meaning."); *BlueMountain* Br. 21 ("Courts do not apply statutory definitions where doing so would defeat the purpose of the statute."). Needless to say, that approach turns ordinary principles of statutory interpretation upside down. *See, e.g.*, *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning."); *Meese*

9

*v. Keene*, 481 U.S. 465, 484 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term.").

Plaintiffs insist, however, that their unorthodox approach to statutory interpretation is necessary to fulfill the "purpose" of Section 903(1), as allegedly articulated in the legislative history. *See Franklin* Br. 21-28; *BlueMountain* Br. 2-3, 21-22, 31-38. But courts have no license to ignore a statute's plain text to fulfill an alleged "purpose" gleaned only from the legislative history. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 583-84 (1994) ("[C]ourts have no authority to enforce [a] principl[e] gleaned solely from legislative history that has no statutory reference point."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are ... inadequate to overcome the words of its text regarding the specific issue under consideration.") (emphasis omitted).

And, as the Commonwealth explained in its opening brief, the legislative history on which plaintiffs rely (from 1946 and 1978) does not, and cannot, address the statutory question presented here, which arises as a result of the 1984 amendment excluding Puerto Rico's municipalities from being "debtors" under Chapter 9. *See*

10

Commonwealth Br. 42 (citing 11 U.S.C. § 101(52), Add. 86). Indeed, the pre-1984 legislative history on which plaintiffs rely *presupposes* that the jurisdictions covered by Section 903(1) have the option of filing under Chapter 9, and thus does not address the applicability of that provision to jurisdictions, like Puerto Rico, ineligible to authorize their municipalities to file under Chapter 9. At most, the legislative history suggests that the intent of Section 903(1) was to prevent states from "hav[ing] their bankruptcy laws running right along at the same time as [Chapter 9]." JA67 (*Hearings on H.R. 4307*, 79th Cong. 16 (1846) (statement of Millard Parkhurst)). Because Puerto Rico's municipalities are categorically ineligible to file under Chapter 9, the Recovery Act by definition operates in a gap created by federal law, rather than "right along at the same time" as federal law.

The example of insurance companies and banks is illustrative. Both are categorically ineligible to seek relief under the federal Bankruptcy Code. *See* 11 U.S.C. §§ 109(b), (d), Add. 89. Nevertheless, courts have repeatedly recognized that those entities' exclusion from the federal Bankruptcy Code *permits* their governance by state law. *See, e.g.*, *In re Cash Currency Exch., Inc.*, 762 F.2d 542, 552 (7th Cir. 1985);

11

*In re Bankers Trust Co.*, 566 F.2d 1281, 1288 (5th Cir. 1978); *Israel-British Bank (London) Ltd. v. FDIC*, 536 F.2d 509, 513-14 (2d Cir. 1976). Plaintiffs' attempt to distinguish those entities from Puerto Rico on the ground that "since 1910 Congress has expressly excluded insurance companies and banks from federal bankruptcy proceedings," *BlueMountain* Br. 56, is unavailing: Puerto Rico's municipalities too are categorically "excluded ... from federal bankruptcy proceedings"—and by the very same section of the Bankruptcy Code that excludes insurance companies and banks. *See* 11 U.S.C. § 109, Add. 89-90; *cf.* 11 U.S.C. § 101(52), Add. 86. Accordingly, plaintiffs offer no reason to treat Puerto Rico's municipalities any differently than insurance companies and banks.

Plaintiffs insist, however, that defendants' argument based on the statutory term "creditor" proves too much. To accept that argument, plaintiffs assert, this Court necessarily would have to hold Section 903(1) inapplicable to (1) municipalities eligible to seek Chapter 9 protection but not authorized by their states to do so, and/or (2) municipalities eligible to seek Chapter 9 protection, and authorized by their states to do so, that have not yet sought such protection. *See*,

12

*e.g.*, *Franklin* Br. 18-20; *BlueMountain* Br. 33, 40-41, 45-46. And that, plaintiffs declare, would undermine the purpose of the statute, as reflected in its 1946 and 1978 legislative history, to secure the uniformity of municipal-bankruptcy law across all states. *See Franklin* Br. 23-25; *BlueMountain* Br. 2, 33-34, 39-40; 45-46; *see also* Chamber of Commerce *Amicus* Br. 19-20.

But that argument is a classic straw man. For this Court to hold that Section 903(1) cannot logically apply to a jurisdiction—like Puerto Rico—whose municipalities are categorically ineligible to seek relief under Chapter 9 does not require this Court to decide whether Section 903(1) applies to municipalities that have not been authorized by their States to seek relief under Chapter 9, or to municipalities that have not yet sought relief under Chapter 9. Congress itself necessarily *rejected* the policy of municipal-bankruptcy uniformity with respect to Puerto Rico by precluding the Commonwealth from authorizing its municipalities to seek relief under Chapter 9. Whether or not the asserted federal interest in uniformity is sufficiently hindered by the prospect of states covered by Chapter 9 "enact[ing] their own versions of Chapter IX," S. Rep. No. 95-989, at 110 (1978), to displace those states'

municipal bankruptcy laws insofar as they purport to bind nonconsenting creditors, is a question this Court need not resolve in a case, like this one, that does not present it.

Plaintiffs further err by asserting that "[d]efendants' interpretation of Section 903(1) has been rejected by an *en banc* panel of the Sixth Circuit." *Franklin* Br. 13 (referring to *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427 (6th Cir. 2013) (*en banc*; *per curiam*)). That decision casts no doubt on any aspect of the Commonwealth's interpretation of Section 903(1). Rather, that decision holds only that "[t]he plain language of [Section 903(1)] is not limited to [state-law] bankruptcy proceedings," and thus may apply to the decision of a city manager to reduce and eliminate municipal retirees' health care benefits. *Id.* at 431. Because the Recovery Act indisputably establishes bankruptcy proceedings, that holding has no bearing here. Indeed, the only part of that decision that is even arguably relevant to this case is the concurrence, which specifically notes that "[Section] 903(1) does not exist in a vacuum," but "is part of, and in fact an *exception* to, the main point of a longer sentence," *id.* at 433 (McKeague,

J., joined by Batchelder, C.J., concurring) (emphasis in original)—which, as noted above, is precisely the Commonwealth's point.

For the foregoing reasons, defendants have the better of the textual argument regarding the application of Section 903(1) to a jurisdiction, like Puerto Rico, that is categorically ineligible to authorize its municipalities to seek Chapter 9 protection. But even if they did not, this Court can and should interpret that provision in a way that avoids the thorny constitutional questions that application of Section 903(1) would present. *See* Commonwealth Br. 36-38; *see generally* Stephen J. Lubben, *Puerto Rico & The Bankruptcy Clause*, 88 Am. Bankr. L.J. 553, 555 (2014) ("Courts ... have strong incentives to read [Section 903(1)] narrowly, to avoid constitutional problems."). As the Supreme Court has repeatedly recognized, the states' control over the finances of their own political subdivisions and instrumentalities lies at the very heart of their sovereignty. *See Faitoute Iron & Steel Co. v. Asbury Park, N.J.*, 316 U.S. 502, 508-09 (1942); *United States v. Bekins*, 304 U.S. 27, 51-52 (1938); *Ashton v. Cameron Cnty. Water Imp. Dist. No. 1*, 298 U.S. 513, 528-32 (1936).

Plaintiffs miss the point by responding that no constitutional concerns lurk here, because Puerto Rico is not a state and thus "has no reserved sovereignty vis-à-vis the federal government." *BlueMountain* Br. 47-48 n.10; *see also Franklin* Br. 42 ("Section 903(1)'s preemption of the Recovery Act raises no issue of state sovereignty because Puerto Rico is different from a state."). There is no need to address the merits of that assertion, as this case does not require this Court to wade into the "quagmire" surrounding Puerto Rico's constitutional status. *United States v. Lopez Andino*, 831 F.2d 1164, 1172 (1st Cir. 1987) (Torruella, J., concurring). Plaintiffs' argument, after all, is that Section 903(1) preempts a municipal bankruptcy law enacted not merely by Puerto Rico, but by any of the fifty states. Accordingly, the canon of constitutional avoidance applies here regardless of Puerto Rico's constitutional status: if one of "two plausible statutory constructions" would require a court to confront difficult constitutional problems, "the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

16

And if Section 903(1) applies to the states in the manner plaintiffs ask this Court to apply it to Puerto Rico, its constitutionality would at least be questionable.  That is, if it is unconstitutional for Congress to create a mechanism for a municipality to restructure its debts without state approval, *see Bekins*, 304 U.S. at 50-54; *Faitoute,* 316 U.S. at 508-09, then *a fortiori* there is at least a serious question as to whether Congress can take the even more drastic step of outright barring a state from creating its own "machinery for the autonomous regulation of problems as peculiarly local as the fiscal management of its own household," *Faitoute*, 316 U.S. at 509; *see also Ropico, Inc. v. City of New York*, 425 F. Supp. 970, 983-84 (S.D.N.Y. 1976).  As the leading bankruptcy treatise explains, "[i]f a state composition procedure does not run afoul of the contracts clause, then municipal financial adjustment under a state procedure should be a permissible exercise of state power, and a congressional enactment prohibiting that exercise would be congressional overreaching in violation of the Tenth Amendment."  Alan N. Resnick & Henry J. Sommer eds., 6 *Collier on Bankruptcy* § 903.03[2] (16th ed. 2014); *see also* Lubben, *Puerto Rico & The Bankruptcy Clause*, 88 Am. Bankr. L.J. at 571 ("Compelling states

17

to use chapter 9—by precluding all other options—would seem to undermine the very essence of the power balance that lies at the heart of the Tenth Amendment."); Michael W. McConnell & Randal C. Picker, *When Cities Go Broke: A Conceptual Introduction to Municipal Bankruptcy*, 60 U. Chi. L. Rev. 425, 454 n.127 (1993) (arguing that Section 903(1) "is far more questionable on federalism grounds than was the 1933 Act [invalidated in *Ashton*]").

If it is one day asked to determine the validity of a state's municipal restructuring law under Section 903(1), this Court will then be required either to squarely address the significant federalism concerns raised by that provision or to construe it to avoid those concerns. *Cf.* GDB Br. 22-28; PREPA *Amicus* Br. 17-19; Profs. Gillette & Skeel *Amicus* Br. 10-14. But today is not that day. Because Section 903(1) does not purport to apply to jurisdictions, like Puerto Rico, that Congress has rendered categorically ineligible for Chapter 9 relief, there is no reason for this Court to interpret that provision to do so, and thereby bind its hands with respect to the lurking constitutional questions. To the contrary, "a 'longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in

18

advance of the necessity of deciding them.'" *Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011) (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988), and citing *Ashwander v. TVA*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring)).

If "Congress wanted Chapter 9 to be the sole method of restructuring municipal debt," *Franklin* Br. 2, even for jurisdictions categorically ineligible for Chapter 9 relief, it could and would have enacted a statute that said so. Section 903(1), which is framed as a proviso to a clause that expressly *reaffirms* the states' plenary control over their municipalities, is not such a statute. This Court need say no more to resolve this case, and avoid wandering into a constitutional thicket regarding the interpretation and application of Section 903(1).

Finally, plaintiffs again miss the point by arguing that their interpretation of Section 903(1) raises no constitutional concern because the Contract Clause independently bars states from enacting any restructuring law that results in a discharge of obligations. *See Franklin* Br. 39-41. That argument is based on a line of pre-New Deal caselaw swept away by the landmark case of *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934). Under the modern approach to the

19

Contract Clause established by *Blaisdell*, as this Court has explained, "Contract Clause claims are analyzed under a two-pronged test": a court must first analyze whether the challenged law has substantially impaired a contract and, if so, then analyze whether such an impairment is reasonable and necessary to serve an important government purpose. *UAW v. Fortuño*, 633 F.3d 37, 41 (1st Cir. 2011); *see also* Mayer, *State Sovereignty,* 85 Am. Bankr. L.J. at 378 ("*Fortuño*'s statement of current Contract Clause jurisprudence shows how weak the clause has become as a limit on state legislation dealing with financial emergencies.").

Indeed, the Supreme Court in *Faitoute* unanimously *rejected* a Contract-Clause challenge to a state municipal-bankruptcy law, emphasizing that the law was a practical response that allowed bondholders in the aggregate to recover more than they could by pursuing individual remedies. *See* 316 U.S. at 509-16; *see also* Mayer, *State Sovereignty,* 85 Am. Bankr. L.J. at 376 ("[*Faitoute*] ... established that the Contract Clause did not bar a state from enacting its own legislation impairing municipal contracts if financial emergency required it.") (emphasis omitted). Plaintiffs' effort to state a claim

under the Contract Clause can be revisited on remand if this Court reverses the judgment, but does not provide a reason to ignore the significant federalism concerns in this area acknowledged by the Supreme Court in *Ashton*, *Bekins*, and *Faitoute*.

### B. Plaintiffs Misapply Preemption Principles.

In addition to misinterpreting the statutory text, plaintiffs also misapply the relevant preemption principles applicable to that text. In particular, plaintiffs contend at the broadest level that there is no presumption against preemption in the bankruptcy context, because this is not an area of traditional state regulation. *See BlueMountain* Br. 25-26. As the Commonwealth explained in its opening brief, that premise is manifestly incorrect: it has been settled since the early nineteenth century that the federal power to enact bankruptcy legislation does *not* displace state law in this area, so that state and territorial bankruptcy laws have a venerable pedigree. *See* Commonwealth Br. 16-18. It is thus well-established that "the presumption against displacing state law by federal bankruptcy law is just as strong in bankruptcy as in other areas of federal legislative power." *PG&E Co. v. California*, 350 F.3d 932, 943 (9th Cir. 2003); *see*

21

*also Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487, 493 (3d Cir. 1997) (same); *In re Irving Tanning Co.*, 496 B.R. 644, 663 (B.A.P. 1st Cir. 2013) (same).

It follows that plaintiffs err by asserting that "[c]ourts ... have rejected the application of any presumption against preemption of state laws that, as here, touch directly on matters of bankruptcy." *BlueMountain* Br. 25 (citing *In re Schafer*, 689 F.3d 601, 614 (6th Cir. 2012)). *Schafer* simply made the unremarkable point, in describing background preemption principles, that the presumption against preemption "is not triggered 'when the state regulates in an area where there has been a history of significant federal presence.'" *Schafer*, 689 F.3d at 614 (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)). Contrary to plaintiffs' assertion, *Schafer* did not "conclude" that the presumption is inapplicable in the bankruptcy context, and indeed emphasized that the Supreme Court has long *upheld* state legislation in this area. *See id.* Thus, *Schafer rejected* a preemption argument on the

ground that the state law at issue there did not conflict with federal bankruptcy law. *See id.* at 614-16.[1]

Plaintiffs fare no better by limiting their argument to the proposition that the presumption against preemption does not apply in the specific context of "municipal bankruptcy" laws. *Franklin* Br. 37-38. To the contrary, the presumption against preemption is *especially* compelling in this context. *See*, *e.g.*, *Faitoute*, 316 U.S. at 512 ("The intervention of the State in the fiscal affairs of its cities is plainly an exercise of its essential reserve power to protect the vital interests of its people by sustaining the public credit and maintaining local

---

[1] *Schafer* also rejected the distinction that plaintiffs try to draw between preemption of state bankruptcy and non-bankruptcy laws. *See* 689 F.3d at 615-16; *see generally BlueMountain* Br. 26 n.5. Thus, contrary to plaintiffs' contention, courts have not limited the presumption against preemption to cases involving state non-bankruptcy laws, but have also applied it in cases involving state bankruptcy laws. *See, e.g., In re Davis*, 170 F.3d 475, 481-82 (5th Cir. 1999) (*en banc*) (applying the presumption in determining whether federal bankruptcy law preempted Texas's homestead exemption); *Shell v. Yoon*, 499 B.R. 610, 617 (N.D. Ind. 2013) (applying the presumption in holding that federal bankruptcy law did not preempt an Illinois law that permitted nonresidents domiciled in Illinois to employ the federal exemptions); *In re Princeton-N.Y. Investors, Inc.*, 219 B.R. 55, 60-61 (D.N.J. 1998) ("A presumption against preemption of state law exists in the current case because the property of the bankruptcy estate traditionally has been the states' concern.").

government.").    Indeed,  as  the  Supreme  Court  has  emphasized,
Congress lacks plenary power to enact bankruptcy legislation applicable
to  the  states'  political  subdivisions  or  instrumentalities;  rather,  such
legislation  must  be  "carefully"  tailored  to  permit  states  to  "retain[]
control of [their] fiscal affairs."  *Bekins*, 304 U.S. at 51; *see also Ashton*,
298 U.S. at 528-32.  Those restrictions are necessary because municipal
restructuring  implicates  "problems  as  peculiarly  local  as  the  fiscal
management of [a state's] own household."  *Faitoute*, 316 U.S. at 509.

Accordingly,  this  case  does  not  merely  implicate  the  ordinary
preemption  principle  that  "when  the  text  of  a  pre-emption  clause  is
susceptible  of  more  than  one  plausible  reading,  courts  ordinarily  accept
the reading that disfavors pre-emption."  *Altria Group, Inc. v. Good*, 555
U.S.  70,  77  (2008)  (internal  quotation  omitted).    Rather,  this  case
implicates  the  "super-anti-preemption"  principle  of  *Gregory v. Ashcroft*,
that when federal law "goes beyond an area traditionally regulated by
the States," and intrudes into an area "of the most fundamental sort for
a  sovereign  entity,"  Congress  must  provide  a  "plain  statement"  of  its
intent to preempt.  501 U.S. 452, 460-61 (1991); *see also id.* at 460 ("[I]t
is  incumbent  upon  the  federal  courts  to  be  *certain*  of  Congress'  intent

24

before finding that federal law overrides [the] balance [of state and federal powers].") (emphasis added; internal quotation omitted); *see also Bond v. United States*, 134 S. Ct. 2077, 2088-89 (2014) (applying *Gregory*'s "plain statement" rule). As noted above, there can be no doubt that a state's "fiscal management of its own household," *Faitoute*, 316 U.S. at 509, falls into the heartland of state sovereignty. This is not, in short, merely an area in which a state seeks to regulate private parties; it is an area in which a state seeks to regulate *itself*.

The *BlueMountain* plaintiffs (although not the *Franklin* plaintiffs) try to take matters even one step further by arguing in the alternative that "the Recovery Act trenches upon the municipal-debt-restructuring *field* that Congress has comprehensively occupied." *BlueMountain* Br. 53 (emphasis added); *see generally id.* at 23-24, 53-57. But that is just a restatement of their express-preemption argument; their field-preemption argument boils down to the proposition that Section 903(1) and its statutory predecessors "established that binding compositions of municipal debt was the exclusive domain of federal law." *Id.* at 55. Under this logic, every express-preemption argument could be recast as a field-preemption argument, on the theory that Congress preempted

the "field" covered by the statute. But that is not the law. *See, e.g.*, *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 612-13 (1991) (express preemption clause "would be pure surplusage if Congress had intended to occupy the entire field").

It appears that the *BlueMountain* plaintiffs advance this argument primarily as a hook for quoting the following sentence: "'States may not pass or enforce laws to interfere with or complement the Bankruptcy Act *or* to provide additional or auxiliary regulations.'" *BlueMountain* Br. 54 (quoting *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929)) (emphasis added by plaintiffs). But that sentence cannot possibly be taken at face value, or else it would overrule the venerable line of cases going back to the early nineteenth century (and reaffirmed *after Pinkus*) that the federal Bankruptcy Code does *not* preempt the states from enacting their own bankruptcy legislation, at least insofar as it does not conflict with federal law. *See, e.g.*, *Sturges v. Crowninshield*, 4 Wheat. (17 U.S.) 122, 193-97 (1819); *Stellwagen v. Clum*, 245 U.S. 605, 613 (1918); *Doty v. Love*, 295 U.S. 64, 70-74 (1935); *Neblett v. Carpenter*, 305 U.S. 297, 303-05 (1938); *Faitoute*, 316 U.S. at 508-09.

Thus, *Pinkus* must be understood as a case in which the Court concluded that the state law *did* conflict with federal law, and indeed all of the cases that plaintiffs cite applying *Pinkus* involve such a conflict. *See BlueMountain* Br. 54 (citing *In re Bank of New England Corp.*, 364 F.3d 355, 364 (1st Cir. 2004); *In re Boston Reg'l Med. Ctr., Inc.*, 291 F.3d 111, 126 (1st Cir. 2002); *In re Weinstein*, 164 F.3d 677, 682-83 (1st Cir. 1999)); *see generally FDIC v. Torrefacción Café Cialitos, Inc.*, 62 F.3d 439, 443 (1st Cir. 1995) ("The provisions of the federal bankruptcy code preempt *only* those state laws that are in conflict with federal law.") (emphasis added). In any event, the broad language from *Pinkus* on which plaintiffs rely is not congruent with their own field-preemption argument, which is limited to the field of "municipal-debt-restructuring" laws. *BlueMountain* Br. 53. Indeed, *Pinkus* did not involve that field at all. Plaintiffs tellingly identify *no* case in which a court has ever concluded that this "field" is preempted, and cannot distinguish cases holding that it is not, *see, e.g.*, *Ropico,* 425 F. Supp. at 978-84.

Finally, above and beyond all of the foregoing, it is simply implausible to assume, in the absence of any textual, structural, or

27

historical evidence, that Congress intended to foreclose Puerto Rico from authorizing its instrumentalities, including public utilities, from restructuring their debts not only under Chapter 9, but under *any* law. Plaintiffs identify no other example of a public utility relegated to such a "no man's land" where it is foreclosed from restructuring its debts under *any* law, thereby leaving it at the mercy of its creditors.

Plaintiffs respond that this "supposed 'no-man's land' turns out to be crowded with good company." *BlueMountain* Br. 4; *see also id.* at 23, 50; *Franklin* Br. 2. Such "company," according to plaintiffs, consists of municipalities that have not been specifically authorized by their states to seek Chapter 9 bankruptcy protection. *See Franklin Br.* 2; *BlueMountain* Br. 4, 23, 50. As the Commonwealth has explained, however, those other municipalities do not inhabit a "no man's land" at all. *See* Commonwealth Br. 40. Unlike Puerto Rico's municipalities, Congress has not rendered them categorically ineligible to seek Chapter 9 bankruptcy protection; rather, their states simply have not exercised the *option* of specifically authorizing them to seek such relief. Whatever the reasons for such inaction, *see, e.g.*, Profs. Gillette & Skeel *Amicus*

28

Br. 26-28, there can be no dispute that those states remain free to provide such authorization.  Puerto Rico, in sharp contrast, is not.

But, plaintiffs insist, their interpretation "does not ... leave Puerto Rico's municipalities with no option to restructure their debts"—"[t]hey can negotiate with their creditors, and if that fails, they can ask Congress to make federal bankruptcy relief available." *BlueMountain* Br. 4-5; *see also id.* at 48-49; *Franklin* Br. 43-44.  That assertion is disingenuous at best.  Neither negotiations with bondholders nor an entreaty to Congress to amend the federal Bankruptcy Code is a mechanism for restructuring debts, and that is the point: plaintiffs are advocating the anomalous result that Puerto Rico's political subdivisions and instrumentalities, including public utilities, have *no* mechanism to restructure their debts.[2]

---

[2] Plaintiffs' observation that Puerto Rico's non-voting Resident Commissioner in Congress has proposed a bill, H.R. 870, that would "amend [the Bankruptcy Code] to make Puerto Rican municipalities eligible for relief under Chapter 9," *Franklin* Br. 44 n.27; *see also BlueMountain* Br. 5, 23, 48-49, proves nothing.  Such a legislative proposal, which is obviously subject to the vicissitudes of the legislative process, "is a particularly dangerous ground on which to rest an interpretation of a prior statute," *PBGC Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990), given that "[a] bill can be proposed for any number of
(Continued...)

It is obviously easy for plaintiffs—who hold bonds issued by PREPA, Puerto Rico's electrical utility—to suggest that this is no big deal. But, as the Commonwealth's *amici* have pointed out, this situation is untenable: "Unlike the customers of a private firm, the citizens who benefit from services provided by a municipal corporation may have no realistic alternative if a distressed municipality cannot adjust its debts and must either cease services or increase taxes and fees." Profs. Gillette & Skeel *Amicus* Br. 4; *see generally id.* at 14-24. If plaintiffs are right, they can force PREPA to raise electrical rates (which are already double those on the mainland) to astronomical levels, or to cut electrical service to Puerto Rico's citizens. If Congress had wanted to put Puerto Rico (and the District of Columbia) in this unique and anomalous situation, it could and would have said so.

---

reasons," *Solid Waste Agency of N. Cook Cnty. v. Army Corps of Eng'rs*, 531 U.S. 159, 170 (2001).

II. **The District Court, After Holding That The Recovery Act Is Preempted By Chapter 9 Of The Bankruptcy Code And Permanently Enjoining Its Enforcement, Erred By Proceeding To Address Plaintiffs' Contract And Takings Clause Claims.**

Plaintiffs do not, and cannot, dispute the general rule that courts *should* not address federal constitutional issues that they *need* not address. *See*, *e.g.*, *Camreta*, 131 S. Ct. at 2031; *Lyng*, 485 U.S. at 445; *Ashwander,* 297 U.S. at 341-47 (Brandeis, J., concurring). Nor can plaintiffs seriously deny that the district court here did just that by proceeding to address their challenges to the Recovery Act under the Contract and Takings Clauses *after* concluding that the Act in its entirety "is preempted by the federal Bankruptcy Code, [and thus] void pursuant to the Supremacy Clause of the United States Constitution." Add.2.

Rather, plaintiffs argue that this Court lacks "jurisdiction" to vacate the district court's gratuitous constitutional rulings. *Franklin* Br. 45-46; *BlueMountain* Br. 24, 57-59. That argument displays a fundamental misunderstanding of appellate jurisdiction. Contrary to plaintiffs' suggestion, there is nothing "interlocutory" about the district court's disposition of the *Franklin* case, where the court granted a

*permanent* (not temporary) injunction, entered a *final* judgment in the *Franklin* plaintiffs' favor, and ordered that case "closed." Add.76-77. (The court also entered a permanent injunction in the *BlueMountain* case, *see* Add.75, and the only reason the court did not also enter a final judgment in that case is that the *BlueMountain* plaintiffs had never even moved for summary judgment.)

Because the court awarded the *Franklin* plaintiffs all the relief to which they were entitled, and thereby "en[ded] the litigation on the merits," *FirsTier Mortg. Co. v. Investors Mortg. Ins. Co.*, 498 U.S. 269, 273-74 (1991) (internal quotation omitted), all interlocutory rulings merged into that judgment and are hence ripe for this Court's review, *see, e.g.*, *Martinez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 283 (1st Cir. 2009); *St. John's Insulation, Inc. v. L. Addison & Assocs., Inc.*, 156 F.3d 101, 105 (1st Cir. 1998); *Tringali v. Hathaway Mach. Co.,* 796 F.2d 553, 559 (1st Cir. 1986); *see also* Charles A. Wright *et al.*, *Federal Practice & Procedure* § 3905.1 (rev. ed. 2014) ("[O]nce appeal is taken from a truly final judgment that ends the litigation, earlier rulings generally can be reviewed"). Plaintiffs thus miss the point by reciting the general rule that the "denial of [a] motion to

dismiss [is] not an appealable interlocutory order." *Franklin* Br. 4 (citing *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 6 n.1 (1st Cir. 2005)); *see also BlueMountain* Br. 5 (same). The very problem here is that the district court proceeded to render advisory opinions on constitutional questions even as it concluded that the *Franklin* plaintiffs were entitled to a final judgment in their favor. Regardless of whether this Court affirms or reverses that final judgment, it should vacate those gratuitous constitutional rulings.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment and vacate the district court's holdings with respect to the Contract Clause and the Takings Clause.

April 29, 2015

Respectfully submitted,

/s/ *Christopher Landau*

Margarita Mercado-Echegaray
Solicitor General
COMMONWEALTH OF PUERTO RICO
P.O. Box 9020192
San Juan, PR   00902-0192
(787) 724-2165

Christopher Landau, P.C.
Claire McCusker Murray
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, DC   20005
(202) 879-5000


*Counsel for Defendants-Appellants*
*the Commonwealth of Puerto Rico, Alejandro García Padilla, in*
*his official capacity as the Commonwealth's Governor,*
*and César R. Miranda Rodríguez, in his official capacity as the*
*Commonwealth's Secretary of Justice*

## CERTIFICATE OF BRIEF LENGTH

Pursuant to Fed. R. App. P. 32(a)(7)(B) and (C), I hereby certify
that this brief contains 6,504 words, on the basis of a count made by the
word processing system used to prepare the brief.

*/s/ Christopher Landau*
Christopher Landau, P.C.

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 29th day of April 2015, he

served the foregoing brief upon the following counsel by ECF:

Alejandro Febres-Jorge, Esq.
GOVERNMENT DEVELOPMENT BANK
FOR PUERTO RICO
Roberto Sánchez Vilella
Government Center
De Diego Avenue No. 100
Santurce, PR   00907-2345
(787) 729-6438

Martin J. Bienenstock, Esq.
Sigal P. Mandelker, Esq.
Mark D. Harris, Esq.
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY   10036
(212) 969-3000

*Counsel for Defendant-Appellant*
*Government Development Bank for Puerto Rico*

Manuel Fernández-Bared, Esq.
Linette Figueroa-Torres, Esq.
TORO, COLÓN, MULLET,
   RIVERA & SIFRE, P.S.C.
P.O. Box 196383
San Juan, PR   00919
(787) 751-89999

Thomas Moers Mayer, Esq.
Amy Caton, Esq.
P. Bradley O'Neill, Esq.
David E. Blabey Jr., Esq.
KRAMER LEVIN NAFTALIS
   & FRANKEL LLP
1177 Avenue of the Americas
New York, NY   10036
(212) 715-9100

*Counsel for Plaintiffs-Appellees Franklin Cal. Tax-Free Trust, et al.*

David C. Indiano, Esq.
Jeffrey M. Williams, Esq.
Leticia Casalduc-Tabell, Esq.
INDIANO & WILLIAMS, P.S.C.
207 Del Parque St., 3d Floor
San Juan, PR   00912
(787) 641-4545

Theodore B. Olson, Esq.
Matthew D. McGill, Esq.
Matthew J. Williams, Esq.
Scott G. Stewart, Esq.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave, NW
Washington, DC   20036
(202) 955-8500

*Counsel for Plaintiffs-Appellees BlueMountain Management, LLC, et al.*

Jorge R. Roig, Esq.
Joanne A. Tomasini-Muñiz, Esq.
GONZALEZ, MACHADO & ROIG, LLC
Citibank Tower, Suite 601
252 Ponce de León Avenue
San Juan, PR 00918
(787) 773-6363

Lawrence B. Friedman, Esq.
Richard J. Cooper, Esq.
Lewis J. Liman, Esq.
Sean A. O'Neal, Esq.
CLEARY GOTTLIEB STEEN &
    HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

*Counsel for Amicus Curiae*
*Puerto Rico Electric Power Authority*

Gabriel R. Aviles-Aponte, Esq.
TAPIA & AVILES
Cond. First Federal, Suite 601
San Juan, PR 00927
(787) 764-1430

*Counsel for Amici Curiae*
*Professors Clayton P. Gillette & David A. Skeel, Jr.*

Edilberto Berríos Pérez, Esq.
REC LAW SERVICES PSC
#239 Arterial Hostos Ave.,
Suite 900
Capital Center Bldg.
San Juan, PR 00918
(787) 753-0084

*Counsel for Amicus Curiae*
*Edilberto Berríos Pérez, Esq.*

Marc E. Kasowitz, Esq.
Daniel R. Benson, Esq.
Joseph I. Lieberman, Esq.
Clarine Nardi Riddle, Esq.
KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
1633 Broadway
New York, NY   10019
(212) 506-1700

*Counsel for Amici Curiae*
*Association of Financial Guaranty Insurers*

Kate Comerford Todd, Esq.
Steven P. Lehotsky, Esq.
U.S. CHAMBER LITIGATION CENTER,
  INC.
1615 H Street, N.W.
Washington, DC   20062

William S. Consovoy, Esq.
Thomas R. McCarthy, Esq.
J. Michael Connolly, Esq.
CONSOVOY MCCARTHY PLLC
3033 Wilson Boulevard, Suite 700
Arlington, VA   22201
(703) 243-9423

*Counsel for Amicus Curiae*
*The Chamber of Commerce of the United States of America*

/s/ Christopher Landau
Christopher Landau, P.C.